**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:21-cv-00051 |
| Plaintiff, | ) ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation; PEOPLECONNECT INC., a California Corporation; CLASSMATES MEDIA CORPORATION, a Delaware Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| THERESA LOENDORF, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | Case No. 1:21-cv-00610 |
| Plaintiff, | ) ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation; CLASSMATES MEDIA CORPORATION, a Delaware Corporation, | ) ) ) | |
| Defendants. | ) | |

**DEFENDANT'S CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF**
**ITS MOTION TO DISMISS BONILLA'S AND LOENDORF'S COMPLAINTS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.    Plaintiffs Agreed To Arbitrate Their Claims. ............................................................ 3

    A.   A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect. ........... 3

        1.   Classmates.com Users Are Bound By Its Terms of Service. .................................. 3

        2.   Bonilla Personally Consented To The Terms Of Service. ..................................... 4

        3.   Plaintiffs' Counsel Consented To The Terms Of Service On Their Behalf. ............. 5

    B.   An Arbitrator Must Decide If This Dispute Is Subject to Arbitration. ............................. 7

II.   Plaintiffs' Claims Are Barred By Federal Law. ......................................................... 7

    A.   The Communications Decency Act Bars Plaintiffs' Claims. ......................................... 8

    B.   The Copyright Act Preempts Plaintiffs' Claims. ..................................................... 10

III.  Plaintiffs Have Failed To State A Claim Under IRPA. ............................................... 12

    A.   Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA. ................... 13

    B.   Plaintiffs Fail To Plead A Prima Facie IRPA Claim. ................................................ 14

        1.   Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities. ........... 14

        2.   Plaintiffs Fail To Plead That PeopleConnect Used Their Identities For A
            Commercial Purpose. ........................................................................................ 15

        3.   Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions. .............................. 20

            i.    IRPA Exemption 1 Bars Plaintiffs' Claims. ................................................... 20

            ii.   IRPA Exemption 2 Bars Plaintiffs' Claims. ................................................... 21

IV.  Bonilla Has Failed To State A Claim On His Other Causes Of Action. ........................ 22

    A.   Bonilla Has Failed To State A Claim Under ICFA. .................................................. 22

    B.   Bonilla Fails To State A Claim For Intrusion Upon Seclusion. .................................. 23

i

C.   Bonilla Fails To State A Claim For Unjust Enrichment................................................. 25

V.   Plaintiffs' Claims Are Barred By The Constitution. .............................................................. 26

A.   PeopleConnect's Alleged Conduct Is Protected By The First Amendment................... 26

1.   The Conduct Alleged Is Core First Amendment Speech. ...................................... 26

2.   Yearbooks Are Fully Protected, Non-Commercial Speech. .................................. 27

3.   Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny. ............................................................................ 29

B.   Applying IRPA To This Case Violates The Dormant Commerce Clause. ................... 30

VI.   The Court Lacks Personal Jurisdiction Over Defendant. ...................................................... 32

CONCLUSION.................................................................................................................................. 35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Johnson*,
194 F.3d 1149 (10th Cir. 1999) .........................................................31

*Acosta v. Scott Labor LLC*,
377 F. Supp. 2d 647 (N.D. Ill. 2005) ..................................................25

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ........................................................32, 33

*Ali v. Vehi-Ship, LLC*,
No. 17 CV 02688, 2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ..............7

*Almeida v. Amazon.com, Inc.*,
456 F.3d 1316 (11th Cir. 2006) ...........................................................17

*Am. Booksellers Found. v. Dean*,
342 F.3d 96 (2d Cir. 2003)...................................................................31

*Am. Libs. Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) ......................................................31

*Angelo v. Moriarty*,
No. 15 C 8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016).................25

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
No. 88 C 4287, 1988 WL 139247 (N.D. Ill. Dec. 22, 1988) ..............5, 6

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) ...................................................................13, 14

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
805 F.2d 663 (7th Cir. 1986) ....................................................10, 11, 12

*be2 LLC v. Ivanov*,
642 F.3d 555 (7th Cir. 2011) ...................................................32, 33, 34

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
206 F.3d 980 (10th Cir. 2000) .............................................................8, 9

*Best v. Berard*,
776 F. Supp. 2d 752 (N.D. Ill. 2011) ...............................................21, 22

*Blair v. Nev. Landing P'ship*,
369 Ill. App. 3d 318 (2d Dist. 2006)........................................................14

*Bogie v. Rosenberg*,
705 F.3d 614 (7th Cir. 2013) ....................................................................21

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
137 S. Ct. 1773 (2017)........................................................................32, 34

*Browning v. AT & T Corp.*,
682 F. Supp. 2d 832 (N.D. Ill. 2009) ................................................23, 24

*by Razor v. Hyundai Motor Am.*,
222 Ill. 2d 75 (2006) ..................................................................................4

*Callahan v. Ancestry.com, Inc.*,
No. 20-cv-8437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...........1, 8, 9

*Cassetica Software, Inc. v. Computer Sci. Corp.*,
No. 09-C-0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009).........7, 8, 12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
447 U.S. 557 (1980)..................................................................................29

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
519 F.3d 666 (7th Cir. 2008) ..................................................................8, 9

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
No. 17-cv-4993, 2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) ...............22

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ...................................................................26

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
887 F.3d 803 (7th Cir. 2018) ...................................................................23

*Collier v. Murphy*,
No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) .................20

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998) ...................................................................28

*Crooms v. Sw. Airlines Co.*,
459 F. Supp. 3d 1041 (N.D. Ill. 2020) ......................................................7

*Dart v. Craigslist, Inc.*,
665 F. Supp. 2d 961 (N.D. Ill. 2009) .........................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..............................................................................................3

*Dobrowolski v. Intelius, Inc.*,
    No. 17-cv-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)..........................16, 17, 18, 19

*Faulkenberg v. CB Tax Franchise Sys., LP*,
    637 F.3d 801 (7th Cir. 2011) ................................................................................4

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)....................................................................................10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021)..........................................................................................34

*FTC v. Trudeau*,
    662 F.3d 947 (7th Cir. 2011) ................................................................................29

*Gionfriddo v. MLB*,
    94 Cal. App. 4th 400 (2001) ............................................................................17, 28

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ............................32, 33

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
    No. 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012) .............................7, 8

*Hart v. Amazon.com, Inc.*,
    No. 15-C-01217, 2015 WL 8489973 (N.D. Ill. Dec. 8, 2015)...............................19

*Hartman v. Lisle Park Dist.*,
    158 F. Supp. 2d 869 (N.D. Ill. 2001) ....................................................................5

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989)..............................................................................................13

*Henderson v. City of Chi.*,
    No. 14 C 1164, 2015 WL 1954464 (N.D. Ill. Apr. 29, 2015)...............................23

*Hinton v. Amazon.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014)...................................................................10

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
    No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ............................6

*Janiga v. Questar Capital Corp.*,
    615 F.3d 735 (7th Cir. 2010) .............................................................................5, 6

*Johnson v. Uber Techs., Inc.*,
    No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018) ................................................. 3

*Jordan v. Jewel Food Stores, Inc.*,
    743 F.3d 509 (7th Cir. 2014) ............................................................................................... 27

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010) ....................................................................................... 10, 11

*Kimzey v. Yelp!, Inc.*,
    836 F.3d 1263,1270 (9th Cir. 2016) ...................................................................................... 9

*Kincaid v. Gibson*,
    236 F.3d 342 (6th Cir. 2001) ................................................................................... 21, 26, 28

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) .......................................................................................... 10

*Landau v. CNA Fin. Corp.*,
    381 Ill. App. 3d 61 (1st Dist. 2008) ............................................................................... 13, 14

*Liberi v. Taitz*,
    No. SACV11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011) ........................................ 9

*Lukis v. Whitepages, Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ................................................................................... 18

*Maloney v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015) ............................................................................ 11, 12

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ............................................................................................ 9

*McGreal v. AT&T Corp.*,
    892 F. Supp. 2d 996 (N.D. Ill. 2012) .................................................................................. 25

*Miche Bag, LLC v. Be You, LLC*,
    No. 11-cv-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) ............................................... 13

*Midwest Title Loans, Inc. v. Mills*,
    593 F.3d 660 (7th Cir. 2010) ......................................................................................... 31, 32

*Miracle-Pond v. Shutterfly, Inc.*,
    No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ..................................... 3, 4, 5

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (1995) .............................................................................................. 29

*Mucklow v. John Marshall L. Sch.*,
  176 Ill. App. 3d 886 (1st Dist. 1988) ................................................24

*N. Grain Mktg., LLC v. Greving*,
  743 F.3d 487 (7th Cir. 2014) ...........................................................32

*Namath v. Sports Illustrated*,
  80 Misc. 2d 531 (N.Y. Sup. Ct., N.Y. Cnty. 1975)...........................29

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
  63 F.3d 652 (7th Cir. 1995) .............................................................30

*Nieman v. VersusLaw, Inc.*,
  512 F. App'x 635 (7th Cir. 2013) ........................................16, 26, 28

*Nieman v. Versuslaw, Inc.*,
  No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012)) ...............17

*Obado v. Magedson*,
  No. Civ. 13–2382, 2014 WL 3778261 (D.N.J. July 31, 2014) .............9

*Parker v. Paypal, Inc.*,
  No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)............9

*Patel v. Zillow, Inc.*,
  No. 17-cv-4008, 2017 WL 3620812 (N.D. Ill. Aug. 23, 2017) ............24

*Pearson v. Edgar*,
  153 F.3d 397 (7th Cir. 1998) ......................................................29, 30

*Personal Keepsakes, Inc. v. Personalizationmall.com*,
  No. 11-cv-5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ...............12

*Philos Techs., Inc. v. Philos & D, Inc.*,
  802 F.3d 905 (7th Cir. 2015) ......................................................32, 33

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)..........................................................................30

*Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*,
  No. 09 C 2046, 2010 WL 624709 (N.D. Ill. Feb. 18, 2010)...........25, 26

*Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*,
  631 F. 3d 436 (7th Cir. 2011) .....................................................25, 26

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004) ............................................................31

vii

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015)............................................................................27

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ...............................................................................7

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989)..............................................................17

*Rosen v. SCIL, LLC*,
    343 Ill. App. 3d 1075 (1st Dist. 2003) ...............................................4, 5

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011).........................................................................26, 27

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) .................................................23

*Swank v. Smart*,
    898 F.2d 1247 (7th Cir. 1990) ...........................................................26

*Thomas v. Pearl*,
    998 F.2d 447 (7th Cir. 1993) .............................................................25

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ..................15, 16, 17, 19

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) .................................................22

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
    474 F.3d 379 (7th Cir. 2007) ..............................................................3

*United States v. Stevens*,
    559 U.S. 460 (2010)...........................................................................26

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)........................................................................27, 29

*Valley Air Serv. v. Southaire, Inc.*,
    No. 06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009)..................14

*Vergara v. Nintendo of Am. Inc.*,
    No. 19 C 6374, 2020 WL 2571903 (N.D. Ill. May 21, 2020) ................7

*Vrdolyak v. Avvo, Inc.*,
    206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...............................................14, 19, 27, 28

*Vulcan Golf, LLC v. Google Inc.*,
    552 F. Supp. 2d 752 (N.D. Ill. 2008) ............................................................................13, 14

*Walden v. Fiore*,
    571 U.S. 277 (2014)..........................................................................................................32

*Williams v. TCF Nat'l Bank*,
    No. 12 C 5115, 2013 WL 708123 (N.D. Ill. Feb. 26, 2013)...............................................4

*Wrenn v. Exelon Generation, LLC*,
    No. 18 C 2524, 2019 WL 11660918 (N.D. Ill. Mar. 5, 2019) .............................................25

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ............................................................................................10

**Statutes**

765 ILCS 1075/1 *et seq.*.........................................................................................................2

765 ILCS 1075/5 ...................................................................................................................14

765 ILCS 1075/30...................................................................................................................14, 15

765 ILCS 1075/35.............................................................................................................20, 21, 22

815 ILCS 505 .......................................................................................................................2, 23

17 U.S.C. § 101 .....................................................................................................................11

17 U.S.C. § 102 .....................................................................................................................10, 11

17 U.S.C. § 103 .....................................................................................................................10, 11

17 U.S.C. § 106 .....................................................................................................................10, 12

17 U.S.C. § 301.................................................................................................................7, 10, 11, 12

47 U.S.C. § 230) ...................................................................................................................7, 8

**Other Authorities**

Fed. R. Civ. P. 9 .............................................................................................................. *passim*

Fed. R. Civ. P. 12 ............................................................................................................ *passim*

1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* §
    6:3 ....................................................................................................................................31

## <u>INTRODUCTION</u>

Yearbooks are American institutions. They are a primary medium through which school communities memorialize the events, stories, and images of the prior year. Local libraries as well as national archives maintain yearbooks as valued artifacts, which both inform and entertain their readers for generations. PeopleConnect, Inc. ("PeopleConnect") operates Classmates.com, one of the most comprehensive online libraries of school yearbooks in the nation. Much of that material is available to any website user for free. Some of it is available to subscribing members. But all of it comes from that most ubiquitous of keepsakes—yearbooks.

Plaintiffs in these related actions contend that PeopleConnect violates Illinois law by displaying and selling yearbooks and yearbook excerpts on the internet. They thus are pursuing sweeping class actions under the Illinois Right of Publicity Act and other privacy theories. But those claims do not belong in this Court because Plaintiffs have agreed to resolve their disputes with PeopleConnect in arbitration. And substantively, given that Plaintiffs seek to remove from the Internet documents available at public libraries, it is no surprise that a host of doctrines bar their claims. As another court held just a month ago in a case challenging a similar yearbook database, such claims are barred by Section 230 of the Communications Decency Act. *Callahan v. Ancestry.com, Inc.*, No. 20-cv-8437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021). The claims also fail because: (1) Section 301 of the Copyright Act preempts them; (2) Plaintiffs cannot plead all the elements of any claim, and certainly not a claim sounding in fraud, with the required particularity under Federal Rule of Civil Procedure 9(b); (3) Plaintiffs' claims run afoul of both the First Amendment and Dormant Commerce Clause; and (4) there is no personal jurisdiction over PeopleConnect. For any and all of these reasons, Plaintiffs' Complaints must be dismissed.

## BACKGROUND

PeopleConnect owns and operates Classmates.com, which includes an online library of over 450,000 school yearbooks that can be viewed by its 70 million members. Plaintiffs Sergio Bonilla ("Bonilla") and Theresa Loendorf ("Loendorf") filed separate lawsuits against PeopleConnect based on the yearbooks available on Classmates.com.

Bonilla alleges that the Classmates.com library includes yearbooks from Central High School in Omaha, Nebraska, which contain "two records" using his "name, photograph, image, and likeness." Bonilla Compl., Bonilla Dkt. 1 ("BC") ¶¶ 24–26, 29. He asserts four causes of action: (1) violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; (3) intrusion upon seclusion; and (4) unjust enrichment. BC ¶¶ 56–77. In doing so, Bonilla offers two overarching theories. First, it is unlawful for PeopleConnect to sell reprinted yearbooks and online access to those yearbooks because they include his name and likeness. *Id*. ¶ 8. Second, it is unlawful for PeopleConnect to use Bonilla's name and likeness for the purpose of "advertising and promoting" reprinted and online yearbooks, as well as for free or paid memberships to the Classmates.com website. *Id*. ¶¶ 6–7.

Like Bonilla, Loendorf alleges that when users access Classmates.com, she is able to "enter the information of a particular school," and the website then provides them with "a listing of search results," each of which "corresponds to a school of which [PeopleConnect] sells [its] yearbook service." Loendorf Compl., Loendorf Dkt. 1 ("LC") ¶¶ 4–5. Loendorf alleges that these search results "provide a limited, free preview of Defendant's service" that "include[] Plaintiff's name and photo." *Id*. ¶ 6. She thus claims that PeopleConnect uses her identity to "market … [PeopleConnect's] subscription services." *Id*. ¶¶ 9–10. And while Loendorf concedes that PeopleConnect could "sell Plaintiff's information on an individual basis[,]" she argues that it

cannot "us[e] her identity to advertise its subscription service." *Id.* ¶ 14. Loendorf asserts a single claim under IRPA. *Id.* ¶¶ 36–42.

## ARGUMENT

### I.    Plaintiffs Agreed To Arbitrate Their Claims.

Plaintiffs are proceeding in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3). The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). Here, Plaintiffs consented to PeopleConnect's Terms of Service ("TOS"). That binds them to the arbitration provision therein.

### A.    A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect.

#### 1.    Classmates.com Users Are Bound By Its Terms of Service.

Clickwrap agreements—which require a website user to click a button to consent to a website's terms of service—constitute valid and enforceable contracts. *E.g.*, *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 382 (7th Cir. 2007); *Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20, 2018). The terms of service need not be displayed on the same page as the button. Thus, in *Miracle-Pond v. Shutterfly, Inc.*, the plaintiff was prompted with the following message prior to use of an application: "By tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use." No. 19-cv-04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020). Links to the Shutterfly Terms of Use appeared on the same page as the "Accept" and "Decline" buttons. *Id*. The court held that "[b]ecause Shutterfly's 'app contained a clear and conspicuous statement that ... a user agreed to the Terms of Service and Privacy Policy' by clicking a link or pressing a button, a reasonable user who completes that process would understand that she was manifesting assent to the Terms." *Id.*

3

The same is true here. Before performing a search or creating an account on Classmates.com, a user must click a button and agree to the TOS. Declaration of Tara McGuane ("Decl.") ¶ 6.[1] The TOS are hyperlinked directly from that message. *Id*. The TOS contains the following provision in bolded text:

> **YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT.**

Decl. ¶ 8. That is sufficient to create a valid and enforceable contract to arbitrate.

### 2.    Bonilla Personally Consented To The Terms Of Service.

As Bonilla did in this case, under Illinois law, parties may, "agree to authorize one party to modify a contract unilaterally." *Miracle-Pond*, 2020 WL 2513099, at \*5; *Williams v. TCF Nat'l Bank*, No. 12 C 5115, 2013 WL 708123, at \*9 (N.D. Ill. Feb. 26, 2013) ("In Illinois . . . unilateral modification clauses are enforceable . . . ."). Courts, thus, enforce unilaterally-added arbitration provisions. *Miracle-Pond*, 2020 WL 2513099, at \*5 (continued use of website constitutes consent to arbitration provision unilaterally added); *see Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 1082 (1st Dist. 2003) ("If plaintiff did not wish to agree to the new terms [including arbitration provision] in his credit card agreement, he simply should have stopped using the card."), *declined to follow on other grounds by Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75 (2006).

Here, Bonilla registered for a Classmates.com account on December 17, 2007. Decl. ¶ 12. The TOS in effect at that time stated that the TOS "may be modified only by Classmates posting changes to the Terms of Use on the Website" and "[e]ach time you access the Website, you will

---

[1] Because a motion to compel arbitration is brought pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and this Court may consider facts outside of the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

be deemed to have accepted any such changes in effect at the time of access." Decl. Ex. 2, Section 16. On January 10, 2014, PeopleConnect added an arbitration provision to the TOS. Decl. Ex. 3, Section 14. On August 8, 2015, Bonilla accessed his Classmates.com account to view more than 20 user profiles. Decl. ¶ 14. PeopleConnect modified the arbitration clause in the Classmates.com TOS again on August 3, 2017. Decl. Ex. 1. Bonilla accessed his Classmates.com account again on June 22, 2018. Decl. ¶ 16.

Bonilla's 2015 and 2018 access to Classmates.com constituted consent to the updated TOS and the arbitration provisions therein. *Miracle-Pond*, 2020 WL 2513099, at *5. If he did not want to be bound, "he simply should have stopped using" Classmates.com. *Rosen*, 343 Ill. App. 3d at 1082.

### 3. Plaintiffs' Counsel Consented To The Terms Of Service On Their Behalf.

The Complaints also confirm that Bonilla's and Loendorf's counsel each bound their respective client to the arbitration agreement in the TOS by using Classmates.com on their behalf. A lawyer is his client's agent. *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876−77 (N.D. Ill. 2001). "Courts within [the Seventh Circuit] recognize that an agency relationship between two parties creates both rights and obligations with regard to an arbitration agreement entered into by one of the parties." *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, No. 88 C 4287, 1988 WL 139247, at *5 (N.D. Ill. Dec. 22, 1988), *aff'd*, 892 F.2d 566 (7th Cir. 1989). "An agent may bind a principal to an arbitration agreement" as long as the agent is "acting within the scope of their agency." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010).

Bonilla's counsel, Benjamin Osborn, has three Classmates.com accounts. Decl. ¶¶ 17–19. He could not have created them without consenting to the TOS. Decl. ¶ 22. Bonilla's Complaint also includes screenshots showing Osborn's access to parts of the website accessible only after

consent. BC ¶¶ 24–29, 31; Decl. ¶ 23. Loendorf's counsel, Julian Diamond and Christopher Reilly of Bursor & Fischer, also have Classmates.com accounts. Decl. ¶¶ 20–21. They too could not have created their accounts without consenting to the TOS. Decl. ¶ 22. And like Bonilla's Complaint, Loendorf's Complaint contains screenshots confirming that Diamond and Reilly used their Classmates.com accounts to obtain Loendorf's records that are accessible only after consenting to the TOS. LC ¶¶ 3–6, 8; Decl. ¶ 23.

Both Plaintiffs' counsel thus used their Classmates.com accounts to gather information for litigation on their clients' behalves, which was "within the scope of their agency." *Janiga*, 615 F.3d at 743. Thus, "both [the] rights and obligations" of the TOS accrue to Plaintiffs, including the binding arbitration agreement. *Asset Allocation*, 1988 WL 139247, at *5.

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, is instructive. No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019). There, Uber moved to compel arbitration because the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id.* at *2. The court held that because the plaintiffs "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," they were "bound by the arbitration agreement to the same extent as their agent." *Id*. at *4. This case is no different. Plaintiffs "dispatched" their counsel to "affirmatively test [Classmates.com] in order to bolster their claims" by gathering website images to use in their Complaints. *Id*.; Decl. ¶ 23; *See* BC ¶¶ 25–28, 31; LC ¶ 8, images 1, 3–6. They cannot avoid arbitration by having their attorneys do what they otherwise would have had to do themselves.[2]

---

[2] If Plaintiffs dispute these facts, or this Court is otherwise not inclined to compel arbitration on this record, PeopleConnect requests leave to engage in limited discovery regarding (1) Plaintiffs' and their counsels' use of Classmates.com, and (2) Plaintiffs' knowledge of and acquiescence to their counsels' use of same. *See Indep. Living Res. Ctr.*, No. 18-cv-06503 (N.D. Cal. May 6, 2019),

**B.      An Arbitrator Must Decide If This Dispute Is Subject to Arbitration.**

When an arbitration agreement contains a "delegation provision"—one that delegates issues of arbitrability to the arbitrator—the FAA requires courts to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *Vergara v. Nintendo of Am. Inc.*, No. 19 C 6374, 2020 WL 2571903, at *3 (N.D. Ill. May 21, 2020). Courts in this district have held that the "incorporation of AAA [American Arbitration Association] Rules delegates arbitrability decisions to the arbitrator." *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D. Ill. 2020) (citation omitted); *see Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at *4 (N.D. Ill. Nov. 27, 2017). That rule applies here, as the TOS states "[t]he arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), if applicable, as modified by this section." Decl. ¶ 9.

Even if this Court were to determine arbitrability, the arbitration provision in the TOS plainly applies, as it encompasses "any and all disputes that have arisen or may arise between [Plaintiffs] and PeopleConnect entities." Decl. ¶ 8. Plaintiffs' claims are a "dispute[]" between Plaintiffs and PeopleConnect. They must be resolved in arbitration.

**II.      Plaintiffs' Claims Are Barred By Federal Law.**

Even if Plaintiffs were not bound by the arbitration provision, the Court should dismiss their claims because federal law bars them. First, the Communications Decency Act forecloses Plaintiffs' claims. 47 U.S.C. § 230(c)(1). Second, all but one of Plaintiffs' claims are preempted by the Copyright Act. 17 U.S.C. § 301. Because these defenses are plain from the face of the Complaints, they should be dismissed. *E.g.*, *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12 C 1548, 2012 WL 2866463, at *1–2 (N.D. Ill. July 10, 2012) (granting motion to dismiss

---

ECF No. 35 (denying motion to compel arbitration without prejudice, but granting "limited discovery" to "clarify the issue" of whether app "testers were Plaintiffs' agents").

based on Section 230); *Cassetica Software, Inc. v. Computer Sci. Corp.*, No. 09-C-0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009) (granting motion to dismiss based on Copyright Act).

### A. The Communications Decency Act Bars Plaintiffs' Claims.

Section 230 of the Communications Decency Act states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute, "while not granting blanket immunity to interactive computer services, defines who can be called a 'publisher' for purposes of civil liability." *Hadley*, 2012 WL 2866463, at *1.

Another court recently held that Section 230 bars virtually identical claims. *Callahan*, 2021 WL 783524, at *1, *6 & n.13. In *Callahan*, plaintiffs "object[ed] to Ancestry.com's inclusion of their decades-old yearbook photographs and information in Ancestry's Yearbook Database." *Id.* at *1. Ancestry moved to dismiss, in part based on Section 230, and the court held that because "Ancestry—by taking information and photos from the donated yearbooks and republishing them on its website in an altered format—engaged in 'a publisher's traditional editorial functions'" and did "not contribute 'materially' to the content," Section 230 applied. *Id.* at *6. This Court should reach the same result. Section 230 bars all claims that would require (1) "an online information system" to (2) "'be treated as the publisher or speaker'" of (3) "'any information provided by' someone else." *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). As was true in *Callahan*, this is what these Plaintiffs' claims do.

*First*, PeopleConnect is an "online information system" because it is the owner of a public website. BC ¶ 15; LC ¶¶ 3–4; *see Hadley*, 2012 WL 2866463, at *2 ("websites [that] enable multiple users access to the server that hosts the website" fall within Section 230).

*Second*, because Plaintiffs' claims are premised on PeopleConnect's republication and distribution of content from yearbooks, *e.g.*, BC ¶¶ 2–3, 7–9, 58, 64, 69, 74; LC ¶¶ 1–2, 5–6, 9–

11, 23, 40, their claims seek to treat PeopleConnect as a "publisher." *Chicago Lawyers' Comm.*, 519 F.3d at 671; *see also, e.g.*, *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000) (finding Section 230 barred claims against AOL for publishing allegedly inaccurate stock price information from third-party providers); *Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (finding Section 230 barred right of publicity claim against Amazon for including allegedly counterfeit books in Kindle store).

*Third*, PeopleConnect is a "publisher" of "information provided by someone else." *Chicago Lawyers' Comm.*, 519 F.3d at 671. Plaintiffs' claims are based on the publication of their "name, photograph, likeness." BC ¶ 25; *see also* LC ¶ 23 ("name and photo"). They allege that PeopleConnect "extract[s]" and "aggregates" "personal information *from school yearbooks*, including names, photographs, schools attended, and other biographical information" and sells "reprinted yearbooks." BC ¶ 2 (emphasis added); LC ¶ 2. Based on similar allegations, the *Ancestry.com* court held that Ancestry was immune because it "did not create the underlying yearbook records and instead obtained them from third parties." 2021 WL 783524, at *1, *5. That follows from the many other courts that have held that businesses that search or ask for information from other sources and republish it in new forms receive Section 230 immunity. *E.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268–69 (D.C. Cir. 2019); *Ben Ezra*, 206 F.3d at 983, 985–86; *Obado v. Magedson*, No. Civ. 13–2382, 2014 WL 3778261, at *1, * 4–7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *Liberi v. Taitz*, No. SACV11-0485, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011).

The fact that PeopleConnect also sells copies of yearbooks makes no difference. "[D]isseminating the same content in essentially the same format … does not change the origin of the third-party content." *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263,1270 (9th Cir. 2016); *see also Dart*

*v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967–68 (N.D. Ill. 2009). "[N]either a website operator's notice of the posting of potentially illegal content nor its receipt of profits from online sales controls the immunity determination under § 230." *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 n.9 (S.D. Miss. 2014) (citing cases). What matters is that PeopleConnect did not "provide[], create[], or develop[] any portion of the content that [Plaintiffs] allege[] harmed" them. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *see Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) ("distributors, like traditional news vendors or book sellers," are "publishers" subject to Section 230); *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (same), *cert. denied*, 140 S. Ct. 2761 (2020).

## B. The Copyright Act Preempts Plaintiffs' Claims.

When a work within the subject matter of the Copyright Act is disseminated to the public and an individual allegedly suffers harm as a result, federal copyright law is the exclusive means of redress. *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 675–77 (7th Cir. 1986). This is true even if neither party in the suit owns the copyright over the material. *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010). Under 17 U.S.C. § 301(a), a claim is preempted if (1) the work at issue is "fixed in a tangible medium of expression" and "come[s] within the subject matter of copyright as specified by [17 U.S.C.] sections 102 and 103"; and (2) the right asserted is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." *Baltimore Orioles*, 805 F.3d at 674 (quoting 17 U.S.C. § 301(c)).

*First*, the material at issue in Plaintiffs' claims is "fixed in a tangible medium of expression" and "come[s] within the subject matter of copyright" under 17 U.S.C. §§ 102 and 103. Plaintiffs' claims all concern PeopleConnect's use of their "names," "photographs," and "likenesses" either in yearbooks or excerpts of yearbooks. *See* BC ¶¶ 2, 24, 26, 41; LC ¶¶ 1, 2, 6.

Both of these are "fixed" in a tangible medium of expression and "come within the subject matter of copyright." *Baltimore Orioles*, 805 F.3d at 674. Yearbooks are copyrightable because they are "works of authorship" containing "pictorial, graphic," and "literary works," 17 U.S.C. § 102, or "compilations" thereof, *id.* § 103; *see id.* § 101 (defining "works of authorship" to include "books" and defining "pictorial" and "graphic" works to include "photographs"). That is why the Copyright Office grants copyright protection for school yearbooks. *E.g.*, *Shellville High School, The Blade*, TX0001451935, Public Catalog, U.S. Copyright Office (Oct. 30, 1984), https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&SAB1=shellville&BOOL1=all%20of%20these&FLD1=Keyword%20Anywhere%20%28GKEY%29&GRP1=AND%20with%20next%20set&SAB2=blade&BOOL2=as%20a%20phrase&FLD2=Keyword%20Anywhere%20%28GKEY%29&CNT=25&PID=gzVHyH6RyPlUdqS0CuqjUSziYPl3-18&SEQ=20210401191627&SID=1.

Excerpted portions of yearbooks are no different, regardless of whether an excerpt contains photographs or text. Photographs are copyrightable. 17 U.S.C. §§ 101, 102; *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1135–36 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017). So too are the excerpted portions of yearbooks that contain text such as Plaintiffs' names. 17 U.S.C. § 102; BC ¶¶ 24, 26–27, 29; LC ¶¶ 6, 8. That they constitute just a component of a yearbook makes no difference. *See Baltimore Orioles*, 805 F.3d at 674–75 (right of publicity claims based on player's performances in baseball game telecast preempted by Copyright Act because performances were "embodied" in telecast); *Jules Jordan Video*, 617 F.3d at 1154 (right of publicity claims preempted by Copyright Act with respect to "'still shots' of copyrighted video performance").

*Second*, the rights asserted in Plaintiffs' IRPA claims, as well as in Bonilla's ICFA and unjust enrichment claims, are "equivalents" of the "exclusive rights within the general scope of

copyright." *See Baltimore Orioles*, 805 F.2d at 674 (quoting 17 U.S.C. § 301(a)). Federal copyright law protects, among other things, the rights to publicly "display" a work, "reproduce" it, and "distribute copies … to the public by sale." 17 U.S.C. § 106. When a claim is based on use of identity in displaying, reproducing, or distributing a work, it is preempted. *E.g.*, *Baltimore Orioles*, 805 F.2d at 674; *Maloney*, 853 F.3d at 1007. That is true of all of Plaintiffs' claims, except for Bonilla's claim for intrusion upon seclusion, because they are premised on PeopleConnect's alleged display of yearbooks and yearbook excerpts to the public on its website, reproduction of yearbooks in hard copy and digitally, and distribution of copies of yearbooks through print and digital sales. *E.g.*, BC ¶¶ 2–3, 6–9, 24–47; LC ¶¶ 2–3, 6–8, 23, 30.[3]

Plaintiffs' Complaints are preempted because they "attempt[] to obtain *ex post* what they did not negotiate *ex ante*": the right to limit the distribution of yearbooks containing their images. *Baltimore Orioles*, 805 F.2d at 679 ("Because the right of publicity does not differ in kind from copyright, the Players' rights of publicity in their performances cannot escape preemption."); *Personal Keepsakes, Inc. v. Personalizationmall.com*, No. 11-cv-5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (dismissing ICFA claim as "simply copyright claims in different clothing"); *Cassetica Software. Inc.*, 2009 WL 1703015, at *5 (dismissing Illinois unjust enrichment claim that "ar[ose] exclusively from conduct" governed by the Copyright Act).

## III. Plaintiffs Have Failed To State A Claim Under IRPA.

Plaintiffs' IRPA claims should be dismissed because they fail to plead actionable claims. First, Plaintiffs fail to plead a violation within the territorial reach of IRPA. Second, Plaintiffs fail

---

[3] Plaintiffs' characterization of the yearbook excerpts as "advertis[ing]" (BC ¶¶ 1, 6–7; LC ¶¶ 1, 14–15) is not supported by their factual allegations. *See infra* at III.B.2. But even if it were true, it makes no difference. *See, e.g.*, *Maloney*, 94 F. Supp. 3d at 1008 (right of publicity claim preempted where plaintiffs alleged use of photos containing their identities "for the purpose of advertising").

to plead the elements of a *prima facie* IRPA claim. And third, Plaintiffs' claims are barred by IRPA's statutory exemptions.

### A. Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA.

Plaintiffs fail to plead a claim within IRPA's territorial scope because they do not plausibly allege that any IRPA violation occurred in Illinois. Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citation omitted). Nothing in the text of IRPA conveys such an intent. What is more, legislative history confirms that IRPA was not intended to apply to conduct outside Illinois. The bill's sponsor, Representative Turner, noted that liability under IRPA would be available only for "*the use* of that person's image [or likeness] *here in Illinois*." HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (emphases added). And when a statute does not have extraterritorial reach, a plaintiff must plead that the alleged violation occurred in Illinois. *E.g. Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008); *Miche Bag, LLC v. Be You, LLC*, No. 11-cv-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011). Plaintiffs have not done so. An alleged violation "may be said to take place within [the] state if the circumstances relating to the transaction occur[red] *primarily and substantially*" in Illinois. *Avery*, 216 Ill. 2d at 186 (emphasis added). This means the "majority of circumstances relating to the alleged violation" must have occurred in Illinois. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63–65 (1st Dist. 2008).[4] But Plaintiffs allege only that PeopleConnect violated IRPA by "us[ing]" their identities in search results on Classmates.com to advertise its products. LC ¶ 13; *see* BC ¶¶ 6–7, 12, 25. That

---

[4] If IRPA were construed to apply to the use of a person's identity in states other than Illinois, numerous applications of IRPA would violate the Dormant Commerce Clause, which "precludes the application of a state statute" that has "the practical effect of … control[ling] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (citations omitted).

is not enough because PeopleConnect "used" their identities in Illinois only if such search results displayed to a user physically located *in Illinois*.

Plaintiffs' fleeting mentions of Illinois do not show that any alleged IRPA violation "occur[red] primarily and substantially" in Illinois. *Avery*, 216 Ill. 2d at 186. Plaintiffs allege they are Illinois residents (BC ¶ 18; LC ¶ 17), but that does nothing to show that the alleged violations occurred primarily and substantially in Illinois. *E.g.*, *Vulcan Golf*, 552 F. Supp. 2d at 775; *Valley Air Serv. v. Southaire, Inc.*, No. 06 C 782, 2009 WL 1033556, at *12–13 (N.D. Ill. Apr. 16, 2009). Plaintiffs also allege that PeopleConnect "acquire[s] identifying information about Illinois residents," LC ¶ 15; *see also* BC ¶ 3, and "provid[es] its products and services to existing customers in this state and district." BC ¶ 12; *see also* LC ¶ 17. But again, the extraterritoriality inquiry looks to whether the *alleged violation* occurred in Illinois. *Landau*, 381 Ill. App. 3d at 65.

### B.    Plaintiffs Fail To Plead A Prima Facie IRPA Claim.

To plead a *prima facie* claim under IRPA, a plaintiff must allege "(1) the use of his identity; (2) for commercial purposes; and (3) without his consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citation omitted); *see* 765 ILCS 1075/30(a). Plaintiffs have failed to plead the first two of those elements.

#### 1.    Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities.

Plaintiffs must allege a "use" of their identities—specifically "the *public* use or *holding out of* [their] identit[ies]." 765 ILCS 1075/5, 1075/30(a) (emphasis added). This requires an allegation of actual dissemination of their identities. *See Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 324–25 (2d Dist. 2006). There is no such allegation in Plaintiffs' Complaints.

Bonilla, for example, alleges that Classmates.com "users *may* search for Bonilla's name," but does not claim that anyone actually did. BC ¶ 26 (emphasis added). Likewise, Loendorf alleges

14

she "discovered that [PeopleConnect] uses her [identity]" on its website and that Classmates.com users are "free to enter the information of a particular school," but does not allege that anyone actually searched for her school or viewed her identity. LC ¶¶ 4, 23. That is crucial because a self-generated, nonpublic "use" of a person's identity is not actionable—certainly nothing on the face of IRPA or in its legislative history suggests it applies if a defendant displays a plaintiff's identity *to her alone or to her agents* in response to *an inquiry from her or her agents acting on her behalf*.

To the contrary, IRPA's purpose is to address a circumstance antithetical to the self-imposed, wholly private "use" alleged here: the public use of a person's identity in a false or misleading endorsement of a product. That is clear from the Illinois General Assembly's debate over IRPA, as members of the Illinois House of Representatives "cited examples of the kind of commercial uses that the IRPA is meant to address." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). Every example involved a public-facing use of someone's identity that would necessarily be viewed by someone other than the depicted person. HB 1422, 90th Gen. Assemb., 129th Leg. day, Tr. of House Debate 7–8 (Ill. May 21, 1998) (statement of Rep. Black) (noting as an example an ad using a legislator's picture "on the back of a CTA bus indicating that [he] endorsed a particular kind of hair tonic"); HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (noting as an example a "commercial[]" depicting "Fred Astaire dancing with a vacuum cleaner"). Because Plaintiffs have not alleged any such "use," their claims fail.

### 2. Plaintiffs Fail To Plead That PeopleConnect Used Their Identities For A Commercial Purpose.

Plaintiffs have not plausibly alleged that PeopleConnect used their identities for "commercial purposes." 765 ILCS 1075/30(a); *see id.* § 5 (defining "commercial purposes" to include use of identity "for purposes of advertising" and "in connection with the offering for sale

15

or sale" of goods and services). Plaintiffs attempt to plead this element in a variety of ways, but all fail for the same reason: as many courts have found, a website does not use a person's identity for a "commercial purpose" merely by identifying the person—by photo or name—as the subject of a work in response to a user inquiry.

*Thompson* is on point. There, the plaintiff claimed an online photo retailer violated IRPA by allowing users to "type terms into a search box" and view "sample images matching a user's search terms," including an image of the plaintiff. 2013 WL 3321612, at *2. The court dismissed the claim for failure to allege a "commercial purpose, explaining that "IRPA prohibits the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but does not prohibit using an individual's identity when "a photograph of [the] person" or another work about the person is the very thing the consumer "is considering whether to buy." *Id.* Thus, "display[ing] a preview of the exact thing [defendant] seeks to sell"—here, displaying yearbook excerpts—does not qualify as a "commercial purpose." *Id.*

Other courts likewise have rejected IRPA and other right of publicity claims on this basis. In *Dobrowolski v. Intelius, Inc.*, for example, the court rejected an IRPA claim brought against a website that displayed the plaintiff's likeness to promote the sale of information background reports in part because "plaintiffs' identities are not used to promote a separate product" and instead "are used because plaintiffs' identities are part of the product offered for sale." No. 17-cv-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). The court explained that this meant the plaintiff's identity was not being presented "for a commercial purpose." *Id*. And in *Nieman v. VersusLaw, Inc.*, the court similarly rejected an IRPA claim against an online searchable database of court records where the plaintiff's identity was used in "search results" "linking copies of documents … to his name," which a user could "access … for a fee." 512 F. App'x 635, 636–37

16

(7th Cir. 2013). As the district court in that case explained, "[p]laintiff's identity is not being used for a 'commercial purpose' as defined by the Right of Publicity Act because his name is used only to find documents related to his case . . . . [h]is name is not being held out or used to entice anyone to buy a product." *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013); *see also Gionfriddo v. MLB*, 94 Cal. App. 4th 400, 416 (2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product"); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) (Amazon's display of book cover containing plaintiff's photo did not use plaintiff's identity for commercial purpose under Florida right of publicity law); *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989) (rejecting right of publicity claim because use of individual's name in movie title was not "wholly unrelated" to the product itself (the movie) nor "used to promote or endorse a collateral commercial product").

This bedrock principle also dooms Plaintiffs' claims under IRPA. All that Plaintiffs have alleged here is that excerpts from yearbooks were used to promote the sale of yearbooks and access to those yearbooks. Their IRPA claims thus should be dismissed as were the IRPA claims in *Thompson*, *Dobrowolski*, and *Nieman*.

***Bonilla's "Advertisement" For "Reprinted Yearbooks" Theory.*** Bonilla's claim that PeopleConnect uses his identity to "advertis[e]" the sale of "reprinted yearbooks," BC ¶ 6, fails because the images allegedly containing his identity are from the yearbook itself. At most, PeopleConnect is "displaying a preview of the exact thing [it] seeks to sell." *Thompson*, 2013 WL 3321612, at *2; *Dobrowolski*, 2018 WL 11185289, at *3. Bonilla's similar allegation that PeopleConnect uses his identity "in connection with the offering for sale" of its yearbooks, BC ¶ 8, fails for the same reason. *See Thompson*, 2013 WL 3321612, at *2 ("Getty Images does not

17

use Thompson's photographs in connection with an offer to sell or a sale of *some other product, merchandise, good or service as contemplated by [IRPA].*") (emphasis added).

*Plaintiffs' "Advertisement" For "Subscription" Theory.* Because their identities are "part of the product offered for sale [*i.e.*, yearbooks]"—which fails the "commercial purpose" test, *Dobrowolski*, 2018 WL 11185289, at *3—Plaintiffs attempt to concoct a "separate product" that their identities are purportedly used to advertise: a paid "subscription plan." BC ¶ 6; LC ¶ 9 ("monthly subscription service"). In doing so, Plaintiffs parrot *Lukis v. Whitepages, Inc.*, in which the court found that the plaintiff adequately pleaded a "commercial purpose" because a "subscription" being "advertised" was a "separate product" from a background report about the plaintiff. 454 F. Supp. 3d 746, 760–61 (N.D. Ill. 2020). But *Lukis* does not help Plaintiffs.

First, Plaintiffs' conclusory assertions that PeopleConnect uses their identities to "advertise" its "subscription plan" are refuted by their actual allegations. Most of the screenshots Plaintiffs cite reference yearbooks or a free membership, *not* a paid "subscription plan." *See, e.g.*, BC ¶¶ 25 ("Save . . . on a gift of a yearbook reprint"), 27 ("Own this yearbook today"), 28 ("Order a Hardcover Reprint"), 30 ("Join for free to view full-size yearbooks."); LC ¶¶ 6, 8, images 1 ("Order a Hardcover Reprint"), 2 ("Join for free . . . ."). Those that do reference a paid membership plan either (1) do not include Plaintiffs' identities (*e.g.*, BC ¶ 31, LC ¶ 8, images 3, 6; (2) are generic menu options like "Help" and "Account," not advertisements (*e.g.*, LC ¶ 8, images 4, 5); or (3) are search results that only include information about a membership in an "adjacent" panel (*e.g.*, BC ¶¶ 26, 29; LC ¶ 6). None of these constitute advertisements for a "subscription plan."

Second, even if Plaintiffs' identities were allegedly used to advertise a "subscription plan," Plaintiffs still could not show a commercial purpose because the yearbook excerpts in which Plaintiffs appear are "*part* of the product"—the membership subscription—"offered for sale."

*Dobrowolski*, 2018 WL 11185289, at *3 (emphasis added). Loendorf makes the conclusory assertion that the "subscription plan" it calls "completely unrelated" to the yearbooks themselves. LC ¶¶ 9, 10. Not so. Plaintiffs' allegations make clear that access to the yearbooks (which contain Plaintiffs' identities) is part of its subscription plan. *See* BC ¶¶ 8 (PeopleConnect "sell[s] access to the records to paying subscribers via its 'CM+' online membership plan"), 26, 29; LC ¶¶ 1, 6, 8, images 3, 6 ("save" on "reprinted yearbooks").

   ***Bonilla's "Advertisement" For "Free Version" Of Website Theory.*** Finally, Bonilla attempts to plead a commercial purpose by claiming that PeopleConnect uses his identity for "promoting the free version of its website." BC ¶ 7. He alleges that PeopleConnect profits from the "free version" of Classmates.com by "selling ads on its website."[5] *Id.* But as noted above, the images allegedly containing his identity are from the reprinted yearbook itself, so PeopleConnect is "display[ing] a preview of the exact thing it seeks to sell," which is not a commercial purpose. *Thompson*, 2013 WL 3321612, at *2. Moreover, courts have repeatedly rejected the notion that placing third-party ads on a website adjacent to a person's identity violates IRPA. *E.g.*, *Vrdolyak*, 206 F. Supp. 3d at 1389 (dismissing IRPA claim where plaintiff alleged online attorney directory displayed third-party ads next to his identity); *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *7 (N.D. Ill. Dec. 8, 2015) ("Plaintiff cannot bring a claim under the IRPA merely based upon Amazon listing his name as an author . . . alongside the ads that Amazon posts.").

   This makes sense. The contrary rule would transform every use of a person's name on a website with third-party ads into an actionable IRPA claim. *See Vrdolyak*, 206 F. Supp. 3d at 1388

---

[5] Loendorf likewise alleges that PeopleConnect provides "free access" to her information to "get[] page views from non-paying users, from which [PeopleConnect] profits by selling ad space." LC ¶ 7. But she expressly disclaims any theory of liability that does not depend on PeopleConnect's alleged use of her identity to "advertise its subscription service." LC ¶ 14. In any event, even if her Complaint could be construed as raising this argument, it fails for the same reasons as Bonilla's.

("[T]o hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals . . ., such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field."). Nothing suggests that the Illinois legislature had such a sweeping intent.

### 3. Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions.

To "avoid[] . . . serious First Amendment problems," IRPA carves out various uses of an individual's identity to which the Act does not apply. *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003). Three of those carve outs are: (i) Section 35(b)(1) ("Exemption 1") exempts any "book," "article," or "other [] visual . . . work" that "portray[s] [or] describe[s]" an individual; (ii) Section 35(b)(2) ("Exemption 2") exempts any use of a person's identity for "non-commercial purposes, including any news [or] public affairs"; and (iii) Section 35(b)(4) ("Exemption 4") exempts any "advertisements . . . for a use described under" the preceding exemptions. 765 ILCS 1075/35. The Court should dismiss Plaintiffs' IRPA claims under these exemptions for the same reason the Illinois legislature included them—doing so avoids the "serious First Amendment problems" inherent in Plaintiffs' claims.

### i. IRPA Exemption 1 Bars Plaintiffs' Claims.

Exemption 1 in tandem with Exemption 4 squarely foreclose Plaintiffs' IRPA claims. The Classmates.com online library and reprinted yearbooks fall under Exemption 1 because they are "book[s]," "article[s]," or "other [] visual . . . work[s]" that "portray [or] describe" an individual. *Id.* § 35(b)(1). A school yearbook is a "book." BC ¶¶ 2, 24, 28; LC ¶¶ 2, 8. *See Yearbook*, *Dictionary.com*, https://www.dictionary.com/browse/yearbook?s=t (last visited Apr. 1, 2021) ("[A] book published by the graduating class of a high school or college, containing photographs of class members and commemorating school activities."). And within each yearbook are "article[s]" or "other [] visual . . . work[s]": the stories, photos, captions, and other written or

graphic material that comprise each of these scholastic publications. *See Kincaid v. Gibson*, 236 F.3d 342, 351 (6th Cir. 2001) ("There can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material[.]"). Plaintiffs cannot plead around these facts. Indeed, they have not even attempted to do so.

Because Classmates.com's yearbooks fall under Exemption 1, this bars Bonilla's claim that PeopleConnect violated IRPA by using his identity in its "[y]earbook [c]ollection." BC ¶ 8. The remainder of Plaintiffs' claims depend on their allegations that PeopleConnect used their identities to "advertis[e]" yearbooks or a "subscription" to access yearbooks. *Id.* ¶¶ 6–9; LC ¶¶ 1–2. Even if Plaintiffs' characterizations were accurate, these uses are plainly exempt under Exemption 4 because they are "advertisements" for material protected under Exemption 1. 765 ILCS 1075/35(b)(4). PeopleConnect's alleged use of Plaintiffs' identities therefore is beyond IRPA's reach as a matter of law.

### ii.     IRPA Exemption 2 Bars Plaintiffs' Claims.

Exemption 2, again in combination with Exemption 4, also forecloses Plaintiffs' IRPA claims because PeopleConnect is alleged to use identifying information for "non-commercial purposes." 765 ILCS 1075/35(b)(2). Yearbooks provide biographical information and images without proposing any sort of commercial transaction. That is a paradigmatic use of an individual's identity for "non-commercial purposes." *Id.*

Moreover, Exemption 2 also applies because yearbooks serve a "news [or] public affairs" purpose. 765 ILCS 1075/35(b)(2). As the Seventh Circuit has explained, "[t]he newsworthiness or public interest exception should be construed broadly, covering . . . any subject of public interest." *Bogie v. Rosenberg*, 705 F.3d 614 (7th Cir. 2013) (citation omitted) (affirming dismissal of Wisconsin right of publicity claim under the news or public interest exception). The exemption

includes works that seek to "entertain[]" and "convey[] truthful" information to the public. *Best v. Berard*, 776 F. Supp. 2d 752, 759 (N.D. Ill. 2011) (Exemption 2 barred IRPA claim against reality TV show that depicted person's arrest). That surely is true of the yearbooks PeopleConnect makes available to the general public. Yearbooks both "entertain" and "convey truthful" information. *See id.* And they are an important public record of a community's activities, serving as a critical primary source for journalists, historians, archivists, genealogists and other scholars. Even the Library of Congress maintains a collection of yearbooks. *See Rahway High School yearbook: select pages*, Library of Congress, https://www.loc.gov/resource/mss85590.041/?sp=1&r=-0.649,0.265,2.298,0.978,0 (last visited Apr. 1, 2021).

Because yearbooks, therefore, fall under Exemption 2, Exemption 4 bars Plaintiffs' attempt to impose liability for any purported "advertisements" for those yearbooks. *See* 765 ILCS 1075/35(b)(4). Again, because the uses of Plaintiffs' identity in the yearbooks *themselves* are exempted from IRPA, any advertisements for those same yearbooks are likewise exempted. That suffices to foreclose Plaintiffs' IRPA claims in their entirety.

## IV. Bonilla Has Failed To State A Claim On His Other Causes Of Action.

### A. Bonilla Has Failed To State A Claim Under ICFA.

The Court should dismiss Bonilla's ICFA claim because he does not plausibly plead the required elements. To state a claim under ICFA, a plaintiff must allege: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *CHS Acquisition Corp. v. Watson Coatings, Inc*., No. 17-cv-4993, 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018) (citation omitted). Each of these elements must be "pled with particularity" under Federal Rule of Civil Procedure 9(b), *id.* at 13,

specifying "the 'who, what, when, where, and how' of the fraud or misrepresentation." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012).

Bonilla fails to plead any of these elements, let alone with particularity. Most of all, he does not plead that PeopleConnect committed a "deceptive act or practice," as his claim rests on his allegation that PeopleConnect "use[d]" his identity "without consent" in violation of IRPA. BC ¶ 64. The ICFA enumerates specific statutes the violation of which can give rise to an ICFA claim. 815 ILCS 505/2Z. IRPA is not one of them. *See Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019) (dismissing ICFA claim because allegedly statutory violation was "not one of the statutes enumerated" in ICFA). Bonilla does not otherwise plead a "stand-alone … fraudulent act or practice" that falls within ICFA's scope, *Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*, 887 F.3d 803, 822 (7th Cir. 2018); instead he pleads only conclusory assertions that PeopleConnect "engaged in and continues to engage in deceptive and unfair trade practices" by "engaging in the conduct described in this complaint," BC ¶ 65. Even under Rule 8, such "[t]hreadbare recitals" and "conclusory statements" are not sufficient. *E.g. Henderson v. City of Chi.*, No. 14 C 1164, 2015 WL 1954464, at *1 (N.D. Ill. Apr. 29, 2015) (dismissing complaint where plaintiff offered only "conclusory allegations") (quotation omitted). But again, Bonilla must plead this claim with particularity under Rule 9(b). Because he comes nowhere close to doing so, his claim must be dismissed. *E.g.*, *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*, No. 09 C 2046, 2010 WL 624709, at *5–6 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011) (dismissing ICFA claim for fail to plead with particularity under Rule 9(b)).

## B.    Bonilla Fails To State A Claim For Intrusion Upon Seclusion.

To state a claim for intrusion upon seclusion under Illinois law, a plaintiff must show: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded

on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Browning v. AT & T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009). Bonilla does not come close to pleading any of these elements.

*First*, Bonilla fails to allege an unauthorized intrusion. He admits the yearbooks in the online library for the most part were *donated* to PeopleConnect. BC ¶ 43 ("At least some, and possibly all, of [its] Yearbook Collection was built via such donations."). Indeed, Bonilla's yearbook is available to the public through his high school's foundation.[6] Acceptance of yearbook donations is not an "unauthorized intrusion." Nor does he allege any other means by which PeopleConnect obtained yearbooks that could be unauthorized. *See Mucklow v. John Marshall L. Sch.*, 176 Ill. App. 3d 886, 893–94 (1st Dist. 1988) (affirming dismissal of intrusion upon seclusion claim where plaintiff failed to show access to school record was unauthorized).

*Second*, it strains credulity for Bonilla to claim that disclosure of information from his high school yearbook is "highly offensive or objectionable to a reasonable person." *Browning*, 682 F. Supp. 2d at 835. Yearbooks are, by their very nature, public documents. And the information Bonilla claims was disclosed about him (*e.g.*, his name, place of residence, school, and participation in the swim team, BC ¶ 24) is not remotely the sort of sensitive information that would be highly offensive to a reasonable person if disclosed. *See Patel v. Zillow, Inc.*, No. 17-cv-4008, 2017 WL 3620812, at *10 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019) (dismissing claim where plaintiffs offered "no argument as to how any possible intrusion in this case was offensive").

---

[6] Yearbooks from Bonilla's alma mater, including the yearbooks that are the basis of his claims, are publicly available online. *See* http://www.omahachsarchives.org/yearbook.php (last accessed Apr. 1, 2021).

*Third*, it is absurd to suggest that the information in Bonilla's yearbook is private. For an intrusion upon seclusion claim, private facts include "'family problems, romantic interests, sex lives, health problems, future work plans,'" not "'names, telephone numbers, addresses or social security numbers' or matters of public record." *Wrenn v. Exelon Generation, LLC*, No. 18 C 2524, 2019 WL 11660918, at *10 (N.D. Ill. Mar. 5, 2019) (citation omitted). The basic information allegedly displayed from Bonilla's *public* yearbook is precisely the sort of information that cannot be the basis of an intrusion upon seclusion claim. Further, even if the information about Bonilla disclosed by his yearbook were private at some point, Bonilla has not alleged he "attempted to keep private facts private." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005).

*Fourth*, Bonilla has not and cannot allege that he suffered anguish as a result of PeopleConnect's purported "intrusion." Bonilla appears to allege he was harmed due to the *dissemination* of his information, BC ¶¶ 69–70, but "a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *see also Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (holding that plaintiffs "pleaded themselves out of court by admitting that [d]efendant's publication" rather than the offensive nature of the intrusion itself "caused their injury."). Bonilla cannot allege any anguish resulting from the purported "intrusion" because he offers only a generalized assertion that he was "harmed" by PeopleConnect's use of his information. BC ¶ 71. This conclusory allegation is not enough. *See McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012) (dismissing intrusion claim because plaintiff's "unsupported statement that she suffered injury is not sufficient to plausibly suggest that she is entitled to relief").

## C.    Bonilla Fails To State A Claim For Unjust Enrichment.

Under Illinois law, "unjust enrichment is not a separate cause of action." *Pirelli*, 631 F.3d at 447. Bonilla's unjust enrichment claim rests on the same facts as his IRPA claim and thus falls

with his IRPA claim. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Even if Bonilla had pleaded an IRPA claim—and he has not—he alleges none of the "fraud, duress, undue influence" or similar wrongful conduct needed to state such a claim. *Pirelli*, 631 F.3d at 447 (quotation marks omitted).

**V.      Plaintiffs' Claims Are Barred By The Constitution.**

> **A.      PeopleConnect's Alleged Conduct Is Protected By The First Amendment.**

Even if Plaintiffs could overcome the other failings of their Complaints, their claims still would not be viable because at least two provisions of the Constitution bar their claims.

> **1.      The Conduct Alleged Is Core First Amendment Speech.**

Plaintiffs' efforts to prevent PeopleConnect from disseminating yearbooks is an attack on constitutionally protected speech. The First Amendment protects "the public expression of ideas, narratives, concepts, imagery, opinions—scientific, political, or aesthetic—to an audience whom the speaker seeks to inform, edify, or entertain." *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990). This protection is not contingent on the perceived value of the speech. *United States v. Stevens*, 559 U.S. 460, 470 (2010). Nor does it matter whether the speech is disseminated free of charge or "carried in a form that is sold for profit." *Nieman*, 512 F. App'x at 638 ("The for-profit nature of the defendants' aggregation websites does not change the analysis." (citation omitted)).

The yearbooks and yearbook excerpts Plaintiffs take issue with easily qualify as core constitutionally protected speech under this standard. Indeed, "[t]here can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material, and that these materials constitute expression for purposes of the First Amendment." *Kincaid*, 236 F.3d at 351. And the "written material" within those yearbooks, *id.*, such as the "biographical information" Plaintiffs seek to prevent PeopleConnect from releasing, are likewise protected. BC ¶¶ 2, 39; LC ¶ 2; *see Sorrell v. IMS*

*Health, Inc.*, 564 U.S. 552, 570 (2011); *Vrdolyak*, 206 F. Supp. 3d at 1388 (holding that First Amendment protects online directory of attorney information); *Dex Media*, 952, F.3d at 954 (concluding that "the yellow pages directories qualify for full protection under the First Amendment"). As Plaintiffs' Complaints make clear, the materials they seek to suppress are a source of information and interest for millions of readers. *See, e.g.*, BC ¶¶ 3, 49; LC ¶¶ 2, 31.

### 2. Yearbooks Are Fully Protected, Non-Commercial Speech.

Plaintiffs' proposed application of their state law claims to First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Vrdolyak*, 206 F. Supp. 3d at 1389. Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed*, 576 U.S. at 163; *see Sorrell*, 564 U.S. at 571 (the fact that law is content-based is "all but dispositive"). Here, Plaintiffs cannot show that regulating the display of yearbooks and yearbook excerpts serves a compelling state interest, let alone is narrowly tailored.

Because Plaintiffs cannot overcome strict scrutiny, they likely will argue that PeopleConnect's use of yearbooks and yearbook excerpts are subject to the less demanding standard that applies to regulations of commercial speech. But that is incorrect. In general, commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 766 (1976); *see Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516–17 (7th Cir. 2014) (noting that "core" definition of commercial speech is supplemented by "common-sense distinction" between commercial and non-commercial speech). The yearbooks and yearbook excerpts PeopleConnect disseminates do not "propose a commercial transaction" or otherwise qualify as commercial speech as a matter of "common-sense." *Va. State Bd. of Pharmacy*, 425 U.S. at 762; *Jordan*, 743 F.3d at 517. To the contrary, they are "creative publications" that "exist[] for the purpose of expressive activity."

27

*Kincaid*, 236 F.3d at 351. By Plaintiffs' own account, the yearbook materials convey only truthful information about their school-age selves. *See, e.g.*, BC ¶ 24; LC ¶ 6.

As to the yearbook excerpts, these too fall outside the definition of commercial speech. Plaintiffs repeatedly describe these excerpts as "advertis[ing]," *e.g.*, BC ¶¶ 6–7, LC ¶¶ 13–14, but their factual allegations belie this characterization. In every example Plaintiffs provide, their identities are used in the excerpts merely to show what is contained in the yearbook library, rather than to promote, endorse, or push the sale of a product. *E.g.*, BC ¶¶ 26–31; LC ¶¶ 6–9.

Even if the yearbook excerpts were "advertisements," they still would not qualify as commercial speech. *First*, the excerpts are a republication of information from yearbooks already in the public domain—a category to which the commercial speech standard does not apply. *See, e.g.*, *Nieman*, 512 F. App'x at 638 (affirming dismissal of IRPA claim based on "republication of documents contained in the public record" without applying the commercial speech standard); *Vrdolyak*, 206 F. Supp. 3d at 1386–87 (dismissing IRPA claim attacking attorney directory of "information gleaned from public records," and concluding directory was not commercial speech even though it contained "advertisements"). *Second*, courts have consistently held that if a publication is constitutionally protected speech—as the yearbooks are—disseminating portions of it in advertising to promote that publication is likewise protected and not treated as commercial speech. "The owner of a product is entitled to show that product to entice customers to buy it." *Gionfriddo*, 94 Cal. App. 4th at 414; *see, e.g.*, *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

Plaintiffs attempt to clear this constitutional hurdle by claiming that PeopleConnect uses their information to advertise a "subscription plan" that includes access to all of their yearbooks, as opposed to advertising just the yearbooks themselves. BC ¶¶ 6, 8; *see* LC ¶¶ 9–10. But as

discussed above, this purported distinction has no factual support. Nor does the supposed distinction between an advertisement for an individual yearbook and an advertisement for access multiple yearbooks make any difference from a constitutional perspective. *See Namath v. Sports Illustrated*, 80 Misc. 2d 531, 562–35 (N.Y. Sup. Ct., N.Y. Cnty. 1975) (magazine's use of Joe Namath's identity to advertise subscriptions is protected by First Amendment against right of publicity action), *aff'd*, 48 A.D.2d 487 (N.Y. App. Div. 1975), *aff'd*, 39 N.Y.2d 897, 898 (1976); *accord Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (1995).

### 3. Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny.

If the Court nonetheless finds that PeopleConnect's speech is commercial, any regulation of this speech still must survive intermediate scrutiny. *See FTC v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011). To survive intermediate scrutiny, a restriction must satisfy the following: "(1) there is a substantial interest supporting the restriction, (2) the restriction directly advances that substantial interest, and (3) the restriction is 'narrowly drawn.'" *Id.* (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564–65 (1980)). The Seventh Circuit analyzes the second and third prongs together, asking if there is a "reasonable fit" between the restriction on the speech at issue and the "goal to be achieved by that restriction." *Pearson v. Edgar*, 153 F.3d 397, 402–403 (7th Cir. 1998) (citation omitted).

Plaintiffs cannot satisfy this test. First, Plaintiffs do not allege that the dissemination of yearbook materials is "misleading [or] related to unlawful activity," so there is no substantial interest in its regulation. *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that State may not "suppress the dissemination of concededly truthful information about entirely lawful activity"). Second, there is no "reasonable fit" between the aims of IRPA (or any of the other claims Bonilla asserts) and barring PeopleConnect's publication of

yearbooks and yearbook excerpts. *Pearson*, 153 F.3d at 403. In particular, Plaintiffs' proposed application of IRPA bears no connection to the legislature's aim of preventing unauthorized commercial endorsements.[7]

### B. Applying IRPA To This Case Violates The Dormant Commerce Clause.

A "state statute [that] is neutral on its face, [and] has only indirect or incidental effects on interstate commerce" nonetheless violates the Constitution's Commerce Clause if it impermissibly burdens interstate commerce. *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 657 (7th Cir. 1995). Facially neutral statutes that burden interstate commerce are analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Under *Pike*, a facially neutral state law violates the Commerce Clause if "the burden imposed on [interstate] commerce" is "excessive in relation to the local interests served by the statute." *Nat'l Solid Wastes Mgmt.*, 63 F.3d at 663.

Here, applying IRPA to PeopleConnect's display of yearbooks and yearbook excerpts burdens its ability to engage in interstate commerce in a way that is wholly out of proportion to the *de minimus* state interest in suppressing this speech. There is no reasonable connection between the legislature's intended aims of IRPA—protecting against false endorsements of products—and a prohibition on PeopleConnect's ability to sell yearbooks and display excerpts that identify the persons included in the yearbooks in response to user-generated queries. So the state interest here is negligible, at best.

This negligible interest is far outweighed by the burden on interstate commerce of applying IRPA as Plaintiffs propose. Because of the "boundary-less" nature of the internet, PeopleConnect's

---

[7] *See* 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7–8; 90th Ill. Gen. Assem., House Proceedings, Apr. 24, 1997, at 227 (noting examples of commercial uses that IRPA was meant to address, including an ad using a legislator's picture "on the back of a CTA bus indicating that [he] endorsed a particular kind of hair tonic" and a "commercial[]" depicting "Fred Astaire dancing with a vacuum cleaner").

business is inherently nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without 'project[ing] its legislation into other States.'") (citation omitted). PeopleConnect transmits information across state lines through the internet every hour of every day, providing yearbook reprints and excerpts to website users located in Illinois and every other state. If IRPA forbids that conduct, as Plaintiffs maintain, then PeopleConnect must continually ascertain the precise physical location of each user who views a yearbook or excerpt, whether that person is at a desktop, on a laptop, or a smartphone, and then block any alleged identity information from displaying to users while they are physically located in Illinois. Its only alternative would be to apply the restrictions imposed by IRPA nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope. *See* 1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 6:3, Westlaw (2d ed. updated May 2020).[8]

Making PeopleConnect choose between excising Illinois from its nationwide transmission of information—to the extent it is even technologically feasible—or treating IRPA as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would have the effect of "exalt[ing] the public policy of [Illinois] over that of another" state.

---

[8] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like PeopleConnect. *E.g. Am. Booksellers Found.*, 342 F.3d at 103; *Am. Libs. Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) ("Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations."); *ACLU v. Johnson*, 194 F.3d 1149, 1161 (10th Cir. 1999) ("[T]he nature of the Internet forecloses the argument that a statute [regulating speech over the Internet] applies only to intrastate communications."); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) ("Given the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect.").

*Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 667–68 (7th Cir. 2010). That is just what the Commerce Clause forbids.

## VI.    The Court Lacks Personal Jurisdiction Over Defendant.

Not only have Plaintiffs failed to allege that any conduct alleged occurred "primarily and substantially" in Illinois, as they must for IRPA to apply, *see supra* Section III.A, but they fail even to adequately allege that PeopleConnect has sufficient "minimum contacts" with Illinois to support the Court's exercise of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Although Plaintiffs offer the conclusory allegation that the Court has "specific personal jurisdiction" over PeopleConnect, LC ¶ 21; BC ¶ 12 ("personal jurisdiction"), this is incorrect. Specific jurisdiction exists only if: (1) PeopleConnect "purposefully directed its conduct into the forum State"; and (2) Plaintiffs' claims "arise out of or relate to" PeopleConnect's "forum conduct." *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1785–86 (2017) (citation omitted); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Here, Plaintiffs do not offer a theory of PeopleConnect's Illinois conduct that would pass this test.

The Seventh Circuit has held that operating a website that is accessible in the forum state, but does not specifically target the forum state, does not create personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016). This reflects that specific jurisdiction must rest on forum-related contacts of the *defendant*, not the "plaintiff (or third parties)." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015). When all a defendant does is make a website available in a forum state, the defendant's relation to the forum is "entirely fortuitous, depending wholly on activities outside of the defendant's control." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803. This makes Bonilla's

allegation that there is personal jurisdiction simply because PeopleConnect "provid[es] its products and services to prospective customers" in Illinois and because PeopleConnect uses the "names, photographs, likenesses, and images" of Illinois residents a non-starter. BC ¶ 12. These are connections between a *plaintiff* and Illinois, not PeopleConnect and Illinois.

Plaintiffs thus allege that PeopleConnect "purposely advertises their product in this district using Plaintiff's personal information" and "provid[es] its products and services to existing customers in this state . . . ." LC ¶ 21; BC ¶ 12. But the "advertisements" Plaintiffs allege are "listing[s] of search results" that users access by "enter[ing] the information of a particular school" or particular individual. LC ¶¶ 3–5; *see* BC ¶¶ 25–26. As in *be2*, users of Classmates.com who encounter these search results "have done so unilaterally by stumbling across the website and clicking a button" that displays search results based on the users' own search terms. 642 F.3d at 559. Whatever actions a user might take within the Classmates.com website cannot support the exercise of specific jurisdiction over PeopleConnect because it in no way shows that PeopleConnect is targeting Illinois. *See Philos Techs.*, 802 F.3d at 913. And because Plaintiffs do not plead that PeopleConnect does anything more to target Illinois with its "advertisements," all they have alleged are the sorts of generalized internet contacts that fall short of establishing personal jurisdiction. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801–02; *be2*, 642 F.3d at 559; *Gullen*, 2016 WL 245910, at *2.

Finally, Loendorf offers an alternative theory—that PeopleConnect "purposefully subjects itself to jurisdiction in this Court by knowingly searching and obtaining private and public records and/or identifying information on Illinois residents." LC ¶ 15. But this theory too falls short. First, although Plaintiff alleges that PeopleConnect "knowingly" obtains yearbooks with images of current Illinois residents, she does not allege that PeopleConnect targets Illinois in its efforts. *See*

*id*. That is because when PeopleConnect provides a search result, the yearbook accessed can originate from any state, even if the person being searched currently resides in Illinois. This underscores the nationwide way in which PeopleConnect gathers yearbooks. The fact that PeopleConnect at times gathers yearbooks with records about individuals who happen to be current Illinois residents and sometimes acquires information taken from Illinois yearbooks thus is not sufficient to show that PeopleConnect has "purposely exploited the Illinois market." *be2*, 642 F.3d at 558.

Second, even assuming *arguendo* that PeopleConnect does purposefully direct its conduct to Illinois by incidentally obtaining yearbooks that include images of current Illinois residents, Plaintiff's alleged injury does not "arise out of or relate to" that alleged obtaining of yearbooks. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1786 (citation omitted). To be sure, the Supreme Court recently held that a plaintiff proceeding under the "aris[ing] out of or relate[d] to" test need not allege a "strict causal relationship" between a defendant's forum contacts and her alleged injuries—though in doing so the Court was careful to note its decision did not "consider internet transactions, which may raise doctrinal questions of their own." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 n.4 (2021). But even if it is assumed that under *Ford Motor Co.* Plaintiff need not allege a "strict causal relationship," she still must allege a "link between the defendant's forum contacts and the plaintiff's suit." *Id.* at 1031–32.

That link is lacking here. Plaintiff does not argue that PeopleConnect acts unlawfully by collecting yearbooks. She is clear that her claim challenges only the use of her depictions in those yearbooks in supposed advertisements. So her claimed injury only "relates to" PeopleConnect's post-acquisition "use" of the yearbooks that PeopleConnect obtains, not PeopleConnect's search for and acquisition of data. She therefore has not alleged a link between PeopleConnect's

34

concededly lawful gathering of yearbooks sufficient to support the exercise of personal jurisdiction.

## **CONCLUSION**

For the foregoing reasons, the Complaints should be dismissed and Plaintiffs compelled to adjudicate their claims in arbitration. In the alternative, the Complaints should be dismissed for the lack of personal jurisdiction over PeopleConnect. And if the Court does not dismiss the Complaints on either of these bases, the Court should dismiss the Complaint with prejudice for the reasons set forth above.

Dated: April 5, 2021

Respectfully submitted,

PEOPLECONNECT, INC.

By:  */s/ Wade A. Thomson*

Wade A. Thomson, #6282174
Debbie L. Berman, #6205154
Clifford W. Berlow, #6292383
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
wthomson@jenner.com
dberman@jenner.com
cberlow@jenner.com

Ian Heath Gershengorn (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: 202 639-6000
Facsimile: 202 639-6066
igershengorn@jenner.com

*Attorneys for Defendant PeopleConnect, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I, Wade A. Thomson, certify that on April 5, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*
Wade A. Thomson