**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Case No. 1:21-cv-00051 |
| Plaintiff, | ) ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| THERESA LOENDORF, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | Case No. 1:21-cv-00610 |
| Plaintiff, | ) ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    Plaintiffs Agreed To Arbitrate Their Claims. ................................................................ 2

    A.    A Valid Arbitration Agreement Exists Between Plaintiffs And
PeopleConnect. ................................................................................................... 2

        1.    Plaintiffs Are Bound By PeopleConnect's Terms of Service. ........................... 2

        2.    Bonilla Personally Consented To The Terms Of Service. ................................. 3

        3.    Plaintiffs' Counsel Consented To The Terms Of Service On Their Behalf. ..... 5

    B.    The Arbitrator Must Decide If This Dispute Is Subject To Arbitration. ................... 6

II.    Plaintiffs' Claims Are Barred By Federal Law. ............................................................ 7

    A.    The Communications Decency Act Bars Plaintiffs' Claims. ................................... 7

    B.    The Copyright Act Preempts Plaintiffs' Claims. ...................................................... 9

III.    Plaintiffs Have Not Adequately Pleaded Any Causes Of Action. .................................. 12

    A.    Plaintiffs Have Failed To Plead A Claim Under IRPA. .......................................... 12

        1.    Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA. ...... 13

        2.    Plaintiffs Fail To Plead A Prima Facie IRPA Claim. ...................................... 14

        3.    Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions. ........................ 19

    B.    Plaintiffs Have Failed To State A Claim Under The ICFA. .................................... 21

    C.    Plaintiffs Have Failed To State A Claim For Intrusion Upon Seclusion. ............... 23

    D.    Plaintiffs Have Failed To State A Claim For Unjust Enrichment. ........................... 24

IV.    Plaintiffs' Claims Are Barred By The Constitution. ....................................................... 25

    A.    PeopleConnect's Alleged Conduct Is Protected By The First Amendment. ........... 25

        1.    The Conduct Alleged Is Core First Amendment Speech. ................................ 25

i

2.  Yearbooks Are Fully Protected, Non-Commercial Speech. ........................... 26

3.  Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny. .......................................................... 28

B.  Applying Plaintiffs Theories Of Relief To The Facts Of This Case Violates The Dormant Commerce Clause. ........................................................ 29

V.  The Court Lacks Personal Jurisdiction Over Defendant. ................................. 30

CONCLUSION ......................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACLU v. Johnson*,
    194 F.3d 1149 (10th Cir. 1999) ........................................................30

*Acosta v. Scott Labor LLC*,
    377 F. Supp. 2d 647 (N.D. Ill. 2005) ...............................................24

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) .................................................31, 32, 34

*Ali v. Vehi-Ship, LLC*,
    No. 17 CV 02688, 2017 WL 5890876 (N.D. Ill. Nov. 27, 2017) ...........6

*Almeida v. Amazon.com, Inc.*,
    456 F.3d 1316 (11th Cir. 2006) ........................................................17

*Am. Booksellers Found. v. Dean*,
    342 F.3d 96 (2d Cir. 2003).........................................................29, 30

*Am. Libs. Ass'n v. Pataki*,
    969 F. Supp. 160 (S.D.N.Y. 1997) ...................................................30

*Amponsah v. Barr*,
    No. 20 C 4639, 2020 WL 7327699 (N.D. Ill. Dec. 11, 2020) ..............12

*Angelo v. Moriarty*,
    No. 15 C 8065, 2016 WL 640525 (N.D. Ill. Feb. 18, 2016)..................24

*Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*,
    No. 88 C 4287, 1988 WL 139247 (N.D. Ill. Dec. 22, 1988) ..................5

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill. 2d 100 (2005) .........................................................13, 14, 21

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
    805 F.2d 663 (7th Cir. 1986) .........................................9, 10, 11, 12

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) .......................................................31, 32

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*,
    206 F.3d 980 (10th Cir. 2000) .........................................................8, 9

iii

*Best v. Berard*,
  776 F. Supp. 2d 752 (N.D. Ill. 2011) ...................................................21

*Blair v. Nev. Landing P'ship*,
  369 Ill. App. 3d 318 (2d Dist. 2006)...................................................14

*Bogie v. Rosenberg*,
  705 F.3d 614 (7th Cir. 2013) .............................................................21

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*,
  137 S. Ct. 1773 (2017)..................................................................31, 33

*Browning v. AT&T Corp.*,
  682 F. Supp. 2d 832 (N.D. Ill. 2009) ................................................23

*by Razor v. Hyundai Motor Am.*,
  222 Ill. 2d 75 (2006) ...........................................................................4

*Callahan v. Ancestry.com, Inc.*,
  No. 20-cv-8437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ...........7, 8, 9

*Cassetica Software, Inc. v. Computer Sci. Corp.*,
  No. 09-C-0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009)...........7, 12

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*,
  447 U.S. 557 (1980)...........................................................................28

*Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F.3d 666 (7th Cir. 2008) ...............................................................8

*CHS Acquisition Corp. v. Watson Coatings, Inc.*,
  No. 17-cv-4993, 2018 WL 3970137 (N.D. Ill. Aug. 20, 2018) ...........22

*Cleary v. Philip Morris Inc.*,
  656 F.3d 511 (7th Cir. 2011) .............................................................24

*Cmty. Bank of Trenton v. Schnuck Mkts. Inc.*,
  887 F.3d 803 (7th Cir. 2018) .............................................................22

*Collier v. Murphy*,
  No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) .............19

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
  149 F.3d 679 (7th Cir. 1998) .............................................................27

*Crooms v. Sw. Airlines Co.*,
  459 F. Supp. 3d 1041 (N.D. Ill. 2020) .................................................6

*Dart v. Craigslist, Inc.*,
    665 F. Supp. 2d 961 (N.D. Ill. 2009) ...................................................................9

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)...........................................................................................2

*Dobrowolski v. Intelius, Inc.*,
    No. 17-cv-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)................................16, 17, 18

*Faulkenberg v. CB Tax Franchise Sys., LP*,
    637 F.3d 801 (7th Cir. 2011) ............................................................................3

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)................................................................................9

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
    141 S. Ct. 1017 (2021) ....................................................................................33

*FTC v. Trudeau*,
    662 F.3d 947 (7th Cir. 2011) ............................................................................28

*Gionfriddo v. MLB*,
    94 Cal. App. 4th 400 (2001) ........................................................................17, 27

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011)........................................................................................30

*Gullen v. Facebook.com, Inc.*,
    No. 15 C 7681, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ............................................31, 32

*Hadley v. GateHouse Media Freeport Holdings, Inc.*,
    No. 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012) .........................................7, 8

*Hart v. Amazon.com, Inc.*,
    No. 15-C-01217, 2015 WL 8489973 (N.D. Ill. Dec. 8, 2015).................................................19

*Hartman v. Lisle Park Dist.*,
    158 F. Supp. 2d 869 (N.D. Ill. 2001) .................................................................5

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989)........................................................................................13

*Henderson v. City of Chi.*,
    No. 14 C 1164, 2015 WL 1954464 (N.D. Ill. Apr. 29, 2015)...............................................22

*Hinton v. Amazon.com.dedc, LLC*,
    72 F. Supp. 3d 685 (S.D. Miss. 2014)................................................................9

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*,
   No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ........................................5, 6

*Janiga v. Questar Capital Corp.*,
   615 F.3d 735 (7th Cir. 2010) .................................................................................................5

*Johnson v. Uber Techs., Inc.*,
   No. 16 C 5468, 2018 WL 4503938 (N.D. Ill. Sept. 20, 2018)..................................................2

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) ...............................................................................................26

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ........................................................................................10, 11

*Kimzey v. Yelp!, Inc.*,
   836 F.3d 1263,1270 (9th Cir. 2016) ......................................................................................9

*Kincaid v. Gibson*,
   236 F.3d 342 (6th Cir. 2001) ...............................................................................20, 25, 26

*Klayman v. Zuckerberg*,
   753 F.3d 1354 (D.C. Cir. 2014) .............................................................................................9

*Landau v. CNA Fin. Corp.*,
   381 Ill. App. 3d 61 (1st Dist. 2008) ................................................................................13, 14

*Liberi v. Taitz*,
   No. SACV11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011).........................................9

*Lukis v. Whitepages Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) ...............................................................................18, 34

*Lukis v. Whitepages, Inc.*,
   No. 19 C 4871, 2021 WL 1600194 (Apr. 23, 2021)................................................................6

*Maloney v. T3Media, Inc.*,
   94 F. Supp. 3d 1128 (C.D. Cal. 2015) .............................................................................10, 11

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) .............................................................................................11

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
   925 F.3d 1263 (D.C. Cir. 2019)............................................................................................9

*McGreal v. AT&T Corp.*,
   892 F. Supp. 2d 996 (N.D. Ill. 2012) ..................................................................................24

*Miche Bag, LLC v. Be You, LLC*,
No. 11-cv-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) ................................................ 13

*Midwest Title Loans, Inc. v. Mills*,
593 F.3d 660 (7th Cir. 2010) ................................................................................................ 30

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19-cv-04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020) ........................................ 3, 4

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (1995) ................................................................................................ 28

*Mucklow v. John Marshall L. Sch.*,
176 Ill. App. 3d 886 (1st Dist. 1988) .................................................................................. 23

*N. Grain Mktg., LLC v. Greving*,
743 F.3d 487 (7th Cir. 2014) ............................................................................................... 31

*Namath v. Sports Illustrated*,
80 Misc. 2d 531 (N.Y. Sup. Ct., N.Y. Cnty. 1975) ........................................................ 27, 28

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
63 F.3d 652 (7th Cir. 1995) ................................................................................................. 29

*Nieman v. VersusLaw, Inc.*,
512 F. App'x 635 (7th Cir. 2013) ................................................................... 16, 17, 25, 27

*Nieman v. Versuslaw, Inc.*,
No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ................................................... 17

*Obado v. Magedson*,
No. Civ. 13–2382, 2014 WL 3778261 (D.N.J. July 31, 2014) .............................................. 9

*Parker v. Paypal, Inc.*,
No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017) ............................................ 8

*Patel v. Zillow, Inc.*,
No. 17-cv-4008, 2017 WL 3620812 (N.D. Ill. Aug. 23, 2017) ........................................... 23

*Pearson v. Edgar*,
153 F.3d 397 (7th Cir. 1998) ............................................................................................... 28

*Personal Keepsakes, Inc. v. Personalizationmall.com*,
No. 11-cv-5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012) ................................................ 12

*Philos Techs., Inc. v. Philos & D, Inc.*,
802 F.3d 905 (7th Cir. 2015) ......................................................................................... 31, 32

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ............................................................................................29

*Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*,
    No. 09 C 2046, 2010 WL 624709 (N.D. Ill. Feb. 18, 2010) .............................22, 23

*PSINet, Inc. v. Chapman*,
    362 F.3d 227 (4th Cir. 2004) ..............................................................................30

*Reapers Hockey Ass'n, Inc. v. Amateur Hockey Ass'n, Ill., Inc.*,
    412 F. Supp. 3d 941 (N.D. Ill. 2019) ...................................................................12

*Reed v. Town of Gilbert*,
    576 U.S. 155 (2015) ............................................................................................26

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010) ...............................................................................................6

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ...............................................................................17

*Rohde v. Fam. Dollar Stores of Indiana, LLC*,
    No. 1:17-CV-225-TLS, 2017 WL 5467155 (N.D. Ind. Nov. 13, 2017) ..................4

*Rosen v. SCIL, LLC*,
    343 Ill. App. 3d 1075 (1st Dist. 2003) ..................................................................4

*S.J. v. Perspectives Charter Sch.*,
    685 F. Supp. 2d 847 (N.D. Ill. 2010) ..................................................................12

*Sorrell v. IMS Health, Inc.*,
    564 U.S. 552 (2011) ......................................................................................25, 26

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ..................................................................22

*Swank v. Smart*,
    898 F.2d 1247 (7th Cir. 1990) ............................................................................25

*Thomas v. Pearl*,
    998 F.2d 447 (7th Cir. 1993) ..............................................................................24

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ........................... *passim*

*Thrasher-Lyon v. Ill. Farmers Ins. Co.*,
    861 F. Supp. 2d 898 (N.D. Ill. 2012) ..................................................................22

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) .........................................................................11

*Traeger v. Am. Express Bank FSB*,
  No. 13 C 05337, 2014 WL 340421 (N.D. Ill. Jan. 30, 2014) ...................................4

*Treiber & Straub, Inc. v. U.P.S., Inc.*,
  474 F.3d 379 (7th Cir. 2007) ...........................................................................2

*United States v. Stevens*,
  559 U.S. 460 (2010).......................................................................................25

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
  425 U.S. 748 (1976)...................................................................................26, 28

*Valley Air Serv. v. Southaire, Inc.*,
  No. 06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009)..................................14

*Vergara v. Nintendo of Am. Inc.*,
  No. 19 C 6374, 2020 WL 2571903 (N.D. Ill. May 21, 2020) ...................................6

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) .......................................................... *passim*

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ...........................................................13, 14

*Walden v. Fiore*,
  571 U.S. 277 (2014).................................................................................31, 34

*Williams v. TCF Nat'l Bank*,
  No. 12 C 5115, 2013 WL 708123 (N.D. Ill. Feb. 26, 2013).....................................3

*Wrenn v. Exelon Generation, LLC*,
  No. 18 C 2524, 2019 WL 11660918 (N.D. Ill. Mar. 5, 2019) ................................24

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ............................................................................9

**Statutes**

765 ILCS 1075/1 ..................................................................................................2

765 ILCS 1075/5 ................................................................................................14

765 ILCS 1075/30 ..........................................................................................14, 15

765 ILCS 1075/35..........................................................................................19, 20, 21

815 ILCS 505/2Z .................................................................................................................22

815 ILCS 505/1 ...................................................................................................................2

17 U.S.C. § 101 .................................................................................................................10

17 U.S.C. § 102 ..........................................................................................................10, 11

17 U.S.C. § 103 .................................................................................................................10

17 U.S.C. § 106 ..........................................................................................................10, 11

17 U.S.C. § 301 .....................................................................................................7, 10, 11

47 U.S.C. § 230 ...................................................................................................................7

**Other Authorities**

Fed. R. Civ. P. 8 ...............................................................................................................22

Fed. R. Civ. P. 9 ........................................................................................................22, 23

Fed. R. Civ. P. 12 .....................................................................................................2, 3, 30

1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* §
    6:3 ...............................................................................................................................30

## INTRODUCTION

Settled federal law makes this case an easy one. Plaintiffs Sergio Bonilla and Theresa Loendorf (collectively "Plaintiffs") have valid and enforceable agreements to arbitrate their disputes arising from Defendant PeopleConnect, Inc. ("PeopleConnect")'s operation of Classmates.com. Because where such an agreement exists a court need do no more than enforce it, the resolution of this case is simple. Plaintiffs should be compelled to arbitrate their claims.

But even if arbitration is set aside, this case is straightforward. School yearbooks are the primary medium through which school communities memorialize the events, stories, and images of the prior year. Local libraries and national archives alike thus maintain yearbooks as valued artifacts, which inform and entertain their readers for generations. By challenging the presentation of their yearbooks on Classmates.com, an online library of school yearbooks, Plaintiffs are seeking to remove from the internet documents that are widely available to all. Unsurprisingly, a host of doctrines prevent them from doing so. Federal law—namely, Section 230 of the Communications Decency Act and Section 301 of the Copyright Act—bar Plaintiffs' claims; Plaintiffs cannot plead all the elements they must; and the Constitution forecloses their causes of action.

The Court thus should dismiss Plaintiffs' Consolidated Complaint and it should do so with prejudice. This is Plaintiffs' second attempt to plead their claims against PeopleConnect. There is no good reason to grant them further opportunities to replead.

## BACKGROUND

PeopleConnect owns and operates Classmates.com, which includes an online library of over 450,000 school yearbooks that can be viewed by its 70 million members. Plaintiffs allege that the Classmates.com library includes yearbooks from Central High School in Omaha, Nebraska, which contain "two records" using the "name, photograph, image, and likeness" of Plaintiff Sergio Bonilla ("Bonilla") and that when Classmates.com enter the name of Plaintiff Theresa Loendorf

("Loendorf") on the website, users can view "search results" that "include her name and photograph." Dkt. 37, No. 1:21-cv-00051 ("CC") ¶¶ 31–32, 35, 38–39, 43, 53–54.

Plaintiffs assert four causes of action: (1) violation of the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq.*; (2) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; (3) intrusion upon seclusion; and (4) unjust enrichment. CC ¶¶ 84–105. In doing so, they offer two overarching theories. First, it is unlawful for PeopleConnect to use their likenesses for the purpose of "advertising and promoting" reprinted yearbooks, free memberships to Classmates.com, and paid memberships to Classmates.com. *Id.* ¶¶ 8–9. Second, it is unlawful for PeopleConnect to sell reprinted yearbooks and online access to those yearbooks because the yearbooks contain their likenesses. *Id.* ¶ 10.

## ARGUMENT

### I. Plaintiffs Agreed To Arbitrate Their Claims.

To start, Plaintiffs are in the wrong forum. *See* Fed. R. Civ. P. 12(b)(3). The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985). Here, Plaintiffs consented to PeopleConnect's Terms of Service ("TOS")—Bonilla personally and both Plaintiffs through their counsel—which binds them to the arbitration provision therein.

### A. A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect.

#### 1. Plaintiffs Are Bound By PeopleConnect's Terms of Service.

Numerous courts have held that clickwrap agreements—like the one here—which require a website user to electronically assent to a website's terms of service—constitute valid and enforceable contracts. *E.g.*, *Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 382 (7th Cir. 2007); *Johnson v. Uber Techs., Inc.*, No. 16 C 5468, 2018 WL 4503938, at *4 (N.D. Ill. Sept. 20,

2018). The terms of service need not appear on the same page as the button. In *Miracle-Pond v. Shutterfly, Inc.*, the plaintiff viewed the following message prior to use of an application: "By tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use." No. 19-cv-04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020). Links to those terms appeared on the same page as the "Accept" and "Decline" buttons. *Id*. The court held that "[b]ecause Shutterfly's 'app contained a clear and conspicuous statement that ... a user agreed to the Terms of Service and Privacy Policy' by clicking a link or pressing a button, a reasonable user who completes that process would understand that she was manifesting assent to the Terms." *Id*.

The same is true here. Before performing a search or creating an account on Classmates.com, a user must click a button and agree to the TOS. Declaration of Tara McGuane ("Decl.") ¶ 6.[1] The TOS are hyperlinked directly from that message. *Id*. The TOS contains the following provision in bolded text:

> **YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT.**

Decl. ¶ 8. That is sufficient to create a valid and enforceable contract to arbitrate.

### 2. Bonilla Personally Consented To The Terms Of Service.

As Bonilla did in this case, under Illinois law, parties may, "agree to authorize one party to modify a contract unilaterally." *Miracle-Pond*, 2020 WL 2513099, at *5; *Williams v. TCF Nat'l Bank*, No. 12 C 5115, 2013 WL 708123, at *9 (N.D. Ill. Feb. 26, 2013) ("In Illinois . . . unilateral

---

[1] Because a motion to compel arbitration is brought pursuant to Fed. R. Civ. P. 12(b)(3), the pleadings need not be accepted as true, and this Court may consider facts outside of the pleadings. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809–10 (7th Cir. 2011).

modification clauses are enforceable . . . ."). Courts, thus, enforce unilaterally-added arbitration provisions. *Miracle-Pond*, 2020 WL 2513099, at *5 (continued use of website constitutes consent to arbitration provision unilaterally added); *see Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075, 1082 (1st Dist. 2003) ("If plaintiff did not wish to agree to the new terms [including arbitration provision] in his credit card agreement, he simply should have stopped using the card."), *declined to follow on other grounds by Razor v. Hyundai Motor Am.*, 222 Ill. 2d 75 (2006).

Here, Bonilla registered for a Classmates.com account—his third with the website—on December 17, 2007. Decl. ¶ 12–14. The TOS then in effect stated that the TOS "may be modified only by Classmates posting changes to the Terms of Use on the Website" and "[e]ach time you access the Website, you will be deemed to have accepted any such changes in effect at the time of access." Decl. Ex. 2, Section 16. On January 10, 2014, PeopleConnect added an arbitration provision to the TOS. Decl. Ex. 3, Section 14. On August 8, 2015, Bonilla again accessed his Classmates.com account to view more than 20 user profiles. Decl. ¶ 15–16. PeopleConnect modified the arbitration clause in the TOS again on August 3, 2017. Decl. Ex. 1. Bonilla accessed his Classmates.com account again on June 22, 2018. Decl. ¶ 15. Between December 17, 2007 and June 22, 2018, Bonilla logged into his Classmates.com account fourteen times. *Id.*

Bonilla's post-January 10, 2014 logins to Classmates.com—of which there were at least eight—constituted consent to the updated TOS. If he did not want to be bound, "he simply should have stopped using" Classmates.com. *Rosen*, 343 Ill. App. 3d at 1082.[2]

---

[2] The Consolidated Complaint alleges that Bonilla does not recall his subsequent visits to Classmates.com. This is irrelevant. *Traeger v. Am. Express Bank FSB*, No. 13 C 05337, 2014 WL 340421, at *5 (N.D. Ill. Jan. 30, 2014) (use of credit card bound user to arbitration agreement even if he did not recall reading agreement); *Rohde v. Fam. Dollar Stores of Indiana, LLC*, No. 1:17-CV-225-TLS, 2017 WL 5467155, at *4 (N.D. Ind. Nov. 13, 2017) ("Plaintiff's allegation that she does not recall  signing the Agreement is insufficient to challenge the formation of the Agreement, as the Defendant has documented the Plaintiff's electronic acceptance of the Agreement.").

### 3. Plaintiffs' Counsel Consented To The Terms Of Service On Their Behalf.

The Complaint also confirms that Plaintiffs' counsel bound their clients to the arbitration agreement in the TOS by using Classmates.com on their behalf. A lawyer is his client's agent. *Hartman v. Lisle Park Dist.*, 158 F. Supp. 2d 869, 876−77 (N.D. Ill. 2001). "Courts within [the Seventh Circuit] recognize that an agency relationship between two parties creates both rights and obligations with regard to an arbitration agreement entered into by one of the parties." *Asset Allocation & Mgmt. Co. v. W. Emps. Ins. Co.*, No. 88 C 4287, 1988 WL 139247, at *5 (N.D. Ill. Dec. 22, 1988), *aff'd*, 892 F.2d 566 (7th Cir. 1989). "An agent may bind a principal to an arbitration agreement" as long as the agent is "acting within the scope of their agency." *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 743 (7th Cir. 2010).

Several of Plaintiffs' attorneys have Classmates.com accounts. Decl. ¶ 19–21; CC ¶ 57 images 1, 3–6. None of them could have created those accounts without consenting to the TOS. Decl. ¶ 21. The Complaint includes screenshots showing counsel's access to parts of the website accessible only after consent. CC ¶¶ 31, 32, 34–38, 55 (images 1, 3–6); Decl. ¶ 22. Plaintiffs' counsel thus used their Classmates.com accounts to gather information for their clients' Complaint, which was "within the scope of their agency." *Janiga*, 615 F.3d at 743. Thus, "both [the] rights and obligations" of the TOS accrue to Plaintiffs, including the arbitration agreement. *Asset Allocation*, 1988 WL 139247, at *5.

*Indep. Living Res. Ctr. San Francisco v. Uber Techs., Inc.*, is instructive. No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019). There, Uber moved to compel arbitration because the plaintiffs' agent—a paralegal at the law office representing them—agreed to Uber's terms of service. *Id.* at *2. The court held that because the plaintiffs had "dispatched their agents to affirmatively test the Uber application in order to bolster their claim of discrimination," they were

5

"bound by the arbitration agreement to the same extent as their agent." *Id*. at \*4. This case is no different. Instead of accessing Classmates.com themselves, Plaintiffs had their counsel "affirmatively test [Classmates.com] in order to bolster their claims" by gathering website images to use in their Complaint. *Id*.; *see* CC ¶¶ 31, 32, 34–38, 55 (images 1, 3–6). They cannot avoid arbitration by having their attorneys do what they otherwise would have had to do themselves.[3]

Plaintiffs have indicated that they believe a recent order in *Lukis v. Whitepages, Inc.* is to the contrary. *See* Dkt. 40 (citing *Lukis v. Whitepages, Inc.*, No. 19 C 4871, 2021 WL 1600194 (N.D. Ill. Apr. 23, 2021)). Not so. In *Whitepages*, the court denied a motion to compel arbitration because it found that the defendant "waived its right to enforce the arbitration clause by waiting too long to bring its motion." *Lukis*, 2021 WL 1600194 at \*3. No such argument could be made here, as PeopleConnect has sought to compel arbitration in its initial filing before the Court.

## B. The Arbitrator Must Decide If This Dispute Is Subject To Arbitration.

When an arbitration agreement "clearly and unmistakably" contains a "delegation provision"—one that delegates issues of arbitrability to the arbitrator—the FAA requires courts to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010); *Vergara v. Nintendo of Am. Inc.*, No. 19 C 6374, 2020 WL 2571903, at \*3 (N.D. Ill. May 21, 2020). Courts in this district have held that the "incorporation of AAA [American Arbitration Association] Rules delegates arbitrability decisions to the arbitrator." *Crooms v. Sw. Airlines Co.*, 459 F. Supp. 3d 1041, 1055 (N.D. Ill. 2020) (citation omitted); *see Ali v. Vehi-Ship, LLC*, No. 17 CV 02688, 2017 WL 5890876, at \*4 (N.D. Ill. Nov. 27, 2017). That rule applies here,

---

[3] If Plaintiffs dispute these facts, or this Court is otherwise not inclined to compel arbitration on this record, PeopleConnect requests leave to engage in limited discovery regarding (1) Plaintiffs' and their counsels' use of Classmates.com, and (2) Plaintiffs' knowledge of and acquiescence to their counsels' use of same. *See Indep. Living Res. Ctr.*, No. 18-cv-06503 (N.D. Cal. May 6, 2019), ECF No. 35 (denying motion to compel arbitration without prejudice, but granting "limited discovery" to "clarify the issue" of whether app "testers were Plaintiffs' agents").

as the TOS states "[t]he arbitration will be governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), if applicable, as modified by this section." Decl. ¶ 9.

Even if this Court were to determine arbitrability, the arbitration provision in the TOS plainly applies, as it encompasses "any and all disputes that have arisen or may arise between [Plaintiffs] and PeopleConnect entities." Decl. ¶ 8. Plaintiffs' claims are a "dispute[]" between Plaintiffs and PeopleConnect. They must be resolved in arbitration.

## II. Plaintiffs' Claims Are Barred By Federal Law.

Even if Plaintiffs were not bound by the arbitration provision, the Court should dismiss their claims because federal law bars them. First, the Communications Decency Act forecloses Plaintiffs' claims. 47 U.S.C. § 230(c)(1). Second, all but one of Plaintiffs' claims are preempted by the Copyright Act. 17 U.S.C. § 301. Because these defenses are plain from the face of the Complaint, it should be dismissed. *E.g.*, *Hadley v. GateHouse Media Freeport Holdings, Inc.*, No. 12 C 1548, 2012 WL 2866463, at *1–2 (N.D. Ill. July 10, 2012) (granting motion to dismiss based on Section 230); *Cassetica Software, Inc. v. Computer Sci. Corp.*, No. 09-C-0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009) (granting motion to dismiss based on Copyright Act).

### A. The Communications Decency Act Bars Plaintiffs' Claims.

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The statute, "while not granting blanket immunity to interactive computer services, defines who can be called a 'publisher' for purposes of civil liability." *Hadley*, 2012 WL 2866463, at *1.

Another court recently held that Section 230 bars a virtually identical claim. *Callahan v. Ancestry.com, Inc.*, No. 20-cv-8437, 2021 WL 783524, at *1, *6 & n.13 (N.D. Cal. Mar. 1, 2021). In *Callahan*, plaintiffs "object[ed] to Ancestry.com's inclusion of their decades-old yearbook

photographs and information in Ancestry's Yearbook Database." *Id.* at *1. Ancestry moved to dismiss, in part based on Section 230, and the court held that because "Ancestry—by taking information and photos" from "yearbooks and republishing them on its website in an altered format—engaged in 'a publisher's traditional editorial functions'" and did "not contribute 'materially' to the content," Section 230 applied. *Id.* at *6. This Court should reach the same result. Section 230 bars all claims that would require (1) "an online information system" to (2) "'be treated as the publisher or speaker'" of (3) "'any information provided by' someone else." *Chicago Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 671 (7th Cir. 2008). As in *Callahan*, Plaintiffs' claims do exactly that.

*First*, PeopleConnect is an "online information system" because it is the owner of a public website. CC ¶ 1; *see Hadley*, 2012 WL 2866463, at *2 ("websites [that] enable multiple users access to the server that hosts the website" fall within Section 230).

*Second*, because Plaintiffs' claims are premised on PeopleConnect's republication and distribution of content from yearbooks, *e.g.*, CC ¶¶ 1–4, 8–11, 76, their claims seek to treat PeopleConnect as a "publisher." *Chicago Lawyers' Comm.*, 519 F.3d at 671; *see also, e.g.*, *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000) (finding Section 230 barred claims against AOL for publishing allegedly inaccurate stock price information from third-party providers); *Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *7 (E.D. Pa. Aug. 16, 2017) (finding Section 230 barred right of publicity claim against Amazon for including allegedly counterfeit books in Kindle store).

*Third*, PeopleConnect is a "publisher" of "information provided by someone else." *Chicago Lawyers' Comm.*, 519 F.3d at 671. Plaintiffs' claims are based on the publication of their "photographs, likenesses, images, and names," as they allege that PeopleConnect "extract[s]"

"personal information *from school yearbooks*, including names, photographs, schools attended, and other biographical information" and sells "reprinted yearbooks." CC ¶¶ 1–2. Based on similar allegations, the *Callahan* court held that Ancestry was immune because it "did not create the underlying yearbook records." 2021 WL 783524, at *1, *5. That follows from the other courts that have held that businesses that search or ask for information from other sources and republish it in new forms receive Section 230 immunity. *E.g.*, *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1268–69 (D.C. Cir. 2019) (search engines pulling information from fake locksmiths' websites for search results); *Ben Ezra*, 206 F.3d at 983, 985–86 (AOL publishing stock price information pulled for AOL by third-party providers); *accord Obado v. Magedson*, No. Civ. 13–2382, 2014 WL 3778261, at *1, * 4–7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *Liberi v. Taitz*, No. SACV11-0485, 2011 WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011).

That PeopleConnect sells copies of yearbooks makes no difference. "[D]isseminating the same content in essentially the same format … does not change the origin of the third-party content." *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263,1270 (9th Cir. 2016); *Dart v. Craigslist, Inc.*, 665 F. Supp. 2d 961, 967–68 (N.D. Ill. 2009). A website's "receipt of profits from online sales" does not control "the immunity determination." *Hinton v. Amazon.com.dedc, LLC*, 72 F. Supp. 3d 685, 690 n.9 (S.D. Miss. 2014) (citing cases). What matters is that PeopleConnect did not "provide[], create[], or develop[] any portion of the content that [Plaintiffs] allege[] harmed" them. *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014); *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997) ("distributors, like traditional news vendors or book sellers," are "publishers" subject to Section 230); *Force v. Facebook, Inc.*, 934 F.3d 53, 65 (2d Cir. 2019) (same).

## B. The Copyright Act Preempts Plaintiffs' Claims.

When a copyrightable work is disseminated to the public and an individual allegedly suffers harm as a result, federal copyright law is the exclusive means of redress. *Baltimore Orioles,*

*Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663, 675–77 (7th Cir. 1986). This is true even if neither party in the suit owns the copyright over the material. *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010). Under 17 U.S.C. § 301(a), a claim is preempted if (1) the work at issue is "fixed in a tangible medium of expression" and "come[s] within the subject matter of copyright as specified by [17 U.S.C.] sections 102 and 103"; and (2) the right asserted is "equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." *Baltimore Orioles*, 805 F.3d at 674 (quoting 17 U.S.C. § 301(c)).

*First*, the material at issue in Plaintiffs' claims is "fixed in a tangible medium of expression" and "come[s] within the subject matter of copyright" under 17 U.S.C. §§ 102 and 103. Plaintiffs' claims concern PeopleConnect's use of their "names," "photographs," and "likenesses" in yearbooks or excerpts of yearbooks. *See* CC ¶ 1, 8–11. Both of these are "fixed in a tangible medium of expression" and "come within the subject matter of copyright." *Baltimore Orioles*, 805 F.3d at 674. Yearbooks are copyrightable because they are "works of authorship" containing "pictorial, graphic," and "literary works," 17 U.S.C. § 102, or "compilations" thereof, *id.* § 103; *see id.* § 101 (defining "works of authorship" to include "books" and defining "pictorial" and "graphic" works to include "photographs"). That is why the Copyright Office has granted copyright protection for school yearbooks. *E.g.*, *Shellville High School, The Blade*, TX0001451935, Public Catalog, U.S. Copyright Office (Oct. 30, 1984).[4]

Excerpted portions of yearbooks are no different, regardless of whether they contain photographs or text. Photographs are copyrightable. 17 U.S.C. §§ 101, 102; *Maloney v. T3Media,*

---

[4] *Available at* https://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?v1=1&ti=1,1&SAB1=shellville&BOOL1=all%20of%20these&FLD1=Keyword%20Anywhere%20%28GKEY%29&GRP1=AND%20with%20next%20set&SAB2=blade&BOOL2=as%20a%20phrase&FLD2=Keyword%20Anywhere%20%28GKEY%29&CNT=25&PID=gzVHyH6RyPlUdqS0CuqjUSziYPl3-18&SEQ=20210401191627&SID=1.

*Inc.*, 94 F. Supp. 3d 1128, 1135–36 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017). So too are excerpted pages from yearbooks that contain text such as Plaintiffs' names. 17 U.S.C. § 102; CC ¶¶ 31–33, 36–38, 55, 57. That they constitute a portion of a yearbook makes no difference. *See Baltimore Orioles*, 805 F.3d at 674–75 (right of publicity claims based on player's performances in baseball game telecast preempted by Copyright Act because performances were "embodied" in telecast); *Jules Jordan Video*, 617 F.3d at 1154 (right of publicity claims preempted by Copyright Act with respect to "'still shots' of copyrighted video performance").

*Second*, the rights asserted in Plaintiffs' IRPA, ICFA, and unjust enrichment claims, are "equivalents" of the "exclusive rights within the general scope of copyright." *See Baltimore Orioles*, 805 F.2d at 674 (quoting 17 U.S.C. § 301(a)). Federal copyright law protects, among other things, the rights to publicly "display" a work, "reproduce" it, and "distribute copies … to the public by sale." 17 U.S.C. § 106. A claim based on use of identity in displaying, reproducing, or distributing a work is preempted. *E.g.*, *Baltimore Orioles*, 805 F.2d at 674; *Maloney*, 853 F.3d at 1007. That is true of all of Plaintiffs' claims, except for the claim for intrusion upon seclusion. These claim are premised on PeopleConnect's alleged display of yearbooks and yearbook excerpts to the public on its website, reproduction of yearbooks in hard copy and digitally, and distribution of copies of yearbooks through print and digital sales.[5] That makes their claims different from the right of publicity theory the plaintiff pursued in *Toney v. L'Oreal USA, Inc.*, which was premised not on the impermissible publication of a work, but on the unlawful depiction of a likeness to falsely suggest that the plaintiff endorsed the product at issue. 406 F.3d 905, 910 (7th Cir. 2005).

---

[5] Plaintiffs' characterization of the yearbook excerpts as "advertis[ing]," *e.g.* CC ¶¶ 1–3, 8–9, 15, 17, 32, 35, 37, 39, 41–42, 46, 60, is not supported by their factual allegations. *See infra* at III.A.2.b. But even if it were true, it makes no difference for purposes of Copyright Act preemption. *See, e.g.*, *Maloney*, 853 F.3d at 1007, 1008 (right of publicity claim preempted where plaintiffs alleged use of photos containing their identities "for the purpose of advertising").

11

In short, the Complaint is preempted because Plaintiffs "attempt to obtain *ex post* what they did not negotiate *ex ante*": the right to limit the distribution of yearbooks containing their images. *Baltimore Orioles*, 805 F.2d at 679 ("Because the right of publicity does not differ in kind from copyright, the Players' rights of publicity in their performances cannot escape preemption."); *Personal Keepsakes, Inc. v. Personalizationmall.com*, No. 11-cv-5177, 2012 WL 414803, at *8 (N.D. Ill. Feb. 8, 2012) (dismissing ICFA claim as "simply copyright claims in different clothing"); *Cassetica Software. Inc.*, 2009 WL 1703015, at *5 (dismissing Illinois unjust enrichment claim that "ar[ose] exclusively from conduct" governed by the Copyright Act).

### III.    Plaintiffs Have Not Adequately Pleaded Any Causes Of Action.

Plaintiffs fail to plead any viable theories of relief. A pleading must provide more than "labels and conclusions or a formulaic recitation of a cause of action"; it "must contain sufficient factual matter that when accepted as true state a claim to relief that is plausible on its face." *Amponsah v. Barr*, No. 20 C 4639, 2020 WL 7327699, *2 (N.D. Ill. Dec. 11, 2020) (quotations omitted); *see Reapers Hockey Ass'n, Inc. v. Amateur Hockey Ass'n, Ill., Inc.*, 412 F. Supp. 3d 941, 946 (N.D. Ill. 2019) (explaining that complaints must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." (quotation omitted). "A claim has facial plausibility when the factual content in the pleadings allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *S.J. v. Perspectives Charter Sch.*, 685 F. Supp. 2d 847, 853 (N.D. Ill. 2010).

### A.    Plaintiffs Have Failed To Plead A Claim Under IRPA.

Plaintiffs have not pleaded an actionable IRPA claim. First, Plaintiffs fail to plead a violation within the territorial reach of IRPA. Second, Plaintiffs fail to plead the elements of a *prima facie* IRPA claim. Third, Plaintiffs' claims are barred by IRPA's statutory exemptions.

### 1. Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA.

Plaintiffs fail to plead a claim within IRPA's territorial scope because they do not plausibly allege that any IRPA violation occurred in Illinois. Under Illinois law, a "statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005) (citation omitted). Nothing in the text of IRPA conveys such an intent. What is more, legislative history confirms that IRPA was not intended to apply to conduct outside Illinois. The bill's sponsor, Representative Turner, noted that liability under IRPA would be available only for "*the use* of that person's image [or likeness] *here in Illinois*." HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (emphases added).

When a statute does not have extraterritorial reach, a plaintiff must plead that the alleged violation occurred in Illinois. *E.g. Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008); *Miche Bag, LLC v. Be You, LLC*, No. 11-cv-720, 2011 WL 4449683, at *6 (N.D. Ill. Sept. 26, 2011). Plaintiffs have not done so. An alleged violation "may be said to take place within [the] state if the circumstances relating to the transaction occur[red] *primarily and substantially*" in Illinois. *Avery*, 216 Ill. 2d at 186 (emphasis added). This means the "majority of circumstances relating to the alleged violation" must have occurred in Illinois. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 63–65 (1st Dist. 2008).[6] But Plaintiffs allege only that PeopleConnect violated IRPA by "us[ing]" their identities in search results on Classmates.com to advertise its products. *E.g.* CC ¶¶ 8–9, 32, 35, 39, 60. That is not enough. PeopleConnect "used" their identities

---

[6] If IRPA were construed to apply to the use of a person's identity in states other than Illinois, numerous applications of IRPA would violate the Dormant Commerce Clause, which "precludes the application of a state statute" that has "the practical effect of … control[ling] conduct beyond the boundaries of the State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) (citations omitted).

in Illinois only if Plaintiffs' identities were displayed in search results to a user physically located *in Illinois* when the search was run.

Plaintiffs' fleeting mentions of Illinois do not show that any alleged IRPA violation occurred "primarily and substantially" in Illinois. *Avery*, 216 Ill. 2d at 186. Plaintiffs allege they are Illinois residents, CC ¶¶ 24, 45, but that does nothing to show that the alleged violations occurred primarily and substantially in Illinois—indeed, Bonilla seeks to recover based on the presentation of a *Nebraska* yearbook. *E.g.*, *Vulcan Golf*, 552 F. Supp. 2d at 775; *Valley Air Serv. v. Southaire, Inc.*, No. 06 C 782, 2009 WL 1033556, at *12–13 (N.D. Ill. Apr. 16, 2009). Plaintiffs also allege that PeopleConnect "searches for and obtains yearbooks … containing the personal information of Illinois residents," "markets and advertises its services to Illinois residents," and has "subscribers who are Illinois residents." CC ¶¶ 15–16, 18. But again, the extraterritoriality inquiry looks to whether the *alleged violation* occurred in Illinois. *Landau*, 381 Ill. App. 3d at 65. Plaintiffs have made no such allegation.

### 2. Plaintiffs Fail To Plead A Prima Facie IRPA Claim.

To plead a *prima facie* claim under IRPA, a plaintiff must allege "(1) the use of his identity; (2) for commercial purposes; and (3) without his consent." *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386 (N.D. Ill. 2016) (citation omitted); *see* 765 ILCS 1075/30(a). Plaintiffs have failed to plead the first two of those elements.

#### a. Plaintiffs Fail To Plead A Public Use Or Holding Out Of Their Identities.

Plaintiffs must allege a "use" of their identities—specifically "the *public* use or *holding out of* [their] identit[ies]." 765 ILCS 1075/5, 1075/30(a) (emphasis added). This requires an allegation of actual dissemination of their identities. *See Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 324–25 (2d Dist. 2006). The Complaint contains no such allegation. To be sure, Plaintiffs allege

that Classmates.com "users *may* search" for their names. CC ¶ 36; *see id.* ¶¶ 2, 40, 53. But they do not allege that a third party ever actually searched for them. That is crucial because a self-generated, nonpublic "use" of a person's identity is not actionable—certainly nothing on the face of IRPA or in its legislative history suggests it applies if a defendant displays a plaintiff's identity *to her alone or to her agents* in response to *an inquiry from her or her agents acting on her behalf.*

To the contrary, IRPA's purpose is to address a circumstance antithetical to such a self-imposed, wholly private "use": the public use of a person's identity in a false or misleading endorsement of a product. That is clear from the Illinois General Assembly's debate over IRPA, as members of the Illinois House of Representatives "cited examples of the kind of commercial uses that the IRPA is meant to address." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013). Every example involved a public-facing use of someone's identity that would necessarily be viewed by someone other than the depicted person. HB 1422, 90th Gen. Assemb., 129th Leg. day, Tr. of House Debate 7–8 (Ill. May 21, 1998) (statement of Rep. Black) (noting as an example an ad using a legislator's picture "on the back of a CTA bus indicating that [he] endorsed a particular kind of hair tonic"); HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228 (Ill. Apr. 24, 1997) (statement of Rep. A. Turner) (noting as an example a "commercial[]" depicting "Fred Astaire dancing with a vacuum cleaner"). Because Plaintiffs have not alleged any such public "use," their IRPA claim fails.

### b. Plaintiffs Fail To Plead That PeopleConnect Used Their Identities For A Commercial Purpose.

Plaintiffs have not plausibly alleged that PeopleConnect used their identities for "commercial purposes." 765 ILCS 1075/30(a); *see id.* § 5 (defining "commercial purposes" to include use of identity "for purposes of advertising" and "in connection with the offering for sale or sale" of goods and services). Plaintiffs attempt to plead this element in several ways, but all fail

15

for the same reason: a website does not use someone's identity for a "commercial purpose" by identifying that person—by photo or name—as the subject of a work in response to a user inquiry.

*Thompson* is on point. There, the plaintiff claimed an online photo retailer violated IRPA by allowing users to "type terms into a search box" and view "sample images matching a user's search terms," including an image of the plaintiff. 2013 WL 3321612, at *2. The court dismissed the claim for failure to allege a "commercial purpose, explaining that "IRPA prohibits the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but does not prohibit using an individual's identity when "a photograph of [the] person" or another work about the person is the very thing the consumer "is considering whether to buy." *Id.* Thus, "display[ing] a preview of the exact thing [defendant] seeks to sell"—here, displaying yearbook excerpts—does not qualify as a "commercial purpose." *Id.*

Other courts likewise have rejected IRPA and other right of publicity claims on this basis. In *Dobrowolski v. Intelius, Inc.*, for example, the court rejected an IRPA claim brought against a website that displayed the plaintiff's likeness to promote the sale of background reports in part because "plaintiffs' identities are not used to promote a separate product" and instead "are used because plaintiffs' identities are part of the product offered for sale." No. 17-cv-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018). The court explained that this meant the plaintiff's identity was not being presented "for a commercial purpose." *Id*. And in *Nieman v. VersusLaw, Inc.*, the court similarly rejected an IRPA claim against an online searchable database of court records where the plaintiff's identity was used in "search results" "linking copies of documents … to his name," which a user could "access … for a fee." 512 F. App'x 635, 636–37 (7th Cir. 2013). As the district court in that case explained, "[p]laintiff's identity is not being used for a 'commercial purpose' as defined by the Right of Publicity Act because his name is used only to

16

find documents related to his case . . . . [h]is name is not being held out or used to entice anyone to buy a product." *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013); *see also Gionfriddo v. MLB*, 94 Cal. App. 4th 400, 416 (2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product"); *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1325 (11th Cir. 2006) (Amazon's display of book cover containing plaintiff's photo did not use plaintiff's identity for commercial purpose under Florida right of publicity law); *Rogers v. Grimaldi*, 875 F.2d 994, 1004 (2d Cir. 1989) (rejecting right of publicity claim because use of individual's name in movie title was not "wholly unrelated" to the product itself (the movie) nor "used to promote or endorse a collateral commercial product").

This bedrock principle also dooms Plaintiffs' claims under IRPA. All that Plaintiffs have alleged here is that excerpts from yearbooks were used to promote the sale of yearbooks and membership subscriptions that provide access to those yearbooks. Their IRPA claims thus should be dismissed as were the IRPA claims in *Thompson*, *Dobrowolski*, and *Nieman*.

*"Advertisement" For "Reprinted Yearbooks" Theory.* Plaintiffs claim that PeopleConnect uses their identities to "advertis[e]" the sale of "reprinted yearbooks," CC ¶ 8, fails because the images allegedly containing their identity are from the yearbook itself. So, at most, PeopleConnect is "displaying a preview of the exact thing [it] seeks to sell." *Thompson*, 2013 WL 3321612, at *2; *Dobrowolski*, 2018 WL 11185289, at *3. Plaintiffs' similar allegation that PeopleConnect uses their identities "in connection with the offering for sale" of its yearbooks, CC ¶ 10, fails for the same reason. *See Thompson*, 2013 WL 3321612, at *2 ("Getty Images does not use Thompson's photographs in connection with an offer to sell or a sale of some other product, merchandise, good or service as contemplated by [IRPA].").

*"Advertisement" For Paid "Subscription" Theory.* Plaintiffs attempt to concoct a "separate product" that their identities are purportedly used to advertise: a paid "subscription plan." CC ¶¶ 3, 10 ("monthly subscription"). In doing so, Plaintiffs parrot *Lukis v. Whitepages, Inc.*, in which the court found that the plaintiff adequately pleaded a "commercial purpose" because a "subscription" being "advertised" was a "separate product" from a background report about the plaintiff. 454 F. Supp. 3d 746, 760–61 (N.D. Ill. 2020). But *Lukis* does not help Plaintiffs.

*First*, Plaintiffs' conclusory assertions that PeopleConnect uses their identities to "advertise" its "subscription plan" are refuted by their actual allegations. Most of the screenshots Plaintiffs cite reference the sale of yearbooks or a free membership, *not* a paid "subscription plan." *See, e.g.*, CC ¶¶ 33 ("Join for free to view full-size yearbooks."), 37 ("Own this yearbook today"), 38 ("Order a Hardcover Reprint"), 57 ("Join for free to view full size yearbooks"). Those that do reference a paid membership either (1) do not include Plaintiffs' identities; (2) are generic menu options like "Help" and "Account," not advertisements; and/or (3) are search results that only include information about a membership in an "adjacent" panel. CC ¶¶ 33–36, 55, 57. None of these are uses of Plaintiffs' identities in advertisements for a "subscription plan."

*Second*, even if Plaintiffs' identities were allegedly used to advertise a "subscription plan," Plaintiffs still could not show a commercial purpose. That is because, again, the yearbook excerpts in which Plaintiffs appear are "*part* of the product offered for sale," *Dobrowolski*, 2018 WL 11185289, at *3 (emphasis added)—namely, a membership to the Classmates.com online library, which does include the very yearbook being excerpted.

*"Advertisement" For "Free Version" Of Website Theory.* Finally, Plaintiffs attempt to plead a commercial purpose by claiming that PeopleConnect uses their identities for "promoting the free version of its website." CC ¶ 9. They allege that PeopleConnect profits from the "free

version" of Classmates.com by "selling ads on its website." *Id.* But as noted above, the images allegedly containing their identities are from the reprinted yearbook itself so PeopleConnect is "display[ing] a preview of the exact thing it seeks to sell," which is not a commercial purpose. *Thompson*, 2013 WL 3321612, at *2. Moreover, courts have repeatedly rejected the notion that placing third-party ads on a website adjacent to a person's identity violates IRPA. *E.g.*, *Vrdolyak*, 206 F. Supp. 3d at 1389 (dismissing IRPA claim where plaintiff alleged online attorney directory displayed third-party ads next to his identity); *Hart v. Amazon.com, Inc.*, No. 15-C-01217, 2015 WL 8489973, at *7 (N.D. Ill. Dec. 8, 2015) ("Plaintiff cannot bring a claim under the IRPA merely based upon Amazon listing his name as an author … alongside the ads that Amazon posts.").

This makes sense. The contrary rule would transform every use of a person's name on a website with third-party ads into an actionable IRPA claim. *See Vrdolyak*, 206 F. Supp. 3d at 1388 ("[T]o hold otherwise would lead to the unintended result that any entity that publishes truthful newsworthy information about individuals … such as a newspaper or yellow page directory, would risk civil liability simply because it generated revenue from advertisements placed by others in the same field."). Nothing suggests the Illinois legislature had such a sweeping intent.

### 3. Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions.

To "avoid[] … serious First Amendment problems," IRPA carves out various uses of an individual's identity to which the Act does not apply. *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637, at *3 (N.D. Ill. Mar. 26, 2003). Three of those carve outs are: (i) Section 35(b)(1) ("Exemption 1") exempts any "book," "article," or "other [] visual … work" that "portray[s] [or] describe[s]" an individual; (ii) Section 35(b)(2) ("Exemption 2") exempts any use of a person's identity for "non-commercial purposes, including any news [or] public affairs"; and (iii) Section 35(b)(4) ("Exemption 4") exempts any "advertisements … for a use described under" the preceding exemptions. 765 ILCS 1075/35. The Court should dismiss Plaintiffs' IRPA claims under

these exemptions for the same reason the Illinois legislature included them—doing so avoids the "serious First Amendment problems" inherent in Plaintiffs' claims.

### a.      IRPA Exemptions 1 and 4 Bar Plaintiffs' Claims.

Exemption 1 in tandem with Exemption 4 foreclose Plaintiffs' IRPA claims. The Classmates.com online library and reprinted yearbooks fall under Exemption 1 because they are "book[s]," "article[s]," or "other [] visual … work[s]" that "portray [or] describe" an individual. *Id.* § 35(b)(1). A school yearbook is a "book." *See Yearbook*, *Dictionary.com*, https://www.dictionary.com/browse/yearbook?s=t (last visited Apr. 1, 2021) ("[A] book published by the graduating class of a high school or college, containing photographs of class members and commemorating school activities."). And within each yearbook are "article[s]" or "other [] visual … work[s]": the stories, photos, captions, and other written or graphic material that comprise each of these scholastic publications. *See Kincaid v. Gibson*, 236 F.3d 342, 351 (6th Cir. 2001) ("There can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material[.]").

Because Classmates.com's yearbooks fall under Exemption 1, the claim that PeopleConnect violated IRPA by using their identities is baseless. CC ¶ 10. The remainder of Plaintiffs' claims allege that PeopleConnect used their identities to "advertis[e]" yearbooks or a "subscription" to access yearbooks. CC ¶¶ 8–9. Even if Plaintiffs' characterizations were accurate, these uses are plainly exempt under Exemption 4 because they are "advertisements" for material protected under Exemption 1. 765 ILCS 1075/35(b)(4). PeopleConnect's alleged use of Plaintiffs' identities therefore is beyond IRPA's reach as a matter of law.

### b.      IRPA Exemptions 2 And 4 Bar Plaintiffs' Claims.

Exemption 2, again in combination with Exemption 4, also forecloses Plaintiffs' IRPA claims because PeopleConnect is alleged to use identifying information for "non-commercial

purposes." *Id.* at § 35(b)(2). Yearbooks provide biographical information and images without proposing any sort of commercial transaction. That is a paradigmatic use of an individual's identity for "non-commercial purposes." *Id.*

Exemption 2 also applies because yearbooks serve a "news [or] public affairs" purpose. 765 ILCS 1075/35(b)(2). As the Seventh Circuit has explained, "[t]he newsworthiness or public interest exception should be construed broadly, covering … any subject of public interest." *Bogie v. Rosenberg*, 705 F.3d 614 (7th Cir. 2013) (citation omitted) (affirming dismissal of Wisconsin right of publicity claim under public interest exception). The exemption includes works that seek to "entertain[]" and "convey[] truthful" information to the public. *Best v. Berard*, 776 F. Supp. 2d 752, 759 (N.D. Ill. 2011) (Exemption 2 bars IRPA claim against TV show depicting person's arrest). That surely is true of the yearbooks on Classmates.com. Yearbooks both "entertain" and "convey truthful" information. *See id.* And they are an important public record of a community's activities, serving as a critical primary source for journalists, historians, archivists, genealogists and other scholars. Even the Library of Congress maintains a collection of yearbooks. *See Rahway High School yearbook: select pages*, Library of Congress, https://www.loc.gov/resource/mss855 90.041/?sp=1&r=-0.649,0.265,2.298,0.978,0 (last visited Apr. 1, 2021).

Because yearbooks, therefore, fall under Exemption 2, Exemption 4 bars Plaintiffs' attempt to impose liability for any purported "advertisements" for those yearbooks. *See* 765 ILCS 1075/35(b)(4). Again, because the uses of Plaintiffs' identity in the yearbooks *themselves* are exempted from IRPA, any advertisements for those same yearbooks are likewise exempted. That suffices to foreclose Plaintiffs' IRPA claims in their entirety.

### B.     Plaintiffs Have Failed To State A Claim Under The ICFA.

Like IRPA, the ICFA does not reach conduct occurring outside Illinois. *Avery*, 835 N.E.2d at 853. This defeats Plaintiffs' ICFA claim just as it defeats their IRPA claim, for Plaintiffs have

not pleaded claims occurring "primarily and substantially" in Illinois. *See supra* Part III.A.1. Moreover, the ICFA claim should be dismissed for another reason: their allegations do not show a violation of the statute. To state a claim under the ICFA, a plaintiff must allege: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *CHS Acquisition Corp. v. Watson Coatings, Inc*., No. 17-cv-4993, 2018 WL 3970137, at *12 (N.D. Ill. Aug. 20, 2018). These elements must be "pled with particularity" under Rule 9(b), *id.* at *13, specifying "the 'who, what, when, where, and how' of the fraud or misrepresentation." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 909 (N.D. Ill. 2012). Plaintiffs fail to plead any of these elements, let alone with particularity.

Most of all, Plaintiffs do not plead that PeopleConnect committed a "deceptive act or practice." The ICFA enumerates specific statutes the violation of which can give rise to an ICFA claim. 815 ILCS 505/2Z. IRPA is not one of them. *See Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019) (dismissing ICFA claim because claimed statutory violation "not one of the statutes enumerated"). And Plaintiffs do not otherwise plead a "stand-alone … fraudulent act or practice" within ICFA's scope, *Cmty. Bank of Trenton v. Schnuck Mkts. Inc*., 887 F.3d 803, 822 (7th Cir. 2018); instead they assert that PeopleConnect "engaged in and continues to engage in deceptive and unfair trade practices" by "engaging in the conduct described in this complaint," CC ¶ 93. Even under Rule 8, such "[t]hreadbare recitals" and "conclusory statements" are not sufficient. *E.g. Henderson v. City of Chi.*, No. 14 C 1164, 2015 WL 1954464, at *1 (N.D. Ill. Apr. 29, 2015) (dismissing complaint where plaintiff offered only "conclusory allegations") (quotation omitted). They come nowhere near the Rule 9(b) standard that Plaintiffs must meet here. *E.g.*, *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Walgreen Co.*, No. 09 C

2046, 2010 WL 624709, at *5–6 (N.D. Ill. Feb. 18, 2010), *aff'd*, 631 F.3d 436 (7th Cir. 2011) (dismissing ICFA claim for failing to plead with particularity under Rule 9(b)).

### C. Plaintiffs Have Failed To State A Claim For Intrusion Upon Seclusion.

To state a claim for intrusion upon seclusion, a plaintiff must show: "(1) the defendant committed an unauthorized intrusion or prying into the plaintiff's seclusion; (2) the intrusion would be highly offensive or objectionable to a reasonable person; (3) the matter intruded on was private; and (4) the intrusion caused the plaintiff anguish and suffering." *Browning v. AT&T Corp.*, 682 F. Supp. 2d 832, 835 (N.D. Ill. 2009). Plaintiffs do not come close to pleading these elements.

*First*, Plaintiffs fail to allege an unauthorized intrusion. They acknowledge that some of the yearbooks in the online library were *donated* to PeopleConnect. CC ¶ 72. Accepting yearbook donations is not unauthorized. Nor do Plaintiffs allege that yearbooks obtained by a means other than donation were obtained in a way that could be considered unauthorized. *See Mucklow v. John Marshall L. Sch.*, 176 Ill. App. 3d 886, 893–94 (1st Dist. 1988) (affirming dismissal of intrusion upon seclusion claim where plaintiff failed to show access to school record was unauthorized).

*Second*, it strains credulity for Plaintiffs to claim that disclosure of information from their school yearbooks is "highly offensive or objectionable to a reasonable person." *Browning*, 682 F. Supp. 2d at 835. Yearbooks are, by their very nature, public documents. And the information they claims was disclosed about them (*e.g.*, their names, schools, and participation in the extracurricular activities, CC ¶ 92) is not remotely the sort of sensitive information that would be highly offensive to a reasonable person if disclosed. *See Patel v. Zillow, Inc.*, No. 17-cv-4008, 2017 WL 3620812, at *10 (N.D. Ill. Aug. 23, 2017), *aff'd*, 915 F.3d 446 (7th Cir. 2019) (dismissing claim where plaintiffs offered "no argument as to how any possible intrusion in this case was offensive").

*Third*, it is absurd to suggest that information in a yearbook is private. For an intrusion upon seclusion claim, private facts include "'family problems, romantic interests, sex lives, health

23

problems, future work plans,'" not "'names, telephone numbers, addresses or social security numbers' or matters of public record." *Wrenn v. Exelon Generation, LLC*, No. 18 C 2524, 2019 WL 11660918, at *10 (N.D. Ill. Mar. 5, 2019). What is displayed in a *public* yearbook is precisely the sort of information that cannot be the basis of an intrusion upon seclusion claim. And even if the information in the yearbooks were private, Plaintiffs have not alleged that they "attempted to keep private facts private." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 650 (N.D. Ill. 2005).

*Fourth*, Plaintiffs cannot plausibly allege to have suffered anguish because of PeopleConnect's purported "intrusion." Plaintiffs appear to suggest they were harmed due to the *dissemination* of their "ages, location, biographical details, and photographs," CC ¶ 98, but "a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than the intrusion." *Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993); *Angelo v. Moriarty*, No. 15 C 8065, 2016 WL 640525, at *5 (N.D. Ill. Feb. 18, 2016) (holding that plaintiffs "pleaded themselves out of court by admitting that [d]efendant's publication" rather than offensive nature of intrusion "caused their injury."). Plaintiffs do not allege anguish from the purported "intrusion" itself, instead offering a generalized assertion of "harm" because of PeopleConnect's alleged use of his information. CC ¶ 99. This conclusory allegation is not enough. *See McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1015 (N.D. Ill. 2012) (dismissing intrusion claim because plaintiff's "unsupported statement that she suffered injury is not sufficient to plausibly suggest that she is entitled to relief").

### D. Plaintiffs Have Failed To State A Claim For Unjust Enrichment.

Under Illinois law, "unjust enrichment is not a separate cause of action." *Pirelli*, 631 F.3d at 447. Plaintiffs' unjust enrichment claim rests on the same facts as their other claims. It thus falls with those claims. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Further, even if Plaintiffs had pleaded other actionable claims, they allege none of the "fraud, duress, undue influence" or similar wrongful conduct needed to state such a claim. *Pirelli*, 631 F.3d at 447.

IV.     **Plaintiffs' Claims Are Barred By The Constitution.**

Even if Plaintiffs could overcome the other failings of their Complaint, their claims still would not be viable because two provisions of the Constitution bar their claims.

A.      **PeopleConnect's Alleged Conduct Is Protected By The First Amendment.**

1.      **The Conduct Alleged Is Core First Amendment Speech.**

Plaintiffs' efforts to prevent PeopleConnect from disseminating yearbooks is an attack on constitutionally protected speech. The First Amendment protects "the public expression of ideas, narratives, concepts, imagery, opinions—scientific, political, or aesthetic—to an audience whom the speaker seeks to inform, edify, or entertain." *Swank v. Smart*, 898 F.2d 1247, 1251 (7th Cir. 1990). This protection is not contingent on the perceived value of the speech. *United States v. Stevens*, 559 U.S. 460, 470 (2010). Nor does it matter whether the speech is disseminated free of charge or "carried in a form that is sold for profit." *Nieman*, 512 F. App'x at 638 ("The for-profit nature of the defendants' aggregation websites does not change the analysis.") (citation omitted)).

The yearbooks and yearbook excerpts Plaintiffs contest easily qualify as core constitutionally protected speech. "There can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material, and that these materials constitute expression for purposes of the First Amendment." *Kincaid*, 236 F.3d at 351. And the "written material" within those yearbooks, *id*., such as the "biographical information" Plaintiffs seek to prevent PeopleConnect from presenting, is likewise protected. *See Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 570 (2011); *Vrdolyak*, 206 F. Supp. 3d at 1388 (holding that First Amendment protects online directory of attorney information); *Dex Media*, 952, F.3d at 954 (holding that "yellow pages directories qualify for full protection under the First Amendment"). As Plaintiffs' Complaint makes clear, the materials they seek to suppress are a source of information and interest for millions of readers. *See, e.g.*, CC ¶¶ 18, 77.

### 2.    Yearbooks Are Fully Protected, Non-Commercial Speech.

Plaintiffs' proposed application of their claims to First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *Vrdolyak*, 206 F. Supp. 3d at 1389. Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed*, 576 U.S. at 163; *see Sorrell*, 564 U.S. at 571 (the fact law is content-based is "all but dispositive"). Here, Plaintiffs cannot show that regulating the display of yearbooks and yearbook excerpts serves a compelling state interest, let alone that it is narrowly tailored.

Because Plaintiffs cannot overcome strict scrutiny, they may argue that PeopleConnect's use of yearbooks and yearbook excerpts are subject to the less demanding review associated with regulations of commercial speech. But that is incorrect. In general, commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 766 (1976); *see Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516–17 (7th Cir. 2014) ("core" definition of commercial speech is supplemented by "common-sense distinction" between commercial and non-commercial speech). The yearbooks and yearbook excerpts PeopleConnect disseminates do not "propose a commercial transaction," *Va. State Bd. of Pharmacy*, 425 U.S. at 762, or otherwise qualify as commercial speech as a matter of "common-sense," *Jordan*, 743 F.3d at 517. They are "creative publications" that "exist[] for the purpose of expressive activity." *Kincaid*, 236 F.3d at 351. By Plaintiffs' own account, yearbooks convey only truthful information about their school-age selves. *See, e.g.*, CC ¶¶ 7, 31, 46.

As to the yearbook excerpts, these too fall outside the definition of commercial speech. Plaintiffs repeatedly describe these excerpts as "advertis[ing]," *e.g*, CC ¶¶ 1–3, 8–9, 15, 17, 32, 35, 37, 39, 41–42, 46, 60, but their factual allegations belie this characterization. As discussed above, *see supra* Section III.A.2.b, many of these images do not use Plaintiffs' identities at all, and

those that do simply show what is contained in the yearbook library, rather than promote, endorse, or push the sale of a product. *E.g.*, CC ¶¶ 31–38; 55, 57.

Even if the yearbook excerpts were "advertisements," they still would not qualify as commercial speech. *First*, the excerpts are a republication of information from yearbooks already in the public domain—a category to which the commercial speech standard does not apply. *See, e.g.*, *Nieman*, 512 F. App'x at 638 (affirming dismissal of IRPA claim based on "republication of documents contained in the public record" without applying the commercial speech standard); *Vrdolyak*, 206 F. Supp. 3d at 1386–87 (dismissing IRPA claim attacking attorney directory of "information gleaned from public records," and concluding directory was not commercial speech even though it contained "advertisements"). *Second*, courts have consistently held that if a publication is constitutionally protected speech—as the yearbooks are—disseminating portions of it in advertising to promote that publication is likewise protected and not treated as commercial speech. "The owner of a product is entitled to show that product to entice customers to buy it." *Gionfriddo*, 94 Cal. App. 4th at 414; *see, e.g.*, *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998).

Plaintiffs attempt to clear this hurdle by claiming that PeopleConnect uses their information to advertise a "subscription plan" that includes access to all of their yearbooks, as opposed to advertising just the yearbooks themselves. CC ¶¶ 1–2, 8, 10–11, 15, 32, 34–36, 41–43, 60. But as discussed above, *see supra* Section III.A.2.b, Plaintiffs identify no instances where their identities were used to advertise such a plan and, in any event, the supposed distinction between an advertisement for an individual yearbook and an advertisement for a subscription offering access to that yearbook and others makes no difference from a constitutional perspective. *See Namath v. Sports Illustrated*, 80 Misc. 2d 531, 562–35 (N.Y. Sup. Ct., N.Y. Cnty. 1975) (magazine's use of

Joe Namath's identity to advertise subscriptions is protected by First Amendment against right of publicity action), *aff'd*, 48 A.D.2d 487 (N.Y. App. Div. 1975), *aff'd*, 39 N.Y.2d 897, 898 (1976); *accord Montana v. San Jose Mercury News, Inc*., 34 Cal. App. 4th 790, 796 (1995).

### 3. Even If The Conduct Alleged Were Commercial Speech, Plaintiffs Cannot Satisfy Intermediate Scrutiny.

If the Court nonetheless finds that PeopleConnect's speech is commercial, any regulation of this speech still must survive intermediate scrutiny. *See FTC v. Trudeau*, 662 F.3d 947, 953 (7th Cir. 2011). To survive intermediate scrutiny, a restriction must satisfy the following: "(1) there is a substantial interest supporting the restriction, (2) the restriction directly advances that substantial interest, and (3) the restriction is 'narrowly drawn.'" *Id.* (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 564–65 (1980)). The Seventh Circuit analyzes the second and third prongs together, asking if there is a "reasonable fit" between the restriction and the "goal to be achieved by that restriction." *Pearson v. Edgar*, 153 F.3d 397, 402–403 (7th Cir. 1998).

Plaintiffs cannot satisfy this test. *First*, Plaintiffs do not allege that disseminating yearbook materials is "misleading [or] related to unlawful activity," so there is no substantial interest in its regulation. *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that state cannot "suppress the dissemination of concededly truthful information about entirely lawful activity"). *Second*, there is no "reasonable fit" between the aims of IRPA (or any of the other claims Bonilla asserts) and barring PeopleConnect's publication of yearbooks and yearbook excerpts. *Pearson*, 153 F.3d at 403. Plaintiffs' proposed application of IRPA bears no connection to the legislature's aim of preventing unauthorized commercial endorsements.[7]

---

[7] *See* 90th Ill. Gen. Assem., House Proceedings, May 21, 1998, at 7–8; 90th Ill. Gen. Assem., House Proceedings, Apr. 24, 1997, at 227 (noting examples of commercial uses that IRPA was meant to address, including an advertisement using a legislator's picture "on the back of a CTA bus indicating that [he] endorsed a particular kind of hair tonic" and a "commercial[]" depicting "Fred Astaire dancing with a vacuum cleaner").

**B.** **Applying Plaintiffs Theories Of Relief To The Facts Of This Case Violates The Dormant Commerce Clause.**

A "state statute [that] is neutral on its face, [and] has only indirect or incidental effects on interstate commerce" nonetheless violates the Constitution's Commerce Clause if it impermissibly burdens interstate commerce. *Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 63 F.3d 652, 657 (7th Cir. 1995). Facially neutral statutes that burden interstate commerce are analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Under *Pike*, a facially neutral state law violates the Commerce Clause if "the burden imposed on [interstate] commerce" is "excessive in relation to the local interests served by the statute." *Nat'l Solid Wastes Mgmt.*, 63 F.3d at 663.

Here, applying Illinois law in the way Plaintiffs propose—to bar PeopleConnect's display of yearbooks and yearbook excerpts—burdens PeopleConnect's ability to engage in interstate commerce in a way that is wholly out of proportion to whatever *de minimis* state interest there might be in suppressing this speech. Balanced against any negligible such interest is the fact that because of the "boundary-less" nature of the internet, PeopleConnect's business is inherently nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult … for a state to regulate internet activities without 'project[ing] its legislation into other States.'") (citation omitted). PeopleConnect transmits information across state lines through the internet every hour of every day, providing yearbook reprints and excerpts to website users located in Illinois and every other state. If Illinois forbids that conduct, as Plaintiffs maintain, then PeopleConnect must continually ascertain the precise physical location of each user who views a yearbook or excerpt, whether that person is at a desktop, on a laptop, or a smartphone, and then block any alleged identity information from displaying to users while they are physically located in Illinois. Its only alternative would be to apply the restrictions imposed by Illinois law nationwide, notwithstanding

that many states do not even have right of publicity laws and those that do differ in scope. *See* 1 J. Thomas McCarthy & Roger E. Schechter, *Rights of Publicity and Privacy* § 6:3, Westlaw (2d ed. updated May 2020).[8]

Making PeopleConnect choose between excising Illinois from its nationwide transmission of information—to the extent it is even technologically feasible—or treating Illinois law as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would have the impermissible effect of "exalt[ing] the public policy of [Illinois] over that of another" state. *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 667–68 (7th Cir. 2010).

## V. The Court Lacks Personal Jurisdiction Over Defendant.

Not only have Plaintiffs failed to allege that any conduct alleged occurred "primarily and substantially" in Illinois, as they must for Illinois law to apply, *see supra* Section III.A, but they fail even to adequately allege that PeopleConnect has sufficient "minimum contacts" with Illinois to support the Court's exercise of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2).

Initially, Plaintiffs do not and cannot allege general jurisdiction over PeopleConnect, which is a Delaware corporation headquartered in Seattle, Washington. CC ¶ 23; *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."). As for specific

---

[8] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like PeopleConnect. *E.g. Am. Booksellers Found.*, 342 F.3d at 103; *Am. Libs. Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) ("Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations."); *ACLU v. Johnson*, 194 F.3d 1149, 1161 (10th Cir. 1999) ("[T]he nature of the Internet forecloses the argument that a statute [regulating speech over the Internet] applies only to intrastate communications."); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) ("Given the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect.").

jurisdiction, that exists only if: (1) PeopleConnect "purposefully directed its conduct into the forum State"; and (2) Plaintiffs' claims "arise out of or relate to" PeopleConnect's "forum conduct." *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1785–86 (2017); *see also N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Here, Plaintiffs do not offer a theory of PeopleConnect's Illinois, litigation-related conduct that would pass this test.

*First*, the Seventh Circuit has held that making a website accessible in the forum state without doing more to specifically target the forum state does not purposefully target conduct into the forum state. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801–02 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011); *see Gullen v. Facebook.com, Inc.*, No. 15 C 7681, 2016 WL 245910, at *2 (N.D. Ill. Jan. 21, 2016). This is because specific jurisdiction must rest on forum-related contacts of the *defendant*, not the "plaintiff (or third parties)." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015). When all a defendant does is make a website available in a forum state, the defendant's relation to the forum is "entirely fortuitous, depending wholly on activities outside of the defendant's control." *Advanced Tactical Ordnance Sys.*, 751 F.3d at 803.

This defeats Plaintiffs' claim that there is personal jurisdiction here because PeopleConnect "displays on-site ads to millions of website users in Illinois." CC ¶¶ 16, 18. As Plaintiffs concede, these "advertisements" are a product of a "yearbook search function" that "allows users to limit their searches" to different states, of which Illinois is just one "option" of the states that the user can select. *Id.* at ¶ 16. As in *be2*, users of Classmates.com who encounter these search results "have done so unilaterally by stumbling across the website and clicking a button" that displays search results based on the users' own search terms. 642 F.3d at 559. Plaintiffs seek to evade this precedent by arguing that PeopleConnect "encourages users" of its website to "search for people

31

from their own high school," and that because Illinois schools are one of the options a user can select, PeopleConnect is displaying advertising to people that are "highly likely to be Illinois residents." CC ¶ 17. But as Plaintiffs' screenshot makes clear, it is the website user—not PeopleConnect—who selects the country, state, cite, and school that he or she would like to search. So the principle remains—actions a user takes within the Classmates.com website do not show that PeopleConnect is targeting Illinois. *See Philos Techs.*, 802 F.3d at 913. Plaintiffs' allegations amount to nothing more than the sorts of generalized internet contacts the Seventh Circuit has held fall short of establishing specific jurisdiction. *See Advanced Tactical Ordnance Sys.*, 751 F.3d at 801–02; *be2*, 642 F.3d at 559; *Gullen*, 2016 WL 245910, at *2.

Plaintiffs also allege that PeopleConnect targets Illinois by "knowingly search[ing] for and obtain[ing] yearbooks and other records containing the personal information of Illinois residents" and has "collected tens of thousands of yearbooks from Illinois schools." CC ¶ 15. This theory too falls short. Plaintiffs do not allege that PeopleConnect targets Illinois in its efforts. Indeed, Classmates.com's library consists of yearbooks from across the United States, CC ¶ 76, underscoring the nationwide way in which PeopleConnect gathers yearbooks. That PeopleConnect at times gathers yearbooks with records about individuals who happen to be current Illinois residents and sometimes acquires yearbooks from Illinois schools thus is not sufficient to show that PeopleConnect has "purposely exploited the Illinois market." *be2*, 642 F.3d at 558. This case shows why that is so. PeopleConnect could not have targeted Illinois by obtaining and presenting Bonilla's yearbook images—for while he may now be an Illinois citizen, he went to school in Nebraska.

*Second*, even assuming *arguendo* that PeopleConnect does purposefully direct its conduct to Illinois by incidentally obtaining yearbooks that include images of current Illinois residents,

Plaintiff's alleged injury does not "arise out of or relate to" that alleged obtaining of yearbooks. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1786 (citation omitted). To be sure, the Supreme Court recently held that a plaintiff proceeding under the "aris[ing] out of or relate[d] to" test need not allege a "strict causal relationship" between a defendant's forum contacts and her alleged injuries—though in doing so the Court was careful to note its decision did not "consider internet transactions, which may raise doctrinal questions of their own." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 n.4 (2021). But even if it is assumed that under *Ford Motor Co.* Plaintiffs need not allege a "strict causal relationship," they still must allege a "link between the defendant's forum contacts and [their] suit." *Id.* at 1031–32.

That link is lacking. Plaintiffs claim their lawsuit "arises from Classmates' practice of acquiring names and photographs of Illinois residents with the specific intent of selling access to that information," CC ¶ 15, but nothing in the Complaint alleges that PeopleConnect acted unlawfully by collecting yearbooks. The Complaint challenges only the use of Plaintiffs' depictions in supposed advertisements. So Plaintiffs' claimed injury only "relates to" PeopleConnect's post-acquisition "use" of the yearbooks that PeopleConnect obtains, not PeopleConnect's search for and acquisition of data. Plaintiffs therefore have not alleged a link between PeopleConnect's concededly lawful gathering of yearbooks and their claims sufficient to support the exercise of personal jurisdiction.

Finally, Plaintiffs allege that the "harms allege in this lawsuit were all felt in Illinois." CC ¶ 15. As the Supreme Court and Seventh Circuit have made clear, however, the "mere fact that defendant's conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291; *see Advanced Tactical Ordnance Sys.*, 751 F.3d at 801–02. The fact that Plaintiffs allege they suffered injuries in Illinois, therefore, cannot provide

a basis for finding that PeopleConnect targeted Illinois. Plaintiffs go on to claim that PeopleConnect "knows" there is personal jurisdiction here because other members of this Court have exercised jurisdiction over a different PeopleConnect website, Instant Checkmate LLC, and over Classmates, Inc., an entity that no longer exists, as part of a 2015 settlement between the Attorney Generals of 22 states, including Illinois. But PeopleConnect "knows" no such thing. Needless to say, that the court found it had personal jurisdiction over Instant Checkmate LLC in *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020)—which in all events PeopleConnect respectfully believes to be wrongly decided—is of no relevance here, given that Instant Checkmate offers an entirely different service on a website that operates differently. Nor does a multi-state Attorney General settlement that involved (1) completely distinct conduct; (2) a separate legal entity (that no longer exists); and (3) no finding of personal jurisdiction.

## <u>CONCLUSION</u>

For the foregoing reasons, the Complaint should be dismissed and Plaintiffs compelled to adjudicate their claims in arbitration. In the alternative, the Complaint should be dismissed for the lack of personal jurisdiction over PeopleConnect. And if the Court does not dismiss the Complaint on either of these bases, the Court should dismiss the Complaint with prejudice for the reasons set forth above and with prejudice, as this marks Plaintiffs second attempt to plead actionable claims against PeopleConnect.

Dated: May 10, 2021

Respectfully submitted,

PEOPLECONNECT, INC.

By:   */s/ Wade A. Thomson*

Wade A. Thomson, #6282174
Debbie L. Berman, #6205154
Clifford W. Berlow, #6292383
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
wthomson@jenner.com
dberman@jenner.com
cberlow@jenner.com

Ian Heath Gershengorn (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: 202 639-6000
Facsimile: 202 639-6066
igershengorn@jenner.com

*Attorneys for Defendant PeopleConnect, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Wade A. Thomson, certify that on May 10, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*
Wade A. Thomson