**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case Nos:    1:21-cv-00051 <br> 1:21-cv-00610 |
| v. | |
| PEOPLECONNECT, INC., a Delaware Corporation, | Judge Virginia M. Kendall |
| Defendant. | |
| THERESA LOENDORF, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | |
| PEOPLECONNECT, INC., a Delaware Corporation; | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ............................................................................ 1

II.  RELATED CASES ............................................................................................. 2

III.  LEGAL STANDARDS ...................................................................................... 3

IV.  ARGUMENT .................................................................................................... 3

    A.  The Court should deny Classmates' motion to compel arbitration. ................................. 3

        1.  There is no arbitration agreement between the Plaintiffs and Classmates............. 3

        2.  Classmates' arbitration clause is unenforceable under Washington law. ............... 6

    B.  The Communications Decency Act ("CDA") does not immunize Classmates' actions. . 8

        1.  Classmates has not met its burden of showing that yearbooks were "provided by" anyone. ............................................................................................... 8

        2.  Plaintiffs' claims are directed at advertisements Classmates created, not the underlying yearbooks. .......................................................................... 9

        3.  The statutory exception for intellectual property applies. .................................... 10

    C.  Copyright preemption does not apply to IRPA claims, nor to any claim arising from the misuse of an identity................................................................................ 11

    D.  Plaintiffs have stated a claim under the IRPA. .......................................................... 14

        1.  Classmates' extraterritoriality argument fails. ................................................... 14

        2.  Plaintiffs have alleged public use for commercial purposes................................ 16

        3.  No statutory exemptions apply. ...................................................................... 20

    E.  Plaintiffs have plead claims under the ICFA. ............................................................ 22

    F.  Plaintiff has plead a claim for intrusion upon seclusion................................................ 23

    G.  Plaintiff has plead a claim for unjust enrichment. ...................................................... 24

    H.  Classmates' on-site messages and free limited access photographs promoting website subscriptions are not protected by the First Amendment. ............................................. 24

        1.  Because Classmates' speech is commercial, strict scrutiny does not apply. ........ 24

        2.  Because the IRPA is content neutral, strict scrutiny does not apply. ................... 28

3.  Plaintiffs' claims easily survive intermediate scrutiny. ....................................... 29

4.  Plaintiffs' claims would survive strict scrutiny. ................................................... 30

I.  The Dormant Commerce Clause does not bar this suit. ................................................. 31

J.  This Court has specific personal jurisdiction over Classmates. .................................... 33

V.  CONCLUSION ....................................................................................................................... 35

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anand v. Heath*, No.
  19-CV-00016, 2019 WL 2716213 (N.D. Ill. June 28, 2019)..................................................4

*Anthony v. Yahoo! Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) ............................................................................10

*Atl. Recording Corp. v. Project Playlist*,
  603 F. Supp. 2d 690 (S.D.N.Y. 2009)..............................................................................11

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100 (2005) .......................................................................................................14

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
  805 F.2d 663 (7th Cir. 1986) ............................................................................................13

*Best v. Malec*,
  09 C 7749, 2010 WL 2364412 (N.D. Ill. June 11, 2010) ..................................................21

*Blanton v. Womancare, Inc.*,
  38 Cal.3d 396 (Cal. 1985).................................................................................................5

*Bolger v. Youngs Drug Products Corp.*,
  463 U.S. 60 (1983)............................................................................................................25

*Brown v. ACMI Pop Division*,
  375 Ill. App. 3d 276 (Ill. App. Ct. 2007) .........................................................................12

*Burnett v. Pagliacci Pizza, Inc.*,
  442 P.3d 1267 (Wash. Ct. App. 2019) ..........................................................................7, 8

*Callahan v. Ancestry.com Inc.*,
  No. 3:20-cv-08437-LB
  (N.D. Cal., filed Nov. 20, 2020) ..................................................................................2, 22

*Callahan v. PeopleConnect, Inc.*,
  No. 20-cv-09203-EMC, 2021 WL 1979161 (N.D. Cal. May 18, 2021).......................2, 5, 6

*Cassetica Software, Inc. v. Computer Scis. Corp.*,
  No. 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ...........................................13

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
  447 U.S. 557 (1980)....................................................................................................24, 29

iv

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ............................................................ 24

*Collier v. Murphy*,
02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003) ....................................... 21

*Curry v. Revolution Labs.*,
*LLC*, 949 F.3d 385, 399 (7th Cir. 2020) ............................................. 34

*Daniels v. Fanduel, Inc.*,
No. 1:16-cv-01230-TWP-DKL, 2017 WL 4340329 (S.D. Ind. Sep. 29, 2017) ..................... 12

*Dent v. Renaissance Mktg. Corp.*,
No. 14 C 02999, 2015 WL 3484464 (N.D. Ill. June 1, 2015) .............................. 12

*Dex Media W., Inc. v. City of Seattle*,
696 F.3d 952 (9th Cir. 2012) ........................................................... 28

*Dobrowolski v. Intelius, Inc.*,
No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) ........................... 8, 12

*Doe v. Friendfinder Network, Inc.*,
540 F. Supp. 2d 288 (D.N.H. 2008) .................................................... 10

*Downing v. Abercrombie & Fitch*,
265 F.3d 994, (9th Cir. 2001) ......................................................... 27

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
472 U.S. 749 (1985) .................................................................. 28

*Fair v. Roommates*,
521 F.3d 1157 (9th Cir. 2008) .......................................................... 9

*Felland v. Clifton*,
682 F.3d 665 (7th Cir. 2012) ........................................................... 3

*Fleet v. CBS, Inc.*, 5
0 Cal. App. 4th 1911 (Cal. Ct. App. 1996) ........................................... 13

*Gabiola v. Sarid*,
16-CV-02076, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) ........................... 17, 26

*Gandee v. LDL Freedom Enters., Inc.*,
176 Wash. 2d 598 (Wash. 2013) .......................................................... 7

*Grant-Hall v. Cavalry Portfolio Services, LLC*,
856 F. Supp. 2d 929 (N.D. Ill. 2012) ................................................. 32

v

*Gulley v. Nordstrom, Inc.*,
  No. 13 C 6145, 2014 WL 296034 (N.D. Ill. Jan. 27, 2014) ................................... 4

*Gunn v. Cont'l Cas. Co.*,
  968 F.3d 802 (7th Cir. 2020) ................................................................... 24

*H.A.L. NY Holdings, LLC v. Guinan*,
  958 F.3d 62 (7th Cir. 2020) .................................................................... 24

*Hadley v. Gatehouse Media Freeport Holdings, Inc.*,
  No. 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012) ................................. 11

*Hlinak v. Chicago Transit Auth.*,
  13 C 9314, 2015 WL 361626 (N.D. Ill. Jan. 28, 2015) ...................................... 31

*Illinois v. Hemi Group LLC*,
  622 F.3d 754 (7th Cir. 2010). ................................................................ 34

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
  2019 WL 3430656 (N.D. Cal. July 30, 2019) ................................................... 6

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................ 23

*Jackson v. Payday Fin., LLC*,
  764 F.3d 765 (7th Cir. 2014) ................................................................... 6

*Johnson v. K mart Corp.*,
  311 Ill. App. 3d 573, 723 N.E.2d 1192 (1st Dist. 2000)............................... 23, 29, 30

*Jordan v. Jewel Food Stores, Inc.*,
  743 F.3d 509 (7th Cir. 2014) ............................................................... 25, 26

*Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
  No. 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012)................................... 13

*Kincaid v. Gibson*,
  236 F.3d 342 (6th Cir. 2001) ................................................................. 25

*KNB Enterprises v. Matthews*,
  78 Cal. App. 4th 362 (Cal. Ct. App. 2000) ................................................... 13

*Kolebuck-Utz v. Whitepages Inc.*,
  No. C21-0053-JCC, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021)........................... 2, 8, 9

*L. 703, Int'l Broth. of Teamsters v. Kennicott*,
  771 F.2d 300 (7th Cir. 1985) .................................................................. 5

*Lemmon v. Snap, Inc.*,
    --- F.3d ----, 2021 WL 1743576 (9th Cir. May 4, 2021)........................................................... 9

*Leto v. RCA Corp.*,
    341 F. Supp. 2d 1001 (N.D. Ill. 2004) ................................................................................ 12

*Lovgren v. Citizens First Nat. Bank of Princeton*,
    126 Ill. 2d 411, 534 N.E.2d 987 (1989) ............................................................................ 23

*Lukis v. Whitepages Inc.*,
    19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27 2020) ..................................... 17, 21, 22, 26

*Lukis v. Whitepages Inc.*,
    454 F. Supp. 3d 746 (N.D. Ill. 2020) ............................................... 2, 8, 19, 20, 21, 34

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) .......................................................................................... 13

*Maremont v. Susan Fredman Design Group, Ltd.*,
    10 C 7811, 2011 WL 6101949 (N.D. Ill. Dec. 7, 2011) ................................................... 24

*Mendez v. Palm Harbor Homes, Inc.*,
    111 Wn. App. 446 (Wash. Ct. App. 2002) ......................................................................... 7

*Midwest Title Loans v. Mills*,
    593 F.3d 660 (7th Cir. 2010) ..................................................................................... 32, 33

*Miracle-Pond v. Shutterfly, Inc.*,
    No. 19 cv 04722, 2020 WL 5213099 (N.D. Ill. May 15, 2020) ......................................... 5

*Monroy v. Shutterfly, Inc.*,
    16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017)........................................ 16, 32

*N. Grain Mktg., LLC v. Greving*,
    743 F.3d 487 (7th Cir. 2014) ........................................................................................... 33

*Nat'l Paint & Coatings Ass'n v. City of Chicago*,
    45 F.3d 1124 (7th Cir. 1995) ........................................................................................... 31

*National Solid Wastes Management Ass'n v. Meyer*,
    63 F.3d 652 (7th Cir. 2010) ............................................................................................. 33

*Nieman v. Versuslaw*,
    512 Fed. Appx. 635 (7th Cir. 2013)............................................................................ 27, 28

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) ......................................... 10, 18

*People v. Austin*,
    440 Ill. Dec. 669 (Ill. 2019) ........................................................................ 29, 30

*Performance Mktg. Ass'n, Inc. v. Hamer*,
    998 N.E.2d 54 (Ill. 2013) ........................................................................ 19

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970) ........................................................................ 31

*Prescott v. Argen Corp.*,
    No. 13 CV 6147, 2015 WL 94168 (N.D. Ill. Jan. 6, 2015) ........................ 22

*Purdue Research v. Sanofi-Synthelabo, S.A*,
    338 F.3d 773, 780 (7th Cir. 2003) ........................................................ 33

*Regan v. City of Hammond*,
    934 F.3d 700 (7th Cir. 2019) ................................................................ 31

*Sable Comm's of Cal., Inc. v. F.C.C.*,
    492 U.S. 115 (1989) ........................................................................ 30

*Sgouros v. TransUnion Corp.*,
    817 F.3d 1029 (7th Cir. 2016) .............................................................. 5

*Shapo v. Tires 'N Tracks, Inc.*,
    336 Ill. App. 3d 387 (Ill. App. Ct. 2002) .............................................. 5

*Specht v. Google, Inc.*,
    660 F. Supp. 2d 858 (N.D. Ill. 2009) .................................................. 15, 16

*Srail v. Vill. of Lisle, Ill.*,
    588 F.3d 940 (7th Cir. 2009) ................................................................ 31

*Stayart v. Yahoo! Inc.*,
    651 F. Supp. 2d 873 (E.D. Wis. 2009) ................................................ 9, 10

*Tamayo v. Blagojevich*,
    526 F.3d 1074 (7th Cir. 2008) .............................................................. 3

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ................................................................ 33

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ...................... 17, 19

*Tichy v. Hyatt Hotels Corp.*,
    376 F. Supp. 3d 821 (N.D. Ill. 2019) .................................................. 20

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ................................................................. 3

*Toney v. L'Oreal USA, Inc.*,
  406 F.3d 905 (7th Cir. 2005) ............................................. 11, 12, 13, 32

*Turner Broad. Sys., Inc. v. F.C.C.*,
  512 U.S. 622 (1994).................................................................... 28, 30

*uBID, Inc. v. GoDaddy Group, Inc.*,
  623 F.3d 421 (7th Cir. 2010) ..................................................... 20, 34

*United States v. Benson*,
  561 F.3d 718 (7th Cir. 2009) .......................................................... 25

*Valley Air Serv. v. Southaire, Inc.*,
  06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009) ...................... 16

*Vance v. IBM Corp.*,
  No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020).......... 14, 30

*Vance v. Microsoft Corp.*,
  C20-1082JLR, 2021 WL 963485 (W.D. Wash. Mar. 15, 2021).......... 15

*Vinson v. Vermilion Cty., Ill.*,
  776 F.3d 924 (7th Cir. 2015) ............................................................ 3

*Vrdolyak v. Avvo, Inc.*,
  206 F. Supp. 3d 1384 (N.D. Ill. 2016) ........................................ 24, 27

*Vulcan Golf, LLC v. Google Inc.*,
  552 F. Supp. 2d 752 (N.D. Ill. 2008) ............................................. 16

*Wilcosky v. Amazon.com, Inc.*,
  No. 19-cv-05061, 2021 WL 410705 (N.D. Ill. Feb. 5, 2021) ............... 3

*Woodard v. Victory Records, Inc.*,
  11 C 7594, 2016 WL 1270423 (N.D. Ill. Mar. 31, 2016) ................... 12

*Zuver v. Airtouch Comm's*,
  153 Wash. 2d 293 (Wash. 2004)....................................................... 7

## **Statutes and Rules**

17 U.S.C. § 102 ................................................................................................. 14

17 U.S.C. § 106 ................................................................................................. 14

17 U.S.C. § 301 ................................................................................................. 14

47 U.S.C. § 230 ..................................................................................... 10, 11, 12

765 ILCS 1075/1 *et seq.* ................................................. 1, 20, 25, 26, 36, 37

815 ILCS 505/1 *et seq.* ................................................................................... 27

Fed. R. Civ. P. 12(b)(2) ...................................................................................... 3

Fed. R. Civ. P. 12(b)(3) ...................................................................................... 3

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 3

## **Other Authorities**

HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228 (Ill. Apr. 24, 1997) ...... 17

## I. PRELIMINARY STATEMENT

Classmates.com ("Classmates")[1] uses people's names and photographs, captured without permission from school yearbooks, to sell its products. Classmates scanned and extracted the photographs of millions of minor students from hundreds of thousands of yearbooks, then created a website on which users may search by name for any student. ECF No. 37 at ¶¶ 2, 32, 53-56, 10-63. Classmates uses student names and photographs to advertise and promote website subscriptions costing $3 per month, and reprinted yearbook copies costing $99.95. *Id.* at ¶ 2. Classmates provides limited access to low-resolution versions of student photographs for free. Users who click on a photograph, or who scroll to view multiple photographs, are presented with messages promoting Classmates' products. *Id.* at ¶¶ 32-43, 55-60.

Classmates stole intellectual property that belongs to Plaintiffs and the class: their identities. The Illinois Right to Publicity Act ("IRPA") prohibits "us[ing] an individual's identity for a commercial purpose . . . without . . . written consent." 765 ILCS 1075/30. Classmates harmed Plaintiffs and the class by taking their intellectual property, violating statutorily protected privacy rights, and earning unjust profits.

The IRPA recognizes an individual's "right to control and to choose whether and how to use [her] identity for commercial purposes." 765 ILCS 1075/10. Plaintiffs have the right to choose which uses they consent to, and which they do not. Plaintiffs have no objection to the appearance of their names and photographs in school yearbooks, a use to which they arguably consented as minors. But Classmates' use of names and photographs to promote website subscriptions and reprints – of which Plaintiffs had no knowledge – is illegal under Illinois law.

---

[1] Classmates.com is owned and operated by PeopleConnect, Inc., the named Defendant in this lawsuit. Plaintiffs refer to Classmates.com and PeopleConnect, Inc. collectively as "Classmates."

1

## II. RELATED CASES

The Defendant is no stranger to the right of publicity. Classmates' parent company also owns InstantCheckmate.com, a website with advertising practices nearly identical to Classmates.com. InstantCheckmate is a co-defendant in *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020) (denying motions to dismiss IRPA claims), *reconsideration denied*, 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020). Like Classmates, Whitepages and InstantCheckmate sell access to personal information they gathered from publicly available sources. *Id*. at 760-61. Both advertise monthly subscriptions by offering "free previews" of reports containing plaintiffs' identities, accompanied by messages advertising "a monthly subscription service giving the purchaser access to background reports on anybody in [the defendant's] database." *Id*. Most of the defenses Classmates raises here – lack of personal jurisdiction in Illinois, failure to state IRPA claims, IRPA statutory exceptions, CDA immunity, and the First Amendment – have already been litigated and lost in *Lukis*. *Id.* Likewise, a district court in Washington recently denied a motion to dismiss a right to publicity case against Whitepages.com, rejecting the defendants arguments for failure to state a claim, CDA immunity, and the First Amendment. *Kolebuck-Utz v. Whitepages Inc*., C21-0053-JCC, 2021 WL 1575219, at *3 (W.D. Wash. Apr. 22, 2021).

Classmates argues this case should proceed in arbitration because the lawyers created accounts to investigate the claims. This issue also already has been litigated and lost in a related case that Mr. Bonilla's counsel are pursuing against Classmates in California. *Callahan v. PeopleConnect, Inc.*, 20-CV-09203-EMC, 2021 WL 1979161 (N.D. Cal. May 18, 2021).

Plaintiffs' counsel are also pursuing a case against Ancestry.com in California. *Callahan v. Ancestry.com Inc*., 20-CV-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021). Magistrate Judge Beeler denied Ancestry's motion to strike pursuant to California's anti-SLAPP statute.

The court also granted with leave to amend Ancestry's motion to dismiss, finding (1) plaintiffs lacked Article III standing, and (2) Ancestry was entitled to CDA immunity. 2021 WL 783524, at *1 (N.D. Cal. March 1, 2021). Plaintiffs filed an amended complaint that addresses Magistrate Judge Beeler's concerns. Plaintiffs respectfully disagree with Magistrate Judge Beeler's March 1 ruling on the CDA as inconsistent with controlling Ninth Circuit authority.

### III. LEGAL STANDARDS

On a 12(b)(2) motion, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) (citation omitted). Courts "accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes . . . in favor of the plaintiff." *Id.*

A 12(b)(3) motion to compel arbitration is "reviewed under a summary judgment standard." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). "[T]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Id.*

On a 12(b)(6) motion, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). A claim survives if it is "plausible on its face." *Vinson v. Vermilion Cty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015).

### IV. ARGUMENT

**A.** **The Court should deny Classmates' motion to compel arbitration.**

**1. There is no arbitration agreement between the Plaintiffs and Classmates.**

Whether a valid arbitration agreement exists is governed by Illinois law. *See Tinder*, 305 F.3d at 733 (7th Cir. 2002). It is Classmates' burden to establish an agreement to arbitrate. *Wilcosky v. Amazon.com, Inc.*, 19-CV-05061, 2021 WL 410705, at *7 (N.D. Ill. Feb. 5, 2021). Classmates advances two arguments, both of which fail.

3

Classmates asserts Mr. Bonilla agreed to a Terms of Service ("TOS") with Classmates when he created an account in 2007.[2] ECF No. 45 at 4. Classmates has introduced a copy of its TOS as of 2007. ECF No. 45-1 at 26 (ex. 2 to Decl. of Tara McGuane). But it fails to introduce any evidence showing how, if at all, that TOS was presented to Mr. Bonilla. Mr. Bonilla does not recall being shown any agreement, ECF No. 37 at ¶ 29. Classmates has introduced no evidence to the contrary. It relies solely on the design of their signup page as it appears today, more than a dozen years after Mr. Bonilla created his account. ECF No. 45 at 4. Classmates does not claim – nor could it – that the signup page shown in Ms. McGuane's declaration is what Mr. Bonilla saw when he created his account in 2007.

Counsel's investigation found webpages on the Internet Archive showing the signup process as it appeared in 2007. None of registration pages alerted the user they were agreeing to the TOS. The sole reference to the TOS is a small hyperlink appearing at the bottom of each page. *See* Declaration of Benjamin R. Osborn ("Osborn Decl."), Ex. 1.[3] Such "browsewrap" agreements are unenforceable. *See Anand v. Heath,* 19-CV-00016, 2019 WL 2716213, at *7 (N.D. Ill. June 28, 2019)* ("Courts are reluctant to enforce browsewrap agreements . . . [in which] a party . . . is purported to have assented . . . simply by using the website").

Classmates states Mr. Bonilla has logged on to his account several times since he created it. ECF. No. 45-1 at 6-7. But it introduces no evidence Mr. Bonilla was shown the TOS on those visits either, instead claiming that by agreeing to the TOS in 2007 he agreed to be bound by any subsequent updates without notice. ECF No. 45 at 4.

---

[2] Classmates does not argue it has any contract with Ms. Loendorf, nor any business relationship with her at all. As documented in the CAC, "Ms. Loendorf is not and has never been a Classmates customer. She has no relationship with Classmates whatsoever." ECF No. 37 at ¶ 49.
[3] On a motion to compel arbitration courts may consider evidence beyond the pleadings. *Gulley v. Nordstrom, Inc.*, 13 C 6145, 2014 WL 296034, at *2 (N.D. Ill. Jan. 27, 2014).

Classmates' failure to prove how, if at all, it presented a TOS to Mr. Bonilla is fatal to its argument. Under Illinois contract law, "a website [must] provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1036 (7th Cir. 2016). Determining whether "reasonable notice" existed "is a fact-intensive inquiry" requiring the court to examine the specific webpages presented. *Id.*; *see also* Miracle-Pond v. Shutterfly, Inc., 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) ("the precise wording and formatting is relevant").

Even if Classmates could establish they entered a valid arbitration agreement with Mr. Bonilla (which they have not), any agreement would have long since expired. Classmates admits Mr. Bonilla has not logged in to Classmates since June 2018, more than two-and-a-half years prior to the filing of this lawsuit. *See Local 703, Int'l Broth. of Teamsters v. Kennicott Bros. Co.*, 771 F.2d 300 (7th Cir. 1985) (refusing to enforce arbitration agreement six months after it expired).[4]

Second, with respect to both Mr. Bonilla and Ms. Loendorf, Classmates argues that by using Classmates.com as part of their pre-suit investigation, counsel consented to arbitration on their clients' behalf. ECF No. 45 at 5. Classmates has already lost this argument in a substantially similar case under California law. *Callahan v. PeopleConnect, Inc.*, 20-CV-09203-EMC, 2021 WL 1979161 (N.D. Cal. May 18, 2021). As Judge Chen held, "absent client consent or ratification, a lawyer cannot bind a client to an arbitration agreement by virtue of the attorney-client relationship alone." *Id.* at *6 (*citing Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, 403 (1985))). Illinois law agrees. *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387, 399 (1st Dist.

---

[4] If the Court reaches the conclusion Mr. Bonilla is subject to a valid and enforceable arbitration agreement, counsel respectfully request leave to amend to add claims on behalf of additional named plaintiffs who never used Classmates.com.

2002) ("An attorney who represents a client in litigation has no authority to compromise . . . or give up or waive any right of the client. . . [T]he attorney must receive the client's express authorization to do so") (quoting cases in accord). Classmates does not contend counsel had express authority from their clients to waive their right to be in federal court. Indeed, Classmates admits "counsel used their accounts to gather information for their clients' Complaint," ECF No. 45 at 5, which the clients knew was intended to be filed in federal court.

> As Judge Chen noted:
>
> The Court is troubled by PeopleConnect's suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit. Under PeopleConnect's position, Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum, a right protected under the First Amendment.

*Callahan*, at *6 (quotations omitted).

Defendant's reliance on *Ind. Living Resource Center San Francisco v. Uber Techs., Inc.*, is unavailing. 18-cv-06503-RS, 2019 WL 3430656 (N.D. Cal. July 30, 2019)), is unavailing. In that case, the plaintiffs' claims arose from their use of the Uber application, yet they "claim[ed] never to have downloaded the Uber App." *Id*. at *3-4. So the court treated a paralegal's use of Uber to test wait times as if the plaintiffs had used Uber themselves. *Id.* at 4. Here, by contrast, "[C]ounsel's use of the Classmates.com website is not the factual predicate for Plaintiffs' claims." *Callahan*, at *6 (N.D. Cal. May 18, 2021). Classmates' ongoing commercial use of Plaintiffs' identities occurs regardless of whether Plaintiffs or their counsel use the site.

### 2. Classmates' arbitration clause is unenforceable under Washington law.

Even had Plaintiffs agreed to a TOS (which they did not), the arbitration clause is unenforceable because it is both procedurally and substantively unconscionable. Because the TOS contains a choice of law clause, ECF No. 45-1 at 24, Washington state law governs the

analysis. *Jackson v. Payday Fin., LLC,* 764 F.3d 765, 774-75 (7th Cir. 2014) (7th Cir. 2014).

An arbitration clause is procedurally unconscionable if it denies users "meaningful choice." *Zuver v. Airtouch Communications, Inc.*, 153 Wash. 2d 293, 305, 103 P.3d 753 (2004). Classmates' arbitration clause is a contract of adhesion, which "supports a finding that the agreement is procedurally unconscionable." *Burnett v. Pagliacci Pizza, Inc.*, 442 P.3d 1267, 1272 (Wash. Ct. App. 2019), *aff'd*, 470 P.3d 486 (2020). While the TOS purport to allow a user to opt-out of arbitration, ECF No. 45-1 No. 23, the opt-out is illusory. Classmates responds to opt-out requests by terminating the user's account. Osborn Decl., Ex. 2. Because of its bad faith refusal to honor opt-outs, Classmates should be estopped from asserting arbitration.

An arbitration clause is substantively unconscionable if it is "one-sided or overly harsh". *Gandee v. LDL Freedom Enterprises, Inc.*, 176 Wash. 2d 598, 603 (2013) (quotation omitted). Classmates' arbitration clause provides that "attorneys' fees of both parties will be borne by the party that ultimately loses." ECF No. 45-1 at 23. Because they unfairly benefit the party with greater financial resources, such "loser pays" provisions are unconscionable. *Gandee*, at 606. Classmates also requires a claimant to attend proceedings in Seattle and share costs, including the cost of hiring an arbitrator. ECF No. 45-1 at 23-24. For users with small dollar-value claims – such as the Plaintiffs' claims for $1,000 in statutory damages – these procedures are so expensive they leave the user with no practical means of redress. They are therefore unconscionable. *See Gandee*, at 604; *Mendez v. Palm Harbor Homes, Inc.*, 111 Wash. App. 446, 461 (2002) ("the cost of arbitration is so high relative to . . . the small size of [plaintiffs'] claim" that enforcing the agreement would "represent the anthesis of access to justice").

"In Washington, either substantive or procedural unconscionability is sufficient to void a contract." *Gandee*, 176 Wash. 2d at 603. Here, both are present, and Classmates' arbitration

clause is void. Because the issues identified above infect the entire agreement, the clause cannot be saved by severing specific provisions. *See Gandee*, at 607 (voiding agreement when "the unconscionable terms pervade[d] the entire clause"); *Burnett*, at 1280 (the "arbitration policy is both substantively and procedurally unconscionable, so severance is inappropriate").

**B.      The Communications Decency Act ("CDA") does not immunize Classmates' actions.**

Two courts – including one in this District – have already held that the CDA does not apply to right of publicity claims against websites with virtually identical advertising practices to Classmates. *Lukis*, 454 F. Supp. 3d at 763 (IRPA claims); *Kolebuck-Utz v. Whitepages Inc.*, 2021 WL 1575219, at *3. The law compels the same conclusion here.

> **1.      Classmates has not met its burden of showing that yearbooks were "provided by" anyone.**

CDA immunity is an affirmative defense. *Dobrowolski v. Intelius, Inc.*, 17 CV 1406, 2017 WL 3720170, at *9 (N.D. Ill. Aug. 29, 2017). It is Classmates' burden to prove the elements of 47 U.S.C. § 230. But Classmates has failed to identify any "information content provider" who "provided" yearbooks to Classmates. *See* 47 U.S.C. § 230(c)(1).

Classmates has not described how it acquired Plaintiffs' yearbooks. *See* ECF No. 45 at 8-9. The Consolidated Amended Complaint ("CAC") contains no allegations concerning Classmates' methods because Plaintiffs have no knowledge. *See* ECF No. 37 at ¶ 63-68. It is possible Classmates acquired Plaintiffs' yearbooks by scraping them from public sources such as library websites. We simply do not know. The CDA defense therefore fails. *See Dobrowolski*, at *9 (dismissal based on the CDA is "appropriate only when the factual allegations in the complaint unambiguously establish all the elements of the defense.")

The court in *Lukis* rejected CDA immunity because, as Classmates likely does, the defendants extracted information from public sources. 454 F. Supp. 3d 746, 763 (N.D. Ill. 2020).

Because the websites "actively compiled and collated . . . information regarding [the plaintiff]", they could not claim to be "act[ing] as a mere passive transmitter or publisher of information that was 'provided by another information content provider.'" *Id*. (quoting § 230(f)(3)).

### 2. Plaintiffs' claims are directed at advertisements Classmates created, not the underlying yearbooks.

Even if Classmates had identified someone who "provided" yearbooks, CDA immunity still would not exist, because Plaintiffs' claims are not directed at yearbooks. Plaintiffs' claims are directed at the advertisements Classmates displays while users are attempting to view free-limited access versions of Plaintiffs' photographs, and at the promotional banners and buttons Classmates displays adjacent to Plaintiffs' photographs. ECF No. 37 at ¶¶ 32-38, 55. These are entirely of Classmates' design and creation. For example, Classmates created a webpage that blocks the screen while the user is attempting to view Plaintiffs' photographs. The page says "Select your plan below", "$3.00/month", and "50% off!" *Id*. at ¶ 34.

Where, as here, liability stems from content the website itself created or contributed to, the CDA does not apply. *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 886 (E.D. Wis. 2009) ("[A]s to content that [a website] creates itself, or is 'responsible, in whole or in part' for creating or developing, the website is also a content provider" and there is no CDA protection) (*quoting Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008); 47 U.S.C. § 230(f)(3)). It does not matter that Classmates' advertising incorporates photographs created by others. Classmates is a "content provider" because it is "responsible . . . in part" for content creation. *Stayart*, 651 F. Supp. 2d at 866; 47 U.S.C. § 230(f)(3). In *Kolebuck-Utz*, the court rejected CDA immunity on grounds that the plaintiff alleged Whitepages "does, in fact, generate content." 2021 WL 1575219, at *3. In *Lemmon v. Snap, Inc.*, 995 F.3d 1085, at *3 (9th Cir. 2021),the Ninth Circuit reversed a finding of CDA immunity because the claims turned

on the design of the application.

In *Anthony v. Yahoo! Inc*., the defendant promoted its dating website by sending "profiles of actual, legitimate former subscribers whose subscriptions had expired . . . to current members of the service." 421 F. Supp. 2d 1257, 1263 (N.D. Cal. 2006). Although "third parties created these profiles," the CDA did not immunize the website's use of the profiles in fraudulent promotions. "Because [the plaintiff] posits that Yahoo!'s manner of presenting profiles – not the underlying profiles themselves – constitute fraud, the CDA does not apply." *Id*. That Classmates did not create the underlying yearbooks does not immunize its creation of illegal advertisements incorporating yearbook content.

### 3. The statutory exception for intellectual property applies.

The CDA contains an exception for "any law pertaining to intellectual property." 47 U.S.C. § 230(e)(2). There is a jurisdictional split regarding whether the exception applies to state intellectual property rights including the right of publicity, or is strictly limited to rights recognized by federal law. *See, e.g., Stayart*, 651 F. Supp. 2d at 887. Although no court in the Seventh Circuit has ruled dispositively, two courts have said the exception probably applies to state right of publicity claims. *See Nieman v. Versuslaw, Inc*., 12-3104, 2012 WL 3201931, at *8 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 Fed. Appx. 635 (7th Cir. 2013) (IRPA claims would "likely be considered intellectual property claims and would therefore not be barred"); *Stayart v. Yahoo! Inc., 651 F. Supp. 2d 873 (E.D. Wis. 2009)* ("A 'right to publicity' . . . is generally considered an intellectual property claim . . . which implicates the exception").

This Court should follow the path described in *Nieman* and *Stayart*. Because Plaintiffs' claims sound in intellectual property rights protected by Illinois state law, the CDA does not apply. This is consistent with the approach followed by courts in the First and Second Circuits, and with the text and intent of the CDA. *Doe v. Friendfinder Network, Inc*., 540 F. Supp. 2d 288,

302 (D.N.H. 2008) ("§ 230(e)(2) applies simply to any law pertaining to intellectual property, not just federal law") (internal quotation omitted); *Atl. Recording Corp. v. Project Playlist, Inc.,* 603 F. Supp. 2d 690, 704 (S.D.N.Y. 2009) ("Congress intended the word 'any' to mean any state or federal law pertaining to intellectual property") (internal quotation omitted).

Classmates cites only one case in which a court in the Seventh Circuit found CDA immunity. *See Hadley v. GateHouse Media Freeport Holdings, Inc.,* 12 C 1548, 2012 WL 2866463 (N.D. Ill. July 10, 2012). But in *Hadley,* a third-party clearly "provided" the content by posting a comment on the newspaper's website; the defendant contributed nothing to the comment; and the claim sounded in defamation, not intellectual property. *Id.* at *1-2.

## C.     Copyright preemption does not apply to IRPA claims, nor to any claim arising from the misuse of an identity.

Under controlling Seventh Circuit authority, copyright preemption does not apply to right of publicity claims. *Toney v. L'Oreal USA, Inc.,* 406 F.3d 905, 908-09 (7th Cir. 2005). The IRPA protects a person's "identity" or "persona," which cannot be copyrighted:

> The IRPA states that a person's 'identity' is protected . . . . The subject matter of such a claim is not a particular picture or photograph of plaintiff. Rather, what is protected by the right of publicity is the very identity or persona of the plaintiff as a human being . . . . A photograph is merely one copyrightable expression of the underlying work, which is the plaintiff as a human being . . . . A persona, defined in this way, can hardly be said to constitute a writing of an author within the meaning of the copyright clause of the Constitution.

*Id.* at 908-09 (quotations omitted). From this *Toney* concluded that (1) an "identity is not fixed in a tangible medium of expression" and (2) "rights protected by the IRPA are not equivalent to any of the exclusive rights within the general scope of copyright." *Id.* at 910 (*citing* 17 U.S.C. §§ 301; 102; 106).[5]

---

[5] Because Plaintiffs' claims under the ICFA and Illinois common law also arise from Classmates' intentional misappropriation and misuse of their identities and personae, the rule of *Toney* also applies to those claims.

Classmates incorrectly asserts that the rule of *Toney* was "premised" on the fact that the advertisement in *Toney* "falsely suggest[ed] that the plaintiff endorsed the product at issue." ECF No. 45 at 11. By its own terms *Toney* applies to *all* IRPA claims, including claims where there is no allegation of false endorsement. *Toney*, at 908-09.

A plaintiff suffers injury to her persona under the IRPA whenever her identity is used for commercial purposes without her permission, regardless of whether the use falsely implies endorsement or sponsorship. As this District wrote in *Dobrowolski v. Intelius, Inc*.:

> IRPA does not require that the commercial purpose be an apparent endorsement of the defendant's product or service . . . . Many right-of-publicity cases may involve false endorsements . . . . But a right of publicity claim is not limited to a false endorsement claim . . . . [I]nfringement of the right of publicity is not merely a form of false advertising or false endorsement . . . . Using a person's identity merely to draw attention to a product or advertisement is an infringement.

2017 WL 3720170 at * 8. *See also Woodard v. Victory Records, Inc*., 11 C 7594, 2016 WL 1270423, at *10 (N.D. Ill. Mar. 31, 2016) ("Unlike false endorsement . . . the IRPA has no likelihood-of-confusion requirement).

Courts in Illinois and the Seventh Circuit routinely apply *Toney* to reject copyright preemption in right of publicity cases where the plaintiffs allege use in advertising a product, or as part of a product, but do not allege endorsement. *See, e.g. Brown v. ACMI Pop Div*., 375 Ill. App. 3d 276, 277, 873 N.E.2d 954 (1st Dist. 2007) (defendant "display[ed] a catalogue of over 2.1 million photographic images" including photographs of the plaintiff), 375 Ill. App. 3d at 287-89 (rejecting preemption); *Dent v. Renaissance Mktg. Corp*., 14 C 02999, 2015 WL 3484464, at *3-5 (N.D. Ill. June 1, 2015) (defendant falsely represented that it was "affiliated with or authorized by" the 1985 Chicago Bears to distribute a video); *Leto v. RCA Corp*., 341 F. Supp. 2d 1001 (N.D. Ill. 2004) (defendant printed photograph of the plaintiff riding a roller coaster on the side of television boxes); *Daniels v. FanDuel, Inc*., 116CV01230TWPDKL, 2017 WL

4340329, at *1 (S.D. Ind. Sept. 29, 2017), aff'd, 909 F.3d 876 (7th Cir. 2018) (Indiana right of publicity claims based on the plaintiffs' "appear[ance] on the roster of available players" in a fantasy football app).

Classmates can cite only a single 35-year-old case in which a court applied preemption to IRPA claims.[6] *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986). In *Toney*, the Seventh Circuit revisited its opinion in *Baltimore Orioles*. 406 F.3d at 910-11. Noting that the decision had "been widely criticized by our sister circuits," the Seventh Circuit limited its previous holding to the proposition that "state laws that intrude on the domain of copyright are preempted." *Id*. at 911. The *Toney* Court cited with approval the conclusion from *Baltimore Orioles* that "[a] player's right of publicity in his name or likeness would not be preempted if a company, without the consent of the player, used the player's name to advertise its product." *Id*. (quoting *Baltimore Orioles*, 805 F.2d at 666 n. 24).

Perhaps recognizing that Seventh Circuit law does not support copyright preemption, Classmates relies on authority from the Ninth Circuit evaluating California right of publicity claims. ECF No. 45 at 10-11. But even if California law applied to this case (which it does not), copyright preemption still would not apply because Classmates does not own or license copyrights in the student photographs it stole from yearbooks. ECF No. 29 at ¶ 36. *See KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 362 (2000) ("We do not believe a [right to publicity] claim is preempted under *Fleet* where, as here, the defendant has no legal right to publish the copyrighted work." *Id*. at 374 (*citing Fleet v. CBS, Inc*., 50 Cal. App. 4th 1911, 58

---

[6] Classmates cites two other cases in this circuit, but neither involve claims arising from an identity or persona. *See Pers. Keepsakes, Inc. v. Personalizationmall.com, Inc*., 11 C 5177, 2012 WL 414803 (N.D. Ill. Feb. 8, 2012) (consumer fraud, deceptive trade practices, and unfair competition); *Cassetica Software, Inc. v. Computer Scis. Corp*., 09-cv-0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) (public nuisance).

13

Cal. Rptr. 2d 645 (1996))); *cf. Maloney v. T3Media, Inc.*, 853 F.3d 1004 (9th Cir. 2017)

(preemption applied because the plaintiffs were challenging a "copyright holder's decision to

distribute the copyright images themselves"). Classmates has no legal right to distribute the

yearbooks in its possession. Having stolen copyrighted material, Classmates cannot claim its

disregard for copyright insulates it from liability under the right of publicity.

**D.      Plaintiffs have stated a claim under the IRPA.**

**1.   Classmates' extraterritoriality argument fails.**

Classmates' argument is premature. Because it requires a "highly fact-based analysis," an

extraterritoriality defense "is generally inappropriate for the motion to dismiss stage." *Vance v.*

*Int'l Bus. Machines Corp.*, 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020).

Extraterritoriality applies only if the statute is not intended to have effect outside Illinois.

*Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill. 2d 100, 184-85 (2005). But here, the very

legislative history to which Classmates selectively cited in their briefing demonstrates the bill's

sponsor *did* intend the IRPA to have extraterritorial effect. *See* ECF No. 45 at 13. Asked "is it

limited to Illinois residents?", the sponsor replied, "I think it would be for any person" even "if

they're not from Illinois." HB 1422, 90th Gen. Assemb., 49th Leg. day, Tr. of House Debate 228

(Ill. Apr. 24, 1997) (question of Rep. J. Turner and statement of Rep. A. Turner).

Even were the IRPA not intended to have extraterritorial application (which it is), this

lawsuit is firmly situated in Illinois. Whether a claim is extraterritorial turns on "whether the

circumstances relating to the transaction occur primarily and substantially within Illinois."

*Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017) (*quoting Avery*, 216 Ill. 2d at

187). There is no "single formula" and "each case must be decided on its own facts." *Id.*

The facts point squarely to Illinois. First, both Plaintiffs are Illinois residents, and the

class definition is limited to Illinois residents. ECF No. 37 at ¶¶ 24, 45, 76. *See In re Facebook*

*Biometric Info. Privacy Litig.*, 326 F.R.D. 535 (N.D. Cal. 2018), *aff'd*, 9*32 F.3d 1264 (9th Cir. 2019) ("None of the class members are non-residents suing under Illinois law, which is the paradigmatic situation for the presumption against the extraterritorial application"). Most of the cases Classmates cites involve out-of-state plaintiffs. *See Avery* (Louisiana plaintiff); *Miche Bag, LLC v. Be You, LLC*, 11-CV-720, 2011 WL 4449683 (N.D. Ill. Sept. 26, 2011) (Utah plaintiff suing Michigan defendant); *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 886 N.E.2d 405 (1st Dist. 2008) (Pennsylvania plaintiff).

Second, Plaintiffs' claims arise from Classmates' violation of their intellectual property and privacy rights, both of which are continuing harms felt in Illinois. ECF No. 37 at ¶¶ 19, 44, 50, 74. *See Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (rejecting challenge when the defendant infringed a trademark held by an Illinois resident); *Vance v. Microsoft Corp.*, C20-1082JLR, 2021 WL 963485, at *4 (W.D. Wash. Mar. 15, 2021) (rejecting challenge because "[t]he alleged harm to privacy interests is ongoing for Illinois residents").

Third, Classmates' failure to solicit consent from the Plaintiffs prior to using their identities – the key omission leading to this lawsuit – occurred in Illinois. *See Rivera*, 238 F. Supp. 3d at 1012 (rejecting extraterritoriality challenge to a BIPA claim in part because "it was in Illinois where [the defendant] . . . failed to get [the plaintiffs'] consent."); *Vance*, 2021 WL 963485, at *4 ("The required disclosures or permissions would have been obtained from Illinois, so any communication would have necessarily involved Illinois.").

Fourth, the promotional messages and free limited-access photographs that are the source of Plaintiffs' complaint are displayed openly and publicly on the Internet, including in Illinois. When an "alleged infringement [takes] place on the Internet," the infringement is also "presumably occurring in Illinois" for purposes of extraterritoriality. *Specht*, 660 F. Supp. 2d at

15

866. The CAC alleges Classmates showed its advertisements "to millions of website users in Illinois." ECF No. 37 at ¶ 19.

Fifth, it is likely Classmates reached into the state of Illinois to acquire Plaintiff Loendorf's yearbook, which is from an Illinois high school. ECF No. 37 at ¶¶ 15, 55. *See Rivera*, at 1101 (rejecting extraterritoriality defense when "[plaintiffs'] photographs were taken in Illinois" and "uploaded in Illinois" to the defendant's servers).

Classmates incorrectly characterizes these many connections to Illinois as "fleeting." ECF No. 45 at 14. In fact, courts routinely reject challenges based on similar or more tenuous connections. *See, e.g. Monroy v. Shutterfly, Inc.*, 16 C 10984, 2017 WL 4099846, at *11 (N.D. Ill. Sept. 15, 2017) (rejecting challenge even though the plaintiff was a Florida resident because the offending photograph was uploaded in Illinois and consent should have been requested in Illinois); *Specht*, 660 F. Supp. 2d at 866 (rejecting challenge when defendant infringed an Illinois trademark even though none of the defendant's activities were directed towards Illinois).

The only cases Classmates cites that involve in-state plaintiffs are *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008), and *Valley Air Serv. v. Southaire, Inc.*, 06 C 782, 2009 WL 1033556 (N.D. Ill. Apr. 16, 2009). Both are distinguishable. In *Vulcan*, an Illinois plaintiff complained that a third party had registered a domain name similar to their own. 552 F. Supp. at 759-60. The defendant's only connection to the case was that it allowed the third party's website to appear in search results. *Id.* In *Valley Air*, the plaintiff left Illinois to accept delivery of an aircraft in Arkansas, and all of the "inspections and subsequent work on the plane at the heart" of the plaintiff's claims took place in Arkansas. 2009 WL 1033556, at *12.

## 2. Plaintiffs have alleged public use for commercial purposes.

Plaintiffs allege two methods by which Classmates "use[s]" the plaintiffs "identit[ies] for commercial purposes." 765 ILCS 1075/30. First, Classmates uses **free limited-access**

16

**photographs** to advertise website subscriptions and yearbook reprints. Classmates advertises by publishing a publicly available webpage on which users may search by name and location for any former student. ECF No. 37 at ¶ 32. Users receive free limited access to low-resolution versions of Plaintiffs' photographs. *Id.* at ¶ 33. Once the user clicks to view higher-resolution versions or attempts to view multiple photographs, Classmates interrupts their browsing to display pages and pop-ups soliciting the purchase of a Classmates subscription for $3 per month, or yearbook reprints for $99.95. *Id.* at ¶¶ 34, 38, 55. Second, Classmates displays **banner ads and buttons** directly adjacent to Plaintiffs' names and photographs advertising Classmates.com subscriptions and yearbook reprints. *Id.* at ¶¶ 32, 35, 37, 55.

Classmates makes four attempts to argue these methods do not constitute "commercial purposes" within the meaning of the IRPA, all of which fail. <u>First</u>, Classmates argues that the use of a photograph is "for a commercial purpose" only if it is used to a promote "some other product" separate from the photograph itself. ECF No. at 18-19, *quoting* Thompson v. Getty Images (US), Inc., 13 C 1063, 2013 WL 3321612, *2 (N.D. Ill. July 1, 2013). It is "far from clear" that *Thompson's* interpretation of the IRPA is correct. *Lukis v. Whitepages Inc.*, 19 C 4871, 2020 WL 6287369, at *4 (N.D. Ill. Oct. 27, 2020); *see also Brown*, 375 Ill. App. 3d 873 N.E.2d 954 (IRPA claim based on defendant's displaying photographs of James Brown for sale on its website). But even if it were, Classmates does use Plaintiffs' photographs to advertise separate products: subscriptions to Classmates.com, and yearbook reprints. As the court in *Lukis* explained:

> Whitepages used Lukis's identity to advertise not a background report regarding Lukis, but a monthly subscription service giving the purchaser access to background reports on anybody in Whitepages's database . . . Thus, Lukis's identity was not part and parcel of the entire product or service being advertised, meaning that Whitepages's use of her identity had a commercial purpose.

454 F. Supp. 3d at 760-61. *See also Gabiola v. Sarid*, 16-CV-02076, 2017 WL 4264000, at *6

(N.D. Ill. Sept. 26, 2017) (denying motion to dismiss IRPA claims because "defendants are using [the plaintiffs'] likenesses, in the form of arrest photographs, without their consent to solicit enrollment in the subscription removal service"); *cf. Nieman* 2012 WL 3201931, at *3 (C.D. Ill. Aug. 3, 2012) (preview of document used to solicit purchase of that document).

As in *Lukis* and *Gabiola*, and unlike *Nieman*, subscribers who are enticed by a student photograph to purchase a Classmates.com subscription or yearbook reprint are not buying access to the photograph. This *cannot* be what Classmates is selling, because the specific photograph is available for free to non-subscribers. ECF No. 37 at ¶ 42. Instead, Classmates is selling a subscription service, which it describes as delivering the following benefits: visibility into who viewed your profile; student searching by current location; 20% discounts on yearbook reprints; and the ability to send and receive messages from other members. *Id.* Likewise, users who purchase a yearbook reprint from Classmates receive far more than a single photograph.

Second, Classmates attempts to distinguish *Lukis* by claiming its advertising methods are not "advertisements" at all. ECF No. 45 at 18. Classmates asserts its "free limited-access" method is not advertising because the pages soliciting subscriptions for $3 per month "do not include Plaintiffs' identities" on the same screen. *Id.* But the pleadings show that Plaintiffs' photographs and the explicitly promotional pop-ups and webpages are part and parcel of the same communication: the pop-ups and webpages appear only while users are attempting to view Plaintiffs' photographs; must be clicked through to continue viewing the photographs; and propose commercial transactions whereby the user would gain enhanced access to Plaintiffs' photographs. ECF No. 37 at ¶¶ 34, 57.

Classmates then admits that its "banners and buttons" method does involve advertising its products on the very same screen as the Plaintiffs' photographs. ECF No. 45 at 18. But it insists

these do not qualify as advertisements either, because they appear either in an "adjacent panel" or as a "menu option." *Id.* Classmates fails to explain why the format in which it presents advertisements is relevant. The pleadings illustrate the buttons and banners are both explicitly promotional, and clearly linked to the Plaintiffs' photographs. *See, e.g.,* ECF No. 37 at ¶¶ 37 (button labeled "Own this yearbook today" displayed above Plaintiff's photograph).

The argument for commercial use is even stronger than in *Lukis*. There, users browsing background reports on InstantCheckmate saw buttons adjacent to the reports labeled "view report" or "open report," which if clicked lead "to a pay screen offering the monthly subscription package." 454 F. Supp. 3d at 755. Users were free to ignore the buttons and continue browsing. Here, a Classmates user who clicks a photograph or attempts to view multiple photographs is *forced* to view a screen soliciting either a monthly subscription or a yearbook reprint, and cannot continue browsing without interacting with the advertisement. ECF No. 37 at ¶¶ 33, 38.[7]

<u>Third</u>, Classmates argues Plaintiffs have not alleged "public use or holding out" of their identities because they have not alleged "a third party ever actually searched for them." ECF No. 45 at 14-15. This is both factually incorrect, and irrelevant under the law.

It is undisputed that Classmates published Plaintiffs' names and photographs on a website publicly available for anyone to view. Publication on the Internet <u>is</u> public display. *Performance Mktg. Ass'n, Inc. v. Hamer*, 998 N.E.2d 54, 58 (Ill. 2013) ("information appearing on a webpage is available and disseminated worldwide"). Plaintiffs need not plead a "third party" viewed the advertisements Classmates created and displayed on the Internet, any more than a plaintiff whose photograph appears on a bus must plead specific people saw the bus. *Cf. Thompson*, 2013 WL

---

[7] The page advertising subscriptions is designed to make the user believe she must pay to continue viewing photographs. A user *can* continue browsing without making a purchase, but only if she notices the link labelled "No thanks" in miniscule font. ECF No. 37 at ¶ 34.

3321612, at *2. *Lukis* denied a motion to dismiss IRPA claims based on the allegation that a user "would" be able to identify the plaintiff from a free preview, not that any user in fact had. *See Lukis*, 454 F. Supp. 3d at 756 (N.D. Ill. 2020).

Importing a novel "actual viewing" requirement into the IRPA – which appears nowhere in the statutory text – would ignore that the vast majority of Internet advertising is actively generated in response to a user-provided search, just as Classmates displays its ads in response to searches for the Plaintiffs' names. *See Tichy v. Hyatt Hotels Corp.*, 376 F. Supp. 3d 821, 828 (N.D. Ill. 2019) ("keyword" advertising works by advertisers "[b]idding to have an advertisement appear in response to a particular keyword"). Classmates published the names and photographs of millions of Illinois residents on its website because it knows the more names and photographs it has on its site, the more likely it will be able to deliver an advertisement directly tailored to the name the user enters. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 428 (7th Cir. 2010) (personal jurisdiction existed based on "automated transactions unilaterally initiated" by customers because "[the defendant] itself set the system up this way.").

Even if "actual viewing" by a "third party" were required to state an IRPA claim – which it is not – Plaintiffs have plead facts sufficient to conclude their photographs were viewed by others. *See* ECF No. 37 at ¶¶ 32-40, 54-57.[8]

Fourth, Classmates again attempts to import a non-existent "false endorsement" requirement into the statute. ECF No. 45 at 15. As explained in Part C above, apparent sponsorship is not an element of an IRPA claim.

### 3. No statutory exemptions apply.

Classmates argues its use of Plaintiffs' identities to advertise subscriptions and reprints is

---

[8] To the extent this court believes actual viewing is required to and Plaintiffs' existing allegations are insufficient, Plaintiffs respectfully request leave to amend.

exempt under 765 ILCS 1075/35(b)(1). ECF No. 45 at 20. The exemption applies to the use of an identity "in an attempt to portray, describe, or impersonate that individual in . . . a single and original . . . book, article, . . . or other . . . visual . . . work") (emphasis added). The exemption protects original, artistic works. *See Collier v. Murphy*, 02 C 2121, 2003 WL 1606637, at *2 (N.D. Ill. Mar. 26, 2003) (exemption covers "artistic and creative expression"); *Best v. Malec*, 09 C 7749, 2010 WL 2364412, at *3 (N.D. Ill. June 11, 2010) (exemption is limited to "work[s] of art" and did not apply to "actual video" showing the plaintiff's arrest).

The § 35(b)(1) exemption does not apply. Classmates created a database of student names and photographs, ECF No. 37 at ¶¶ 15, 35, 55; promotional pop-ups and pages that block the users' view while they attempt to view photographs, *id.* at ¶¶ 33, 34, 38, 55; and banner ads and buttons encouraging the user to purchase subscriptions and reprints, *id.* at ¶¶ 35-37, 55. None of this is an "original" work of art. *See Lukis*, 2020 WL 6287369, at *5 ("original . . . connot[es]. . . something more than a mechanical or routine compilation of basic, preexisting facts").

It makes no difference that Classmates extracted the names and photographs from yearbooks. Even if a school yearbook qualified as an original, artistic work – which is far from clear and would ultimately be for the trier of fact to decide – Plaintiffs' claims are not directed at the underlying yearbooks. The claims are directed at Classmates' use of Plaintiffs' photographs and identities in free limited-access previews designed to sell website subscriptions and yearbook reprints. These commercial uses fall outside the scope of § 35(b)(1), which applies only if  ". . . the performance, work, play, book, article, or film *does not constitute in and of itself a commercial advertisement* for a product") (emphasis added). 765 ILCS 1075/35(b)(1). *See also Lukis*, 454 F. Supp. 3d at 762 (free previews of records containing personal information fell "outside the scope of Section 35(b)(1)" because they were "alleged to be a commercial

21

advertisement for a product") (quotation omitted).

Classmates also asserts its use of Plaintiffs' identities is exempt under 765 ILCS 1075/35(b)(2). But decades-old photographs showing an individual's appearance as a minor is not "news," nor does it concern "public affairs." *See Callahan*, No. 3:20-cv-08437-LB, 2021 WL 783524, at * 11 ("Ancestry's inclusion of the yearbook information is not a public issue"); *Lukis*, 2020 WL 6287369, at *6 (exception did not apply to "information derived from court and other public records" because "Plaintiffs are not public figures" and their records were not "a subject of legitimate news interest").

The cases cited by Classmates are easily distinguished. *Bogie v. Rosenberg* concerned a documentary about the career of comedienne Joan Rivers, a public figure. 705 F.3d 603, 614 (7th Cir. 2013). In *Best v. Berard* the court concluded that "truthful footage of an arrest" used in a TV program about police officers concerned "public affairs." 776 F. Supp. 2d 752, 759 (N.D. Ill. 2011). *Gabiola* distinguished *Best* on grounds that apply equally here, finding that Mugshots.com's use of arrest photos to advertise a subscription presented "a much greater integration of the commercial elements and a reduced proportion of newsworthiness." 2017 WL 4264000, at *6.

### E. Plaintiffs have plead claims under the ICFA.

A claim arises under the Illinois Consumer Fraud and Deceptive Business Practices Act when the following elements exist: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Prescott v. Argen Corp.*, 13 CV 6147, 2015 WL 94168, at *4 (N.D. Ill. Jan. 6, 2015) (citing 815 ILCS 505/1 *et seq.*)

Classmates engaged in a deceptive practice by advertising its subscription product using

22

Plaintiff's and class members' identities. Classmates created the false impression Plaintiffs are affiliated with Classmates and have authorized Classmates to share their information. ECF No. 37 at ¶¶ 6-11. Classmates intends that prospective customers rely on this deception, because its purpose is attracting users who will pay to receive more personal information. *Id.* at ¶ 10. The deception occurred in the course of Classmates' advertisement of subscriptions and reprints. And Classmates' use caused actual damage to Plaintiffs in the form of injury to their identities, unjustly earned profits, and denial of their rights. *Id.* at ¶ 11.

**F.    Plaintiff has plead a claim for intrusion upon seclusion.**

A claim requires: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." *Johnson v. K mart Corp.*, 311 Ill. App. 3d 573, 578, 723 N.E.2d 1192 (1st Dist. 2000).

Classmates' actions were unauthorized. ECF. No. 37 at ¶ 6. Plaintiff has alleged facts sufficient for a reasonable jury to conclude Classmates' conduct is highly offensive. Classmates disclosed Plaintiff's private information to a worldwide audience comprising millions of users. The information is highly sensitive, including a photographs of the Plaintiffs as minors and information about where they grew up and attended school. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (plaintiffs alleged offensive conduct when Facebook "disclosed to tens of thousands of app developers and business partners sensitive information about them without their consent, including their photos"); *Lovgren v. Citizens First Nat. Bank of Princeton,* 126 Ill. 2d 411, 420, 534 N.E.2d 987 (1989) (notices falsely advertising the sale of a farm could be "highly offensive").

Plaintiffs have alleged a reasonable expectation of privacy in the photographs and biographical information Classmates is distributing for profit. ECF No. 37 at ¶ 96. People who

willingly share personal information among a limited group of social connections do not lose their ability to assert privacy claims when a company shares that information much more broadly for profit. In *In re Facebook*, the court reasoned that privacy was not "an all-or-nothing proposition . . . the fact that the privacy one expects in a given setting is not complete or absolute does not render the expectation unreasonable as a matter of law.'" 402 F. Supp. 3d at 782; *see also Maremont v. Susan Fredman Design Group, Ltd.*, 10 C 7811, 2011 WL 6101949, at *3 (N.D. Ill. Dec. 7, 2011) (information shared with Facebook friends is "accessible only to those whom the user selects, and thus they are not strictly public"). Plaintiffs experienced distress at the knowledge their identities were being exploited to sell products with which they had no relationship. *See* ECF No. 37 at ¶¶ 11, 44, 97-100.

## G. Plaintiff has plead a claim for unjust enrichment.

Plaintiffs have properly plead that Classmates was unjustly enriched through its exploitation of Plaintiffs' identities. *See, e.g.,* ECF No. 37 at ¶¶ 11, 44. The violations of Illinois law described in the CAC are "unlawful or improper conduct as defined by law." *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011).

## H. Classmates' on-site messages and free limited access photographs promoting website subscriptions are not protected by the First Amendment.

Because it is an affirmative defense, Classmates bears the burden of pleading and proving its conduct is protected by the First Amendment. *See Gunn v. Cont'l Cas. Co.,* 968 F.3d 802, 807 (7th Cir. 2020) (burden of proof and pleading lies with defendant); *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 62, 632 (7th Cir. 2020) (same). Classmates has failed this burden.

### 1. Because Classmates' speech is commercial, strict scrutiny does not apply.

Commercial speech "does not receive full Constitutional protection." *Vrdolyak v. Avvo, Inc.,* 206 F. Supp. 3d 1384, 1387 (N.D. Ill. 2016) (*citing Central Hudson Gas & Elec. Corp. v.*

*Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563-66 (1980)). Laws regulating commercial speech are subject to intermediate scrutiny at most. *Central Hudson*, 447 U.S. at 562-64. To determine whether speech is commercial, courts apply the three-factor test from *Bolger*, which asks "(1) if it is an advertisement; (2) if the speech refers to a specific product or service; and (3) the speaker has an economic motivation for the speech." *United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009) (*citing Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983)). The *Bolger* factors are a "general framework" for analysis; they need not all be satisfied for speech to be commercial. *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 517 (7th Cir. 2014).

The free limited-access photographs and on-site messages that are the source of Plaintiffs' claims (*see* Part D(2) *above*) easily satisfy all three *Bolger* factors. They are advertisements referring to a specific product. *See, e.g., id.* at ¶¶ 34, 57 ("3 Month Plan $3.00/month"); ¶¶ 35, 57 ("Upgrade now" for "$1.23 a month"); ¶ 37 ("Own this yearbook today"); ¶ 38 ("Buy now" for "Price: $99.95"). Classmates' motivation for displaying them is indisputably economic. They are much closer to "core" commercial speech than the magazine page in *Jordan*, which the Seventh Circuit found to be commercial speech even though it mentioned no products and contained no solicitation. *Jordan*, 743 F.2d at 515-22.

Classmates argues strict scrutiny should apply, falsely asserting yet again that Plaintiffs seek to prevent publication of "yearbooks and . . . excerpts," which it claims are fully protected "expressive" speech. ECF No. 45 at 26. But even if yearbook pages simply listing names and photographs were expressive speech (they are not),[9] and even if Classmates had the right to

---

[9] Classmates cites *Kincaid v. Gibson*, 236 F.3d 342 (6th Cir. 2001), for the proposition that yearbooks are protected speech in their entirety. But that case concerned a portion of a specific yearbook in which the author expressed views on matters of public interest, including "high unemployment rates." *Id.*, at 345. Here, Plaintiffs protest only Classmates' misuse of their names and photographs, which express no views on any subject.

reproduce yearbooks (it does not, ECF No. 37 at ¶¶ 66-68), Classmates is arguing against a straw man. Plaintiffs' claims are not directed at the publication of yearbooks. Plaintiffs object to the incorporation of their likenesses in messages selling subscriptions to Classmates.com. That Classmates stole those likenesses from pre-existing publications does not mean it is entitled to steal whatever First Amendment protections those publications enjoy.

The crucial distinction between merely *providing access* to information, which may be protected, and *using information to promote a subscription or product*, which is unprotected commercial speech, is well recognized. For example, in *Lukis*, the website Whitepages.com created "free previews" of reports containing individuals' personal information it obtained from publicly available sources. 2020 WL 6287369, at *3. Whitepages.com advertised "by inviting users to purchase [a subscription] when they are viewing a free preview." *Id.* at *2. Exactly as Classmates argues here with respect to its free limited access photographs, Whitepages argued "that its free previews are entitled to First Amendment protection because they simply promote Whitepages' directory, which itself is protected." *Id.* at *3. The court rejected this argument, explaining that even if the reports were protected speech, the free previews clearly "propose a commercial transaction and thus fall within the core notion of commercial speech." *Id.* at *8, *quoting Jordan*, 743 F.3d at 516.

*Lukis* is not an outlier. In *Gabiola*, the court applied the same reasoning to Mugshots.com's use of public arrest records to advertise a subscription removal service. 2017 WL 426400, at *4. Because the arrest photos were displayed directly adjacent to links advertising the removal service, the court found the two "operate[d] in concert to sell the removal service and generate revenue." *Id.* at *4. The court applied intermediate scrutiny and rejected the defendant's First Amendment defense. *Id.* at *5.

Classmates argues that even if the messages advertising subscriptions and reprints are commercial speech, Plaintiffs' names and photographs are not, and the messages "do not use Plaintiffs' identities at all." ECF No. 45 at 26-27. This is contradicted by the pleadings. First, as Classmates admits in its own briefing,[10] in many instances Plaintiffs' photographs are visible *on the same webpage and at the same time* as the promotional pop-ups, pages, banners, and buttons. *See* ECF No. 37 at ¶¶ 32, 36, 37, 33 (partial photographs visible behind pop-up), 38 (same), 57 (same). Second, even in instances where a promotional pop-up or page obscures Plaintiffs' photographs, the logical relationship is clear. That the user must click buttons to return to the photographs no more separates the advertisement from Plaintiffs' identities than does turning a page in a magazine. *See Downing v. Abercrombie & Fitch,* 265 F.3d 994, 999-1000 (9th Cir. 2001) (advertisement several pages removed from plaintiff's photograph was clearly linked to the plaintiff's identity because it was selling a shirt worn by the plaintiff).

In *Gabiola* the court distinguished both *Vrdolyak* and *Neiman* on grounds that apply equally to Classmates. 2017 WL 426400, at *5 (distinguishing *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384 (N.D. Ill. 2016) and *Nieman v. VersusLaw, Inc.*, 512 Fed. Appx. 635 (7th Cir. 2013)). In *Vrdolyak*, the website Avvo.com published an online directory of attorneys. *Vrdolyak*, 206 F. Supp. 3d at 1385-86. The site displayed ads for local attorneys adjacent to the directory records. *Id.* There was no allegation the website advertised subscriptions. *Id.* Users could view attorney profiles free of charge, and Avvo.com did not advertise enhanced access in exchange for a fee, so there was no commercial speech. *Gabiola,* 2017 WL 426400, at *5. By contrast, the arrest records on Mugshots.com "work[ed] together with links directly to the checkout page for

---

[10] *See* ECF No. 45 at 26, stating that "many of these images do not use Plaintiffs' identities" and then referring to "those that do."

the removal service as advertisements," *id.* at *5, just as Plaintiffs' names and photographs on Classmates.com work together with pop-ups and links leading to checkout pages for website subscriptions and yearbook reprints.

In the non-precedential *Nieman* order, there was no advertisement at all. *See Nieman*, 512 Fed. Appx. 635, *affirming* 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012). The defendant website sold judicial records in exchange for payments of $4.95. Unlike both *Gabiola* and the present case, "the plaintiff [in *Neiman*] did not argue that the records themselves were used . . . to generate revenue for a service." *Gabiola*, 2017 WL 426400, at *5.

*Vrdolyak*, *Neiman* are also distinguishable because those cases concerned information of current and legitimate public interest (attorney ratings and judicial records). But as demonstrated in Part D(3) above, there is no legitimate public interest in decades-old photographs of the Plaintiffs as minors. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) ("speech on matters of purely private concern is of less First Amendment concern.")

*Dex Media,* decided under Washington state law in the Ninth Circuit, is not relevant. *See Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952 (9th Cir. 2012). In *Dex Media* the Seattle city government sought to forbid the publication of phonebooks unless they met certain conditions. *Id.* at 953. The court found that the presence of advertisements for unrelated local businesses did not render the phonebooks "commercial speech" because there was "no clear link" between the noncommercial phone listings and the businesses being advertised. *Id.* at 959. Here, Plaintiffs do not seek to ban publication of yearbooks. And the link between Plaintiffs' photographs and the products Classmates is advertising is clear.

### 2. Because the IRPA is content neutral, strict scrutiny does not apply.

Even if Classmates' advertisements were non-commercial expressive speech entitled to full First Amendment protection (which they are not), intermediate scrutiny would still be the

28

correct standard because the regulations at issue are content neutral. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("[R]egulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny").

Classmates' advertisements using Plaintiffs' names and photographs are illegal not because of their content, but because Classmates failed to obtain consent from the Plaintiffs. *See* 765 ILCS 1075/30(a) ("A person may not use an individual's identity for commercial purposes . . . *without having obtained pervious written consent*") (emphasis added); *Johnson,* 311 Ill. App. 3d at 578 (conduct must be "unauthorized" to constitute intrusion upon seclusion).

In *People v. Austin*, the Illinois Supreme Court held that a state law criminalizing the dissemination of private sexual images without permission was content neutral, even though the statute "targets the dissemination of a specific category of speech." 440 Ill. Dec. 669, 687 (Ill 2019), *cert. denied sub nom. Austin v. Illinois*, 141 S. Ct. 233 (2020). The court reasoned the regulation was:

> not based on the content of the image itself but, rather, based on whether the disseminator obtained the image under circumstances in which a reasonable person . . . knows or should have known that the person in the image has not consented.

*Id.* The court recognized that "the entire field of privacy law is based on the recognition that some types of information are more sensitive" and worried that invalidating the law at issue "would cast doubt on the constitutionality of these and other statutes that protect the privacy rights of Illinois residents." *Id.* at 688. Like the regulation in *Austin*, the privacy laws Classmates violated are content neutral, and intermediate scrutiny applies.

### 3. Plaintiffs' claims easily survive intermediate scrutiny.

Regulations subject to intermediate scrutiny are analyzed under the four-part test from *Central Hudson*, 447 U.S. at 563. At the outset, for commercial speech to qualify for First Amendment protection at all, it (1) "at least must concern lawful activity and not be misleading."

*Id.* If this requirement is met, the test asks (2) "whether the asserted government interest is substantial"; (3) "whether the regulation directly advances the governmental interest"; and (4) "whether it is not more extensive than necessary." *Id.* The test is satisfied "so long as the law promotes a substantial government interest that would be achieved less effectively absent the law." *People v. Austin*, 440 Ill. Dec. at 692 (*citing Turner*, 512 U.S. at 662)).

The laws at issue in this case as applied to Classmates' conduct easily pass *Central Hudson*. The Illinois state government has a substantial government interest in protecting the privacy and intellectual property rights of its citizens. *See, e.g.* 765 ILCS 1075/10 (recognizing "each individual's right" to "control and to choose whether and how to use an individual's identity for commercial purposes.") Liability under the IRPA is directed narrowly towards use for a "commercial purpose" without "consent," targeting the precise interest the law aims to protect. *See* 765 ILCS 705/5. Similarly, the common law tort of intrusion upon seclusion applies only to an unauthorized intrusion into a private matter in circumstances an ordinary person would find offensive or objectionable. *See Johnson*, 311 Ill. App. 3d at 578.

Nor does Classmates face an unreasonable burden in rectifying its conduct. Defendants could have avoided liability by asking permission before using Plaintiffs' photographs, or by not using free limited access to Plaintiffs' photographs as part of their advertising scheme.

### 4. Plaintiffs' claims would survive strict scrutiny.

Even if strict scrutiny applied (which it does not), Plaintiffs claims would survive because the state of Illinois has a compelling interest in protecting the right to publicity, and the IRPA is the least restrictive means available. *See Sable Comm's of Cal., Inc. v. F.C.C.*, 492 U.S. 115, 126 (1989). As explained above, Illinois has a compelling interest in protecting its citizen's privacy and intellectual property, and the IRPA's prohibition is narrowly tailored.

I.     **The Dormant Commerce Clause does not bar this suit.**

Like their extraterritoriality argument, Classmates' dormant commerce clause argument comes at the wrong stage. *Vance v. Int'l Bus. Machines Corp.*, 20 C 577, 2020 WL 5530134, at *3 (N.D. Ill. Sept. 15, 2020) "like the extraterritoriality doctrine, courts have repeatedly rejected the . . . Dormant Commerce Clause [argument] at the motion to dismiss stage") (*citing Rivera*, 238 F. Supp. 3d at 1104); *Nat'l Paint & Coatings Ass'n v. City of Chicago*, 45 F.3d 1124, 1132 (7th Cir. 1995) ("*Pike* may be impossible to apply without some factual inquiries").

Even if the argument were proper at this stage (which it is not), Classmates quotes the wrong standard. The *Pike* balancing test applies only to regulations that "produce a relative advantage for Illinois firms." *National Paint*, 45 F.3d at 1132 (*citing Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)). For laws that "do not give local firms any competitive advantage over firms located elsewhere" the proper standard is "rational basis" review. *Regan v. City of Hammond, Indiana*, 934 F.3d 700 (7th Cir. 2019) (quotation omitted). This makes sense, because "the central rationale behind the Dormant Commerce Clause doctrine is to prohibit state or municipal laws whose object is local economic protectionism." *Hlinak v. Chicago Transit Auth.*, 13 C 9314, 2015 WL 361626, at *3 (N.D. Ill. Jan. 28, 2015) (Kendall, J.) (quotation omitted).

Classmates does not argue – nor could it – that the IRPA treats Illinois companies more favorably than companies from other states. The statute forbids <u>all</u> companies from using Illinois residents' identities for a commercial purpose without consent, regardless of what state they are from. 765 ILCS 1075/30. Accordingly, rational basis review applies, and the IRPA easily passes. Illinois has a clear interest in protecting its citizens' privacy and intellectual property against unauthorized exploitation. *See* 765 ILCS 1075/10; *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 948 (7th Cir. 2009) (a law survives rational basis review if there is a "conceivable basis which might support it"). As the Seventh Circuit wrote in *National Paint*, "No disparate treatment, no

disparate impact, no problem under the dormant commerce clause." 45 F.3d at 1132.

Even if *Pike* balancing applied (which it does not), this suit would pass that standard as well. "Challengers invoking the *Pike* test have a steep hill to climb." *Grant-Hall v. Cavalry Portfolio Services, LLC*, 856 F. Supp. 2d 929, 938 (N.D. Ill. 2012). The law survives "unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." *Id.* (*quoting Midwest Title Loans,* 593 F.3d at 665 (7th Cir. 2010)). Here, the local benefits are substantial: the IRPA protects millions of Illinoisans' "right to control and to choose" how their identities are used. 765 ILCS 1075/10. And the burden on interstate commerce is minimal. Classmates intones the falsehood that Plaintiffs seek "to bar [its] display of yearbooks and yearbook excerpts." ECF No. 45 at 29. Not so. Classmates could have complied with the IRPA by asking consent, or by ceasing to offer free-limited access photographs. It could have provided an opt-out procedure for Illinois residents to request removal from the site. Or it could have refrained from collecting Illinois yearbooks. Courts have rejected challenges to laws that restrict company's activities in Illinois in the interest of protecting privacy rights, even if the laws have incidental effects on operations outside the state. *See, e.g., Monroy*, 2017 WL 4099846, at *6 (rejecting challenge even though BIPA "requires [the defendant] to comply with certain regulations if it wishes to operate in Illinois").

Nor is there any meaningful risk of inconsistent regulation. *Cf. Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103-04 (2d Cir. 2003). The right of publicity has long been recognized at common law and is recognized in every state. *See Toney*, 406 F.3d at 909 (surveying cases under various states' laws). The law in Classmates' home state is nearly identical to the IRPA. Wash. Rev. Code § 63.60.050 (forbidding use of "likeness on or in products . . . or for purposes of

32

advertising . . . without . . . consent" and providing for statutory damages).[11]

      Classmates cites two Seventh Circuit cases, both of which are distinguishable because the challenged laws regulated people who had no contact with the state. In *National Solid Wastes Management Ass'n v. Meyer*, the law required "all persons in [a] non-Wisconsin community [to] adhere to the Wisconsin standards regardless of whether . . . they dump their waste in Wisconsin." 63 F.3d 652, 658 (7th Cir. 1995). And in *Midwest Title Loans v. Mills* an Illinois law regulated Indiana businesses issuing loans in Indiana. 593 F.3d 660, 669 (7th Cir. 2010). 669

## J.    This Court has specific personal jurisdiction over Classmates.

      Specific personal jurisdiction exists where "the defendant has purposefully directed his activities to the forum state or purposefully availed himself of the privilege of conducting business in that state." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Where, as here, the injury arises from intellectual property and tort, the "purposeful direction" test is satisfied when three elements are present: "(1) intentional conduct (or intentional and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt . . . in the forum state." *Tamburo v. Dworkin,* 601 F.3d 693, 703 (7th Cir. 2010) (quotation omitted). This inquiry ensures "foreseeability," i.e. that the defendant "could have anticipated being haled into the courts of the state." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) (citation omitted).

      Classmates has extensive intentional contacts with this state that are closely entwined with its wrongdoing. First, Classmates extracted the names and photographs of millions of Illinois residents from school yearbooks. ECF No. 37 at ¶ 3. This includes records Classmates reaching in to the state to copy yearbooks from Illinois schools. *Id.* at ¶ 15. And it failed to

---

[11] The only meaningful difference between the two statutes is that Washington statute does not allow class actions. Wash. Rev. Code § 63.60.070.

obtain consent from Illinois residents. *See* Part D(1) *above.*

Second, Classmates advertises using Plaintiffs' identities to a national audience, including to Illinois residents, knowing that many millions of the people whose identities it exploits live in Illinois and will feel the harm in Illinois. ECF No. 37 at ¶ 18-19. *See Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 399 (7th Cir. 2020) ("[I]t is sufficient that the defendant reasonably could foresee that its product would be sold in the forum").

Third, Classmates targets its free limited-access photographs and messages specifically to Illinois residents. The search function on its website encourages the user to search for yearbooks by state; Illinois is one of the listed options. ECF No. 37 at ¶ 16-17. *See Curry*, 949 F.3d at 398 (reversing dismissal when a website included "Illinois . . . among the 'ship-to' options from which the customer must choose"). Classmates' advertising efforts in Illinois have been successful: it has tens if not hundreds of thousands of paying subscribers in Illinois. *Id.* at ¶ 18. *See uBID*, 623 F.3d at 430 (finding personal jurisdiction when the defendant "reached hundreds of thousands of people in Illinois with its [nationally targeted] advertising").

In *Lukis*, Judge Feinerman found Whitepages had purposefully directed its activities to Illinois based on precisely the same activities:

> [The defendant] knowingly searches for and obtains private and public records regarding Illinois residents . . . [The defendant] compiles family, age, and address information about Illinois residents, without their consent, in free previews used to advertise its subscription services . . . These actions qualify as the kind of intentional contacts . . . required for the exercise of specific jurisdiction.

*Id.* at 757 (internal quotation omitted). [12]

Like the defendant in *Illinois v. Hemi Group LLC*, Classmates wants to "have its cake and eat it to: it wants the benefit of a nationwide business model with none of the exposure."

---

[12] Classmates claims InstantCheckmate "operates an entirely different service on a website that operates differently," but fails to describe any supposed differences. ECF No. 45 at 34.

*Illinois v. Hemi Group LLC*, 622 F.3d 754, 760 (7th Cir. 2010). But conducting a nationwide business cannot insulate Classmates for injury it causes through its contacts with Illinois. "[I]t is [the defendant] reaching out to residents of Illinois . . . that justif[ies] exercising person jurisdiction." *Id. See also Curry*, 949 F.3d at 402 ("Illinois has a strong interest in providing a forum . . . to seek redress for harms suffered within the state by an out-of-state actor").

## V. CONCLUSION

For the above-stated reasons, Classmates' motion to dismiss should be denied. In the alternative, Plaintiff should be granted leave to amend. While Plaintiff has plead facts sufficient to state a claim, given leave to amend Plaintiff would allege additional relevant facts. Respectfully submitted,

Dated: June 7, 2021

By:    */s/ Michael F. Ram*
       Michael F. Ram

Michael F. Ram
MORGAN AND MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
415.358.6913
MRam@forthepeople.com