**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SERGIO BONILLA, on behalf of himself and all others similarly situated, | ) ) | |
| | ) | Case No. 1:21-cv-00051 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

---

|  |  |  |
|---|---|---|
| THERESA LOENDORF, on behalf of herself and all others similarly situated, | ) ) | |
| | ) | Case No. 1:21-cv-00610 |
| Plaintiff, | ) | |
| | ) | Hon. Judge Virginia M. Kendall |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| PEOPLECONNECT, INC., a Delaware Corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS
<u>MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

ARGUMENT .............................................................................................................1

I.  Plaintiffs Agreed To Arbitrate Their Claims. ....................................................1

    A.  A Valid Arbitration Agreement Exists Between Plaintiffs And
        PeopleConnect. .......................................................................................1

        1.  Bonilla Personally Consented To The Terms Of Service. ...........1

        2.  Plaintiffs' Counsel Agreed To Arbitrate On Their Behalf. .........2

    B.  An Arbitrator Must Decide If The TOS Are Unconscionable; They
        Are Not......................................................................................................4

II.  Plaintiffs' Claims Are Barred By Federal Law...................................................5

    A.  The Communications Decency Act Bars Plaintiffs' Claims....................5

    B.  The Copyright Act Preempts All But One Of Plaintiffs' Claims. ..........7

III.  Plaintiffs Have Not Adequately Pleaded Any Causes Of Action. ......................9

    A.  Plaintiffs Have Failed To Plead A Claim Under IRPA. .........................9

        1.  Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA...9

        2.  Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim. ..............10

        3.  Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions. ..................11

    B.  Plaintiffs' Remaining Claims All Fail. .................................................12

IV.  Plaintiffs' Claims Are Barred By The Constitution...........................................12

    A.  PeopleConnect's Alleged Conduct Is Protected By The First
        Amendment.............................................................................................12

    B.  Plaintiffs' Legal Theories Violate The Dormant Commerce Clause.....................14

V.  The Court Lacks Personal Jurisdiction Over Defendant....................................15

CONCLUSION.........................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*,
   751 F.3d 796 (7th Cir. 2014) ...............................................................15

*Avery v. State Farm Mut. Auto Ins. Co.*,
   216 Ill.2d 100 (2005) .....................................................................9, 10

*Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*,
   805 F.2d 663 (7th Cir. 1986) .................................................................7

*Blanton v. Womancare, Inc.*,
   38 Cal. 3d 396 (Cal. 1985).................................................................3, 4

*Bogie v. Rosenberg*,
   705 F.3d 603 (7th Cir. 2013) ...............................................................10

*Callahan v. Ancestry.com Inc.*,
   20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021)..................1, 5

*Callahan v. Ancestry.com Inc.*,
   20-cv-08437, 2021 WL 783524 (N.D. Cal. March 1, 2021) .....................6

*Callahan v. PeopleConnect, Inc.*,
   No. 20-cv-09203, 2021 WL 1979161 (N.D. Cal. May 18, 2021).............3

*Cassetica Software, Inc. v. Comput. Scis. Corp.*,
   No. 09 C 0003, 2009 WL 1703015 (N.D. Ill. June 18, 2009) ..................8

*Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*,
   149 F.3d 679 (7th Cir. 1998) ...............................................................12

*Curry v. Revolution Laboratories, LLC*,
   949 F.3d 385 (7th Cir. 2020) ...............................................................15

*Dent v. Renaissance Marketing Corp.*,
   No. 14 C 02999, 2015 WL 3484464 (N.D. Ill. June 2, 2015) ..............7, 8

*Dlugolecki v. PeopleConnect, Inc.*,
   Case No. 20-cv-03657 (C.D. Cal. Nov. 9, 2020), ECF No. 46.................2

*Dobrowolski v. Intelius, Inc.*,
   No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017)...............8

*Dobrowolski v. Intelius, Inc.*,
    No. 17-CV-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018) ...........................................11

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019) ...............................................................................7

*Est. of Graham v. Sotheby's Inc.*,
    860 F. Supp. 2d 1117 (C.D. Cal. 2012) ...................................................................14

*In re Facebook Biometric Info. Priv. Litig.*,
    326 F.R.D. 535 (N.D. Cal. 2018) ............................................................................9

*Farzana K. v. Ind. Dep't of Educ.*,
    473 F.3d 703 (7th Cir. 2007) .................................................................................2

*Fiala v. Bickford Senior Living Grp., LLC*,
    2015 IL App (2d) 141160 .......................................................................................3

*Gabiola v. Sarid*,
    No. 16-cv-2076, 2017 WL 4264000 (N.D. Ill. Sept. 26, 2017) ................................12

*Gionfriddo v. MLB*,
    94 Cal. App. 4th 400 (2001) ................................................................................12

*Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*,
    487 F. Supp. 3d 722 (N.D. Ill. 2020) .....................................................................4

*Gupta v. Morgan Stanley Smith Barney, LLC*,
    934 F.3d 705 (7th Cir. 2019) .................................................................................3

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989)............................................................................................14

*Henderson v. Source for Pub. Data*,
    No. 20-cv-294, 2021 WL 2003550 (E.D. Va. May 19, 2021) ...............................5, 6

*Hepp v. Facebook, Inc.*,
    465 F. Supp. 3d 491 (E.D. Pa. 2020) .....................................................................6

*Hui Ma v. Golden State Renaissance Ventures, LLC*,
    No. 3:21-cv-00856, 2021 WL 2190912 (N.D. Cal. May 31, 2021)............................4

*Illinois v. Hemi Group LLC*,
    622 F.3d 754 (7th Cir. 2010) ...............................................................................15

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
    No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ...........................2, 4

*J.A. through Allen v. Microsoft Corp.*,
   No. C20-0640, 2021 WL 1723454 (W.D. Wash. Apr. 2, 2021)...........................................4, 5

*In re Jackson*,
   972 F.3d 25 (2d Cir. 2020)...........................................................................................8

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
   617 F.3d 1146 (9th Cir. 2010) ....................................................................................8

*Kanbar v. O'Melveny & Myers*,
   849 F.Supp.2d 902 (N.D. Cal. 2011) ..........................................................................4

*Kincaid v. Gibson*,
   236 F.3d 342 (6th Cir. 2001) ....................................................................................13

*KNB Enters. v. Matthews*,
   78 Cal. App. 4th 362 (Cal. Ct. App. 2000) .................................................................8

*Kolebuck-Utz v. Whitepages Inc.*,
   No. C21-0053, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021)..................................5

*Landau v. CNA Fin. Corp.*,
   381 Ill. App. 3d 61 (2008) ........................................................................................10

*Loc. 703, Int'l Brotherhood of Teamsters v. Kennicott Bros. Co.*,
   771 F.2d 300 (7th Cir. 1985) ......................................................................................2

*Lukis v. Whitepages, Inc.*,
   454 F. Supp. 3d 746 (N.D. Ill. 2020) .....................................................................5, 15

*Lukis v. Whitepages Inc.*,
   No. 19 C 4871, 2020 WL 6287369 (N.D. Ill. Oct. 27, 2020) ..............................11, 12

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
   925 F.3d 1263 (D.C. Cir. 2019) ..................................................................................6

*Midwest Title Loans, Inc. v. Mills*,
   593 F.3d 660 (7th Cir. 2010) ....................................................................................14

*Monroy v. Shutterfly, Inc.*,
   No. 16 C 10984, 2017 WL 4099846 (N.D. Ill. Sept. 15, 2017).................................14

*Nieman v. VersusLaw, Inc.*,
   512 F. App'x 635 (7th Cir. 2013) .........................................................................11, 12

*Nitka v. ERJ Dining IV, LLC*,
   No. 18 cv 3279, 2018 WL 5884531 (N.D. Ill. Nov. 8, 2018)......................................1

iv

*Paramount Media Grp., Inc. v. Vill. of Bellwood*,
    308 F.R.D. 162 (N.D. Ill. 2015)...................................................................2

*People v. Austin*,
    2019 IL 123910...................................................................................13

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...........................................................6, 7

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ...................................................9

*Sarver v. Chartier*,
    813 F.3d 891 (9th Cir. 2016) ...............................................................13

*Shapo v. Tires 'N Tracks, Inc.*,
    336 Ill. App. 3d 387 (1st Dist. 2002) .....................................................3

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011)...........................................................................13

*Specht v. Google, Inc.*,
    660 F. Supp. 2d 858 (N.D. Ill. 2009) .....................................................9

*Stayart v. Yahoo! Inc.*,
    651 F. Supp. 2d 873 (E.D. Wis. 2009).....................................................7

*Thompson v. Getty Images (US), Inc.*,
    No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) ................11

*Tolliver v. Northrop Corp.*,
    786 F.2d 316 (7th Cir. 1986) .................................................................3

*Toney v. L'Oreal USA, Inc.*,
    406 F.3d 905 (7th Cir. 2005) .................................................................7

*uBID, Inc. v. GoDaddy Group, Inc.*,
    623 F.3d 421 (7th Cir. 2010) ...............................................................15

*United Airlines, Inc. v. Zaman*,
    152 F. Supp. 3d 1041 (N.D. Ill. 2015) .................................................15

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976)...........................................................................13

*Vance v. International Business Machines Corp.*,
    No. 20 C 577, 2020 WL 5530134 (N.D. Ill. Sept. 15, 2020)................14

*Vance v. Microsoft Corp.*,
 -- F. Supp. 3d. --, No. C20-1082, 2021 WL 963485 (W.D. Wash. Mar. 15,
 2021) ..................................................................................................................9

*Vrdolyak v. Avvo, Inc.*,
 206 F. Supp. 3d 1384 (N.D. Ill. 2016) ...........................................................12

*Vulcan Golf, LLC v. Google Inc.*,
 552 F. Supp. 2d 752 (N.D. Ill. 2008) .............................................................10

*Walden v. Fiore*,
 571 U.S. 227 (2014) .......................................................................................15

*In re Wyze Data Incident Litig.*,
 No. C20-0282, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) ......................5

*Zuver v. Airtouch Comm'ns, Inc.*,
 103 P.3d 753 (Wash. 2004) ..............................................................................5

**Statutes**

47 U.S.C. § 230 ......................................................................................................6, 7

740 ILCS 14/15 ........................................................................................................14

765 ILCS 1075/5 ......................................................................................................10

765 ILCS 1075/30 ....................................................................................................10

765 ILCS 1075/35 ....................................................................................................11

815 ILCS 505/1 ........................................................................................................12

**INTRODUCTION**

PeopleConnect showed in its Motion to Dismiss ("Motion") that the Consolidated Amended Complaint ("CC") fails from the start because Plaintiffs agreed to arbitrate their claims. Despite Plaintiffs best efforts, nothing can change that Bonilla expressly agreed to the Terms of Service ("TOS"), and the attorney-agents of both Plaintiffs agreed to the TOS on their behalf as their agents. *See* Dkt. 51, Response ("Resp.").

Beyond the arbitration agreement, however, the Complaint goes nowhere because, at base, right of publicity laws simply do not forbid the online presentation of works like yearbooks that are available at public libraries. So whether the Court finds that the Communications Decency Act ("CDA") applies—as another federal court did days ago in a virtually identical case, *Callahan v. Ancestry.com Inc.*, 20-cv-08437, 2021 WL 2433893 (N.D. Cal. June 15, 2021)—or that any of the numerous defects identified in the Motion foreclose Plaintiffs' claims, the proper result is plain. The Complaint should be dismissed, and dismissed with prejudice, as this is Plaintiffs' second failed attempt to plead viable claims.

**ARGUMENT**

**I.      Plaintiffs Agreed To Arbitrate Their Claims.**

**A.      A Valid Arbitration Agreement Exists Between Plaintiffs And PeopleConnect.**

**1.      Bonilla Personally Consented To The Terms Of Service.**

The Motion confirms that Bonilla agreed to the TOS. Mot. 3–4. Bonilla responds that he does not recall seeing the TOS and, if he saw them, that he did not receive reasonable notice of their content in 2007. Resp. 4–5. But Bonilla's recollection is irrelevant, *see Nitka v. ERJ Dining IV, LLC*, No. 18 cv 3279, 2018 WL 5884531, at *2 (N.D. Ill. Nov. 8, 2018), and the screenshots Bonilla presents of Classmates.com date-stamped 2004 (not 2007, when he agreed) omit the key

page for his notice argument (the registration page). As explained in the Motion (p. 3) and as confirmed in the Declaration filed with this reply (June 21, 2021 Tara McGuane Decl. ¶ 7), Bonilla had to complete the registration process to access what he did; as part of that registration process, he had to click "Submit" above a message notifying him that doing so would accept the hyperlinked TOS. Courts regularly enforce these sorts of clickwrap agreements. *See* Mot. 2–3. Another court has held that a nearly identical Classmates.com login page provides sufficient notice. Civil Minutes at 2, *Dlugolecki v. PeopleConnect, Inc.*, Case No. 20-cv-03657 (C.D. Cal. Nov. 9, 2020), ECF No. 46. A true and correct copy of the ruling is attached as Exhibit 1.

Apparently conceding he did agree, Bonilla tries to argue that his agreement "expired." Resp. 5. The claim is baseless. The only case Plaintiffs cite for this proposition, *Loc. 703, Int'l Brotherhood of Teamsters v. Kennicott Bros. Co.*, 771 F.2d 300, 302 (7th Cir. 1985), involved an agreement with an explicit expiration date. Here, there is no such expiration. Nor do Plaintiffs suggest, let alone cite authority to show, that such an expiration is required.

## 2. Plaintiffs' Counsel Agreed To Arbitrate On Their Behalf.

Plaintiffs do not deny that their counsel agreed to the TOS and accessed Classmates.com to obtain information and screenshots to include in the Complaint. Nor do Plaintiffs question that their attorneys can bind them, even to their detriment. *E.g. Paramount Media Grp., Inc. v. Vill. of Bellwood*, 308 F.R.D. 162, 167 n.3 (N.D. Ill. 2015); *Farzana K. v. Ind. Dep't of Educ.*, 473 F.3d 703, 706 (7th Cir. 2007). Plaintiffs argue, however, that their counsel did not bind them because their counsel was engaged in "pre-suit investigation." Resp. 5–6. The argument fails right away because Plaintiffs' counsel were not "investigat[ing]" claims—they were *creating* them. As in *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019), counsel's actions formed the *sole* basis of Plaintiffs'

claim. Plaintiffs' likenesses do not appear on Classmates.com *unless and until* a user enters a first and last name into the Classmates.com search engine and locates the targeted person from the list of potential matches. Mot. 2. Plaintiffs, of course, do not allege that anyone *other than* their attorney-agents entered their names into the search engines, causing their likenesses to appear.

Yet even if counsel were investigating Plaintiffs' claim, there is no conflict between the TOS and Rule 11. The TOS allow all users to opt out of arbitration, which neither Plaintiffs' counsel nor Plaintiffs did. *See Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 713–16 (7th Cir. 2019) (assent to changes in arbitration agreement through silence if there is opportunity to opt out). Plaintiffs are bound by counsel's failure to opt out. *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986). Plaintiffs seek to avoid this by arguing that the opt out option is illusory. The facts show otherwise. In the case of Mr. Osborn's alter ego account, PeopleConnect misunderstood his request and inadvertently deleted his account believing he was requesting to opt out of the website. Lynne Gross Decl. ¶¶ 5, 7. It is not PeopleConnect's normal practice to delete accounts of those who opt out; instead, a notation is made that the member does not agree to arbitrate. *Id.* ¶ 3. Upon realizing this error Mr. Osborn's account was reinstated. *Id.* ¶¶ 6, 7.

Plaintiffs' reliance on *Callahan v. PeopleConnect, Inc.*, No. 20-cv-09203, 2021 WL 1979161, N.D. Cal. May 18, 2021) is misplaced. *Callahan* relies heavily on a California case, *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396 (Cal. 1985), which does not apply Illinois law. Illinois courts applying Illinois law likely would reach a different result. *See Fiala v. Bickford Senior Living Grp., LLC*, 2015 IL App (2d) 141160, ¶¶ 36–39 (agent bound principal to arbitration agreement because "agent may enter into agreements necessary to carry out his or her duties on behalf of the principal"). The one Illinois case Plaintiffs cite, *Shapo v. Tires 'N Tracks, Inc.*, 336 Ill. App. 3d 387 (1st Dist. 2002), does not even involve waiving the right to arbitrate, and in fact

held that the attorney *did* have the requisite authority to make the settlement agreement at issue there. Resp. 5.  In all events, *Callahan* does not even get California law right. It ignores *Uber*, a more recent, better reasoned decision that aligns with California law. *See Hui Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-cv-00856, 2021 WL 2190912 (N.D. Cal. May 31, 2021).

Moreover, *Blanton* is easily distinguished. There, the plaintiff's attorney agreed to arbitrate *two days* before trial, long after the plaintiff had requested a jury trial. 38 Cal. 3d 396 (Cal. 1985). Here, Plaintiffs' counsel agreed to arbitrate *before* any jury trial right attached, meaning no such right existed for counsel to waive. Blanton also had instructed her attorney not to agree to arbitrate. *Id*. at 400. Here, Plaintiffs do not claim they gave their counsel any such instruction. *See Kanbar v. O'Melveny & Myers*, 849 F.Supp.2d 902, 912–13 (N.D. Cal. 2011) (decision by *Callahan* judge holding that *Blanton* does not apply unless plaintiff instructed attorney not to agree). Blanton also repudiated her counsel's action and fired him. 38 Cal. 3d at 400. Plaintiffs, by contrast, ratified their counsel's agreement by accepting the benefit of accesses to the Classmates.com website, which allowed them to prepare a more detailed (though still inadequate) Complaint. *See Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 487 F. Supp. 3d 722, 741 (N.D. Ill. 2020). Finally, the *Blanton* arbitration agreement required the arbitrator to be a member of the defense bar and significantly limited damages. 38 Cal. 3d at 400. That is not the case here.

### B.    An Arbitrator Must Decide If The TOS Are Unconscionable; They Are Not.

To avoid their agreement to arbitrate, Plaintiffs argue that the agreement is unconscionable. Resp. 6–7. Because the TOS incorporates the AAA consumer rules, however, disputes over enforceability are delegated to the arbitrator, which means "any question of unconscionability[] must be determined by the arbitrator." *J.A. through Allen v. Microsoft Corp.*, No. C20-0640, 2021 WL 1723454, at *8 (W.D. Wash. Apr. 2, 2021), *report and recommendation adopted,* No. C20-

0640, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *In re Wyze Data Incident Litig.,* No. C20-0282, 2020 WL 6202724, at *2–3 (W.D. Wash. Oct. 22, 2020).

Even if unconscionability were an issue for the Court, the TOS are neither procedurally nor substantively unconscionable. *First,* the TOS are not procedurally unconscionable because users can opt out of arbitration. *See Zuver v. Airtouch Comm'ns, Inc.*, 103 P.3d 753, 760–61 (Wash. 2004). *Second,* contrary to Plaintiffs' mischaracterizations (Resp. 7), the TOS (1) do not require a claimant to "attend proceedings in Seattle," as they allow for arbitration via written submission or telephone; (2) require PeopleConnect to pay as much of the costs as necessary to keep the arbitration from being "cost-prohibitive"; and (3) limit the fee shifting provision to "reasonable" attorney's fees. Dkt. 45-1, May 10, 2021 Decl. of Tara McGuane, Ex. 1, § 13(B).

## II. Plaintiffs' Claims Are Barred By Federal Law.

### A. The Communications Decency Act Bars Plaintiffs' Claims.

Six days ago, the Northern District of California in the *Ancestry.com* litigation, for the second time, held that Section 230 of the CDA bars claims against a yearbook website that are nearly identical to the ones Plaintiffs have pleaded. *Ancestry.com*, 2021 WL 2433893, at *5–7. Plaintiffs, on the other hand, chiefly rely on *Lukis v. Whitepages, Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020) and *Kolebuck-Utz v. Whitepages Inc.*, No. C21-0053, 2021 WL 1575219 (W.D. Wash. Apr. 22, 2021), which do not involve yearbook websites—they involve background report websites. Plaintiffs thus have supplied the Court no reason to split from *Ancestry.com* on this point.

For example, Plaintiffs argue that Section 230 does not apply because the content is not from "another information content provider." Resp. 8–9 (citation omitted). Plaintiffs are wrong because, as the court in *Ancestry.com* recently explained, their claims are based on the publication of pre-existing yearbook content. 2021 WL 2433893, at *5–7. No matter how those yearbooks were acquired, PeopleConnect did not create them. *Id.* at *5; *see Henderson v. Source for Pub.*

*Data*, No. 20-cv-294, 2021 WL 2003550, at *6 (E.D. Va. May 19, 2021). To avoid this, Plaintiffs argue that their claims take issue with language created by PeopleConnect, not yearbook content. Resp. 9–10. Yet Plaintiffs' core allegation is that it was PeopleConnect's use of images and information taken from yearbooks that harmed them. CC ¶¶ 88, 94, 98–99, 102–04. They do not mention PeopleConnect's language. The cases Plaintiffs cite thus are inapposite. Indeed, courts routinely apply the CDA in similar circumstances. *Callahan v. Ancestry.com,* 20-cv-08437, 2021 WL 783524, at *6 (N.D. Cal. March 1, 2021); *see Marshall's Locksmith Serv. Inc. v. Google, LLC,* 925 F.3d 1263, 1269–70 (D.C. Cir. 2019).

Plaintiffs also suggest that PeopleConnect cannot invoke Section 230 without identifying those who provided the complained of content. Resp. 8. But they provide no support for the assertion and there is none. *See Callahan v. Ancestry.com,* 20-cv-08437, 2021 WL 783524, at *6 & n.13 (N.D. Cal. March 1, 2021). Regardless, Plaintiffs expressly allege that "Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks," CC ¶ 5, and describe the yearbooks as "donated" by others. CC ¶ 72.

Finally, Plaintiffs wrongly assert that the CDA's intellectual property exemption applies. Resp. 10–11. The exemption applies only to *federal* intellectual property claims. *E.g.*, *Hepp v. Facebook, Inc.*, 465 F. Supp. 3d 491, 501 (E.D. Pa. 2020). Plaintiffs cite several district court decisions that are to the contrary, but acknowledge that courts are split on the issue. Resp. 10–11. Crucially, the only appeals court to reach the question held that the CDA exempts only federal intellectual property claims. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007). That was correct. The exception states the CDA shall not "be construed to limit or expand any law pertaining to intellectual property" without defining "intellectual property." 47 U.S.C. § 230(e)(2). While the scope of federal intellectual property law is established, state law varies, both

as to what constitutes "intellectual property" and how it is protected. Thus, the same website can be subjected to wildly different regimes depending on where users read content. Congress sought to "insulat[e] the development of the Internet from the various state-law regimes." *Perfect 10, Inc.*, 488 F.3d at 1118–19; *see* 47 U.S.C. § 230(a)(4), (b)(1)-(2). So when Congress wanted an exception to cover state laws, it said so. *See id.* 47 U.S.C. § 230(e)(3), (e)(4), (e)(5)(B)-(C). It did not do so here.

Regardless, Plaintiffs' claims do not fit the exception. Plaintiffs only raise the exception for their right of publicity claim. Resp. 10. But right of publicity is, at best, a questionable species of intellectual property. *See, e.g.*, *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 888 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010). To fulfill Congress's deregulatory purpose, the phrase "intellectual property" is best read to pertain only "to an established intellectual property right …, like those inherent in a patent, copyright, or trademark." *Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1053 (9th Cir. 2019).

## B.    The Copyright Act Preempts All But One Of Plaintiffs' Claims.

PeopleConnect also has shown that the Copyright Act preempts Plaintiffs' claims. Mot. 9–12. Plaintiffs respond by reading *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905 (7th Cir. 2005) to hold there is no preemption of right of publicity claims. Resp. 11–12. That is wrong. *Toney* did not establish a *per se* rule, nor did it overturn *Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n*, 805 F.2d 663 (7th Cir. 1986), as Plaintiffs' claim. *See* Resp. 13. What mattered in *Toney* was not the cause of action, but the underlying legal theory. That is why the court emphasized "[t]he basis of [the plaintiff's] right of publicity claim concerns the message [that] the plaintiff endorses, or appears to endorse the product." 406 F.3d at 910.[1] This makes sense. If a defendant

---

[1] Plaintiffs cite *Dent v. Renaissance Marketing Corp.*, but *Dent* explains "right-of-publicity claims are preempted by the Copyright Act when the allegedly unauthorized use of a plaintiff's identity is

uses a photo to promote a product unrelated to the plaintiff, the claim is that he profited from the person's likeness. But if a defendant uses a photo to promote the sale of that same photo, the claim is that the defendant profited from a copyrightable photo. Plaintiffs' claims are preempted because—except arguably intrusion upon seclusion—they are premised on PeopleConnect's display and reproduction of copyrightable content from yearbooks. *See In re Jackson*, 972 F.3d 25, 48–50 (2d Cir. 2020) (preemption applies where "advantage sought by the defendant flows from the reproduction … of the work itself (as opposed to the persona of the plaintiff)").[2]

Plaintiffs argue that "because Classmates does not own or license copyrights in the student photographs," there is no preemption. Resp. 13–14. There is no such rule; a non-copyright holder still is subject to Copyright Act preemption. *Cassetica Software, Inc. v. Comput. Scis. Corp.*, No. 09 C 0003, 2009 WL 1703015, at *5 (N.D. Ill. June 18, 2009). Not even the one case Plaintiffs cite—a state intermediate appellate court decision—holds otherwise. *See KNB Enters.v. Matthews*, 78 Cal. App. 4th 362, 362 (Cal. Ct. App. 2000) (observing only that whether defendant owned copyright may bear upon whether rights asserted within "subject matter of copyright"); *Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) (rejecting *KNB Enterprise* and holding that where "essence of [a] claim" is that defendant "reproduced and distributed" intellectual property "without authorization," right of publicity claim preempted).

---

coterminous with performance, reproduction, or distribution of a copyrighted work," but "there is a theory of liability under IRPA that is not preempted … when the alleged unauthorized use of the plaintiff's identity extends beyond the copyrighted work." No. 14 C 02999, 2015 WL 3484464, at *4 (N.D. Ill. June 1, 2015). None of the cases Plaintiffs cite are to the contrary. Resp. 12–13.

[2] Plaintiffs also cite *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2017 WL 3720170 (N.D. Ill. Aug. 29, 2017), to argue that Copyright Act preemption never forecloses IRPA claims. Resp. 12. Dobrowolski, however, was discussing the elements of IRPA claims, not preemption.

**III.    Plaintiffs Have Not Adequately Pleaded Any Causes Of Action.**

    **A.    Plaintiffs Have Failed To Plead A Claim Under IRPA.**

        **1.    Plaintiffs Fail To Plead Conduct Within The Territorial Scope Of IRPA.**

Plaintiffs acknowledge that Illinois statutes only regulate conduct occurring "primarily and substantially" in Illinois, unless the statute states otherwise. Resp. 14 (citation omitted). They argue that IRPA states otherwise, however, because it protects Illinois and non-Illinois residents alike. *Id*. That is a non-sequitur. For IRPA claims, the regulated conduct is the publication of the plaintiff's likeness, but IRPA does not purport to regulate *conduct* that happens *outside* Illinois.

Plaintiffs maintain that under the "primarily and substantially" test, "the facts point squarely to Illinois." *Id*. Yet they do not allege the relevant *conduct* (display of their likenesses on Classmates.com) took place in Illinois.[3] What they allege is that their likenesses were viewed by their New York-based attorneys, which occurred wherever those attorneys were when they searched for Plaintiffs' names on Classmates.com and generated the likeness (presumably in New York). That is an extraterritorial application of the statute. Plaintiffs' remaining arguments do not cure that defect. It makes no difference for purposes of extraterritoriality that Plaintiffs are Illinois citizens, the alleged harm was felt in Illinois, the alleged failure to obtain consent occurred in Illinois, Classmates.com is accessible in Illinois, or Classmates.com has obtained Illinois yearbooks. *See* Resp. 14–16. What matters is that "the circumstances relating to the transaction occur primarily and substantially" in Illinois. *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d

---

[3] All the cases Plaintiffs cite involve Illinois conduct. *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1090 (N.D. Ill. 2017) (photos uploaded in Illinois); *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 547 (N.D. Cal. 2018) ("use of Facebook mainly in Illinois"); *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D. Ill. 2009) (infringement "presumably occurring in Illinois"); *Vance v. Microsoft Corp.*, -- F. Supp. 3d. --, No. C20-1082, 2021 WL 963485, at *4 (W.D. Wash. Mar. 15, 2021) (individuals "who, while in Illinois, uploaded photos that were taken in Illinois.").

100, 186 (2005). Plaintiffs challenge the publication of their likenesses. That means what matters is where that publication occurred. Plaintiffs do not allege it happened in Illinois.

Finally, Plaintiffs suggest it is too early to consider extraterritoriality. Resp. 14. But Plaintiffs ignore the cases PeopleConnect cited where courts dismissed complaints because they fall outside the territorial scope of an Illinois statute. *E.g. Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61 (2008); *Vulcan Golf, LLC v. Google Inc.*, 552 F. Supp. 2d 752, 775 (N.D. Ill. 2008). Given that the only concrete example of Plaintiffs' likenesses being published identified in the Complaint was extraterritorial (to their New York attorneys), that is the proper result here as well.

### 2. Plaintiffs Fail To Plead A *Prima Facie* IRPA Claim.

PeopleConnect demonstrated that Plaintiffs have not stated a claim under IRPA because they have not alleged their identities were disseminated. Mot. 14–15. Plaintiffs now argue they need not plead that a third party ever viewed their photos. Resp. 19–20. But that cannot be right because Plaintiffs' likenesses are *never* displayed to anyone unless a user runs a search for them on Classmates.com. Yet, IRPA expressly requires the "public use or holding out of [their] identit[ies]." 765 ILCS 1075/5, 1075/30(a).

PeopleConnect also demonstrated that Plaintiffs failed to plead an actionable IRPA claim because they did not allege their identities were used for a "commercial purpose." Mot. 15–19. Plaintiffs respond by arguing that PeopleConnect used Plaintiffs photos to "advertise" two "separate products"—yearbook reprints and subscriptions to Classmates.com. Resp. 16–18. Initially, Plaintiffs fail to show their likenesses were used to "advertise" anything. As the Complaint shows, Plaintiffs' likenesses were never used in anything that could be described as advertising. *See* Mot. 18; *see Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (if "an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls").

In all events, the argument that these supposed advertisements were for "separate" products is baseless. *See Dobrowolski v. Intelius, Inc.*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018); *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 636 –37 (7th Cir. 2013). As to the yearbook reprints, the argument makes no sense. The reprints are *copies* of the original yearbooks so PeopleConnect is at most "display[ing] a preview of the exact thing it seeks to sell," which is not a commercial purpose. *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013); Mot. 17. As to subscriptions to Classmates.com, the argument simply is inaccurate. Although Plaintiffs argue that PeopleConnect "cannot" be selling access to photos available on Classmates.com for free, Resp. 18, the Complaint alleges that Classmates.com provides only "*limited* access to low–resolution … photographs for free on its website," with full access available only upon registering for an account. CC ¶ 2 (emphasis added).

### 3. Plaintiffs' Claims Fall Within IRPA's Statutory Exemptions.

The Motion established that IRPA's statutory exemptions—specifically, Exemptions 1, 2, and 4—bar Plaintiffs IRPA claims. Mot. 19–21. Plaintiffs dispute that Exemption 1 applies by arguing that the so-called "advertisements" on Classmates.com are not "single and original" works. There is no question, however, that yearbooks are single and original works and, though Plaintiffs ignore it, any "promotional materials, advertisements, or commercial announcements" thereof *also* are exempt. 765 ILCS 1075/35(b)(4). Plaintiffs seek to avoid the plain language of the statute by citing *Lukis*, but *Lukis* involved background reports, which the court (erroneously) held compiled information into an original form. *Lukis v. Whitepages Inc.*, No. 19 C 4871, 2020 WL 6287369, at *1 (N.D. Ill. Oct. 27, 2020). As for Exemption 2 for news and public affairs, Plaintiffs argue with no citation to authority that the photos are old, and thus not news, and that Plaintiffs are not public figures so the depictions cannot relate to public affairs. Resp. 21–22. As PeopleConnect already has shown, these predictable arguments are meritless. Mot. 21.

**B.      Plaintiffs' Remaining Claims All Fail.**

PeopleConnect showed that Plaintiffs three remaining claims—violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, intrusion upon seclusion, and unjust enrichment—all contain fundamental defects that foreclose them as a matter of law. Mot. 21–24. Plaintiffs' passing arguments do not change this.

## IV.      Plaintiffs' Claims Are Barred By The Constitution.

**A.      PeopleConnect's Alleged Conduct Is Protected By The First Amendment.**

It is clear the complained of activity is protected First Amendment speech. Mot. 25–28. Plaintiffs thus seek to show it is commercial speech by claiming that PeopleConnect uses their likenesses "in messages selling subscriptions to Classmates.com." Resp. 25–26. The screenshots in the Complaint bely the assertion. *See* Mot. 14–19, 26–27. Thus, Plaintiffs' citation to *Gabiola v. Sarid*, is inapposite. No. 16-cv-2076, 2017 WL 4264000, at *4–5 (N.D. Ill. Sept. 26, 2017).[4]

Yet even if Plaintiffs' likenesses do appear in "advertisements," those advertisements are entitled to full constitutional protection. Republishing information in the public domain, as PeopleConnect is alleged to have done, is non-commercial speech. Mot. 27 (citing *Nieman,* 512 F. App'x at 638 and *Vrdolyak v. Avvo, Inc.,* 206 F. Supp. 3d 1384, 1386–88 (N.D. Ill. 2016)). So too is advertising that promotes constitutionally protected activity—here, the publication of yearbooks. *Id.* (citing *Gionfriddo v. MLB,* 94 Cal. App. 4th 400, 414 (2001) and *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685–86 (7th Cir. 1998)). While Plaintiffs attempt to distinguish some of these cases on their facts, they do not actually question those cases' First Amendment principles or their application here.

---

[4] Plaintiffs also cite *Lukis v. Whitepages*, but the court there rejected the defendants' First Amendment defense not because it was without merit, but because it found the defense undeveloped and thus forfeited. 2020 WL 6287369, at *9.

Citing the Illinois Supreme Court's decision in *People v. Austin*, 2019 IL 123910, *cert. denied sub nom. Austin v. Illinois*, 141 S. Ct. 233 (2020). Plaintiffs suggest "intermediate scrutiny" rather than strict scrutiny applies to claims seeking to enforce privacy statutes. Resp. 28–29. That is not the law. On point is *Sarver v. Chartier*, where the appellate court applied strict scrutiny in rejecting a right of publicity claim. 813 F.3d 891, 903–04 (9th Cir. 2016). In doing so, the court rejected the central premise to Plaintiffs' argument before this Court—that right of publicity statutes are content neutral. *Id.* (noting that right of publicity laws "clearly restrict[] speech based upon its content"). Indeed, PeopleConnect's dissemination of yearbook records is quintessential First Amendment speech. Yearbooks serve both informative and cultural purposes protected by the First Amendment, *see Kincaid v. Gibson*, 236 F.3d 342, 351–52 (6th Cir. 2001), and allow for the "dissemination of information" among the general public and school communities, which likewise is core protected speech, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). Plaintiffs' attempt to evade those settled doctrinal principles thus fall flat.

In all events, even if presenting yearbooks and yearbook excerpts on Classmates.com were commercial speech, Plaintiffs' claims cannot survive intermediate scrutiny. Mot. 28. Plaintiffs assert that Illinois "has a substantial government interest in protecting the privacy and intellectual property rights of its citizens," Resp. 30, but ignore that no interest allows states to "suppress the dissemination of concededly truthful information about entirely lawful activity." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 773 (1976). What is more, Plaintiffs do not even address PeopleConnect's argument that there is no "reasonable fit" between the aims of IRPA—preventing unauthorized commercial endorsements—and preventing PeopleConnect from publishing yearbooks and yearbook excerpts. Mot. 28.

**B.** **Plaintiffs' Legal Theories Violate The Dormant Commerce Clause.**

Plaintiffs do not dispute that their view of IRPA would require PeopleConnect either to prevent all users from using Classmates.com while they are physically located in Illinois or to treat IRPA as a nationwide directive. Mot. 30. Instead, they argue it is premature for this Court to address the Dormant Commerce Clause. Resp. 31. Plaintiffs are wrong. Courts can and do resolve Dormant Commerce Clause challenges on motions to dismiss. *See, e.g., Est. of Graham v. Sotheby's Inc.*, 860 F. Supp. 2d 1117, 1119, 1122 (C.D. Cal. 2012). The cases Plaintiffs cite in response do not show otherwise. In *Vance v. International Business Machines Corp.*, No. 20 C 577, 2020 WL 5530134, at *4 (N.D. Ill. Sept. 15, 2020) and *Monroy v. Shutterfly, Inc.*, No. 16 C 10984, 2017 WL 4099846, at *7 (N.D. Ill. Sept. 15, 2017), the court denied motions to dismiss because the complaints plausibly alleged that violations of the statute at issue—the Illinois Biometric Information Privacy Act ("BIPA"), which unlike IRPA's narrow regulation of the publication of an individual's likeness, regulates a sweeping set of conduct, including the acquisition, maintenance, dissemination, and sale of biometric information, 740 ILCS 14/15(a)-(d)—occurred in Illinois. That is not true here. The only purportedly wrongful conduct that Plaintiffs allege, which again is the actual publication of their likenesses, took place on the computer screens of their New York attorneys.

Plaintiffs next argue that IRPA *was* "intended to have extraterritorial application." Resp. 14. If that is accurate, however, IRPA *per se* violates the Dormant Commerce Clause. *E.g. Healy v. Beer Inst.,* 491 U.S. 324, 336–37 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."); *Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 665 (7th Cir. 2010) ("[A]nother class of nondiscriminatory local regulations is invalidated without a balancing of local benefit against out-of-state burden, and that is where states actually attempt to regulate activities in other states."). So

Plaintiffs' claims either fail because the only alleged conduct occurred outside of the territorial scope of IRPA *or* IRPA violates the Dormant Commerce Clause as applied. Mot. 13, 29–30.

## V. The Court Lacks Personal Jurisdiction Over Defendant.

Plaintiffs' personal jurisdiction argument focuses on the alleged harm to Illinois-based Plaintiffs. Resp. 33–35. That is the wrong inquiry. *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014). Instead, Plaintiffs must demonstrate "suit-related contacts" to Illinois. *United Airlines, Inc. v. Zaman*, 152 F. Supp. 3d 1041, 1049 (N.D. Ill. 2015). Plaintiff point to no such contacts, *i.e.*, they do not allege that PeopleConnect went to Illinois to obtain their yearbooks (indeed, Bonilla went to school in Nebraska), just that PeopleConnect "reach[ed] in to the state to copy yearbooks from Illinois schools." Resp. 33.

Plaintiffs cite *Curry v. Revolution Laboratories, LLC*, but the defendant there "admittedly sold" the product at issue to hundreds of Illinois residents—*i.e.*, the defendant had suit-related contacts with Illinois.[5] 949 F.3d 385, 399 (7th Cir. 2020). Plaintiffs also cite *Lukis*, but the court there held Whitepages.com obtained plaintiff's information from "databases operated by state and local governments in Illinois." 454 F. Supp. 3d at 758. That is not true here. Also misplaced is Plaintiffs' reliance on *uBID, Inc. v. GoDaddy Group, Inc.*, where GoDaddy's contacts with the forum state included sales of at least two Illinois-registered domain names. 623 F.3d 421, 425 (7th Cir. 2010). *Illinois v. Hemi Group LLC* is similarly distinguishable—the defendant sold and shipped cigarettes to Illinois residents. 622 F.3d 754, 759 (7th Cir. 2010). Here, of course, all Plaintiffs assert is that they are Illinois residents. CC ¶¶ 24, 45. That is not enough. *Walden v. Fiore*, 571 U.S. 227, 285 (2014).

---

[5] In *Curry*, the Seventh Circuit explained that courts should take "[s]ignificant caution … when assessing a defendant's online contacts with a forum to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state." 949 F.3d at 400 (internal quotation marks and citation omitted).

## <u>CONCLUSION</u>

For the foregoing reasons and those set out in the Motion, the Complaint should be dismissed with prejudice, and Plaintiff compelled to adjudicate their claims in arbitration or, in the alternative, the Complaint should be dismissed.

Dated: June 21, 2021

Respectfully Submitted,

PEOPLECONNECT, INC.

By:   */s/ Wade A. Thomson*

Wade A. Thomson, #6282174
Debbie L. Berman, #6205154
Clifford W. Berlow, #6292383
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: 312 222-9350
Facsimile: 312 527-0484
wthomson@jenner.com
dberman@jenner.com
cberlow@jenner.com

Ian Heath Gershengorn (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
Telephone: 202 639-6000
Facsimile: 202 639-6066
igershengorn@jenner.com

*Attorneys for Defendant PeopleConnect, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Wade A. Thomson, certify that on June 21, 2021, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will then send a Notice of Electronic Filing to all counsel of record.

/s/ *Wade A. Thomson*
Wade A. Thomson