IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA LOENDORF,[1] individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 21 C 51 |
| v. | Judge Virginia M. Kendall |
| PEOPLECONNECT, INC., a Delaware corporation, | Magistrate Judge Beth W. Jantz |
| Defendant. | |

### MEMORANDUM OPINION & ORDER

Plaintiff Theresa Loendorf sued Defendant PeopleConnect, Inc., the owner and operator of Classmates.com, in a putative class action, alleging that the company violated Illinois state laws, including the Illinois Right of Publicity Act, 765 ILCS 1075/1, *et seq.* Before the Court is Plaintiff's attorneys Christopher Reilly and Julian Diamond's motion to quash subpoenas that Defendant issued to them, and Plaintiff's motion for a protective order.[2] [Dkt. 82, Mot. to Quash & for Protective Order; dkt. 83, Mem. in Supp.] For the reasons explained below, the motion to quash is granted in part as to the deposition subpoenas that Defendant

---

[1] Loendorf originally filed a complaint that was docketed in case number 21 C 610, but that case was consolidated with this case, raising similar claims against PeopleConnect, Inc., filed by another plaintiff, Sergio Bonilla. [Dkts. 15 & 16, 3/12/21 Orders Granting Mot. to Consolidate.] All case filings have since been made in this case number, 21 C 51.

[2] For ease of reference, the Court will refer to these motions, which were filed as one document, collectively as "Plaintiff's motion to quash."

1

previously served on attorneys Christopher Reilly and Julian Diamond, but denied in part as to the three narrowed written deposition questions that Defendant continues to press. Defendant shall be allowed to depose Plaintiff's law firm, Bursor & Fisher, P.A., by written questions as identified in this Memorandum Opinion & Order. Unless directed otherwise by the District Judge, Defendant has 10 days to issue the identified deposition questions, and Plaintiff's law firm has 14 days thereafter to respond.

## RELEVANT BACKGROUND

According to Plaintiff, Defendant operates Classmates.com, which extracts the personal information in school yearbooks, including names of former students, photographs, schools attended, and other biographical information. [Dkt. 37, Consol. Class Action Compl. ¶ 63.] Plaintiff alleges that Defendant then uses that information to advertise and sell its products and services, including reprinted yearbooks and free and paid subscription memberships to its website. [*Id.* ¶¶ 64, 70.] Plaintiff is an Illinois resident who has never been a subscriber to Classmates.com but whose photograph and name allegedly have been used to advertise Defendant's products and services. [*Id.* ¶¶ 45-49.]

On February 2, 2021, Plaintiff filed suit and included several screenshots of Classmates.com in her complaint. *Loendorf v. PeopleConnect, Inc.*, No. 21 C 610, Dkt. 1, Compl. On March 12, 2021, Plaintiff's matter was consolidated with the instant matter. [Dkts. 15, 16.] On April 5, 2021, Defendant filed a motion to dismiss both complaints in the case. [Dkt. 26, First Mot. to Dismiss.] On April 20,

2

2021, however, a consolidated class action amended complaint was filed, which again included several website screenshots. [Dkt. 37.]

Defendant moved to dismiss the consolidated complaint, arguing, as relevant here, that Plaintiff had agreed to arbitrate her claims. [Dkt. 44, Second Mot. to Dismiss; dkt. 45, Mem. in Supp. at 13-14, 16-17.][3] Defendant argued that Plaintiff's attorneys, acting as her agents, had accepted Classmates.com's Terms of Service ("TOS")—including an arbitration provision—when visiting the website to obtain the screenshots in order to bolster Plaintiff's allegations. [Dkt. 45 at 16-17.] Instead of Plaintiff accessing Classmates.com herself, Plaintiff had counsel "affirmatively test" the website and thus had authorized them to agree to the TOS on her behalf. [*Id.*] Plaintiff responded that her attorneys could not bind her to the TOS without her express consent or ratification, which she did not give. [Dkt. 51, Pl.'s Resp. to Mot. to Dismiss at 13, 15-16.]

On March 29, 2022, District Judge Kendall denied without prejudice the motion to dismiss as to the arbitration argument regarding Plaintiff. [Dkt. 74, 3/29/22 Order on Mot. to Dismiss.] Although the parties agreed that Plaintiff's attorneys had agreed to the TOS, they disagreed as to whether that was enough to bind Plaintiff. [*Id.* at 4.] Judge Kendall found that there was "a preliminary issue of fact about [Plaintiff's] knowledge and direction of counsels' use of the Classmates.com site and agreement to the TOS." [*Id.*] Accordingly, Judge Kendall

---

[3] All page numbers given in pin citations refer to the ECF page number located in blue at the top of the page.

3

authorized limited discovery "relating to [Plaintiff's] knowledge, direction, and/or authorization of counsels' investigation on the Classmates.com website, including agreement to the Classmates.com TOS, as well as discovery topics closely related thereto," to be completed by May 1, 2022.[4] [*Id.*]

To kick off the limited discovery, Defendant served Plaintiff with written discovery requests and a deposition notice on April 4, 2022, and then served subpoenas to testify and notices to produce documents to two of her attorneys, Christopher Reilly and Julian Diamond, on April 6. [Dkts. 83-2-83-8, Exs. A-G to Pl.'s Mot. to Quash.] Defendant requested documents from the attorneys reflecting (1) each instance in which they accessed the website, including all screenshots taken, (2) creation of any Classmates account, including any communication confirming registration, (3) any interactions they had with the website, (4) their agreement to the TOS, and (5) the scope of their authority to act on Plaintiff's behalf. [Dkts. 83-6, 83-8.] Defendant agreed to hold the discovery requests to the attorneys in abeyance while discovery from Plaintiff was obtained. [Dkt. 83-1, Fraietta Decl. ¶ 5.]

On April 29, Plaintiff moved to quash the subpoenas and for a protective order to enjoin Defendant from taking the attorneys' depositions and asked the Court to award her fees under Federal Rule of Civil Procedure 37. [Dkts. 82-83.] At a hearing on May 5, District Judge Kendall heard preliminary argument on the

---

[4] Judge Kendall has since ordered that discovery be held in abeyance until the resolution of this motion. [Dkt. 89, 5/12/22 Order.]

4

motion and ordered the parties to reevaluate once Plaintiff's deposition was completed. [Dkt. 87, 5/5/22 Hearing Tr.]

In response to interrogatories and at her deposition, Plaintiff denied any knowledge of her attorneys' use of Classmates.com, denied providing them permission to agree to the TOS, and stated that she would not have provided permission if asked. [*See, e.g.,* dkt. 83-9, Pl.'s Ans. to First Set of Interr. at 3-6; dkt. 95-4, Pl.'s Dep. Tr. at 6-10.]

At a hearing on May 12, District Judge Kendall again heard argument before referring the motion to the Magistrate Judge for a ruling, and the matter was referred to this Court. [Dkt. 94, 5/12/22 Hearing Tr.; dkt. 89, 5/12/22 Order; dkts. 92-93, Referral Orders.]

On May 26, Defendant responded to the motion to quash and significantly limited the scope of its requests. [Dkt. 95, Def.'s Resp. to Mot. to Quash.] Namely, Defendant states that it now seeks only a written deposition of Plaintiff's law firm pursuant to Federal Rules of Civil Procedure 30(b)(6) and 31 limited to the following information: "(1) the names and email addresses of the agents who accessed Classmates.com; (2) when those agents accessed Classmates.com; and (3) what information those agents took during each of those occasions, whether it be screenshots or otherwise, that was used in a public filing." [*Id.* at 6.]

On June 9, Plaintiff filed her reply, asserting that Defendant's narrowed discovery requests were still improper. [Dkt. 98, Pl.'s Reply.] The matter is now fully briefed and ready for decision.

5

## DISCUSSION

### I. Legal Standards

Generally, pursuant to Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Additionally, the Court may, for good cause, issue a protective order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Further, pursuant to Federal Rule of Civil Procedure 45(d)(3), the Court must quash or modify a subpoena that, among other things, requires disclosure of privileged or other protected matter or subjects a person to an undue burden.

Plaintiff asserts that depositions of opposing counsel are disfavored and that this Court should apply the test laid out in *Shelton v. American Motors Corporation*, 805 F.2d 1323, 1327 (8th Cir. 1986), because Defendant is seeking discovery from Plaintiff's current counsel. The *Shelton* test provides that a deposition of opposing counsel should be permitted only when (1) "no other means exist to obtain the information than to depose opposing counsel," (2) "the information sought is relevant and nonprivileged," and (3) "the information is crucial to the preparation of the case." *Id.* [Dkt. 83 at 10-11; dkt. 98 at 6-8.]

On the other side, Defendant relies on the unpublished decision in *National Labor Relations Board v. Modern Drop Forge Company*, 108 F.3d 1379, 1997 WL 120572, at *3-4 (7th Cir. 1997), to argue that the Seventh Circuit has not adopted the *Shelton* test and has endorsed instead an approach of allowing counsel's

6

deposition to proceed with privileges claimed only as to specific questions. [Dkt. 95 at 12-13.] Thus, Defendant maintains that only the normal constraints of Federal Rule of Civil Procedure 26(b)(1) govern whether it can depose Plaintiff's attorneys. [*Id.* at 12.]

Both parties helpfully cite numerous cases to support their respective positions. [*See* dkt. 83 at 11; dkt. 95 at 12-13 & n. 1; dkt. 98 at 6-8.] Courts in this Circuit do often apply *Shelton*—or at least recognize its useful framework—when a deposition of current, opposing counsel is at issue. *See, e.g., Lincoln Nat'l Life Ins. v. TCF Nat'l Bank*, No. 10 C 6142, 2011 WL 13119407, at *1-2 (N.D. Ill. Dec. 12, 2011) (Kendall, J.) ("Though the Seventh Circuit has not ruled definitively on the factors to consider when a party wants to depose opposing counsel, a number of courts in this District have applied the three-part test laid out in *Shelton*."); *M & R Amusements Corp. v. Blair*, 142 F.R.D. 304, 305-06 (N.D. Ill. 1992); *Harriston v. Chi. Tribune Co.*, 134 F.R.D. 232, 233 (N.D. Ill. 1990); *U.S. Bank Nat'l Assoc. v. Londrigan, Potter & Randle, P.C.*, No. 15-3195, 2018 WL 3097086, at *2 (C.D. Ill. Apr. 9, 2018) (explaining that "the Seventh Circuit has not weighed in on this issue. . . [but n]umerous District Courts within the Seventh Circuit have discussed *Shelton* and its application with mixed results," and characterizing the Central District's application of *Shelton* as "flexible").

All but one case to which Defendant cites to argue against applying the *Shelton* test involve attorneys who are *not* currently opposing counsel. *See PsyBio Therapeutics, Inc. v. Corbin*, 20 C 3340, 2021 WL 4459527, at *4 (N.D. Ill. Sept. 29,

7

2021) (Kendall, J.) (status as attorney not involved in underlying litigation alone is insufficient to quash subpoena); *Armada (Singapore) Pte Ltd v. Amcol Int'l Corp.*, 160 F. Supp. 3d 1069, 1070 (N.D. Ill. 2016) (former general counsel of defendant); *Pabst Licensing GmbH & Co. KG v. Apple, Inc.*, No. 17 C 1853, 2017 WL 1233047, at *1, 6-7 (N.D. Ill. Apr. 4, 2017) (former counsel who had not worked for client in 3 years); *Wilson v. O'Brien*, No. 07 C 3994, 2010 WL 1418401, at *3 (N.D. Ill. Apr. 6, 2010) (former law student attorney who might represent plaintiff again). The sole exception cited by the Defendant is a District Court decision in which the Court rejected *Shelton* and declined to issue a blanket protective order ahead of time preventing opposing counsel's deposition, where the problems posed by the deposition were "wholly speculative." *qad., inc. v. ALN Assocs., Inc.*, 132 F.R.D. 492, 494-95 (N.D. Ill. 1990). Crucially here, and unlike in *qad., inc.*, however, the dispute between the parties over opposing counsel's deposition has already been narrowed to three specific, written questions, and so the Court has an adequate record to determine in advance of any deposition whether the questions are appropriate.

  Given the concrete deposition questions already available to analyze, this Court will, as urged by the Plaintiff, consider the *Shelton* factors in determining whether the three written deposition questions of Plaintiff's current law firm is warranted here. This Court also makes clear, however, that it need not and is not determining whether the *Shelton* factors would apply in every case, as whether this

8

Court applied *Shelton* or analyzed the requested questions under only the Federal Rules of Civil Procedure, the result would be the same in this case.

## II. Merits of Plaintiff's Motion to Quash

When authorizing limited discovery as to arbitration, Judge Kendall found that there was "a preliminary issue of fact about [Plaintiff's] knowledge and direction of counsels' use of the Classmates.com site and agreement to the TOS." [Dkt. 74 at 5.] Accordingly, she allowed the parties to take discovery "relating to [Plaintiff's] knowledge, direction, and/or authorization of counsels' investigation on the Classmates.com website, including agreement to the Classmates.com TOS, as well as discovery topics closely related thereto." [*Id.*]

Defendant now seeks the following information from a written Federal Rule of Civil Procedure 30(b)(6) deposition of Plaintiff's law firm: "(1) the names and email addresses of the agents who accessed Classmates.com; (2) when those agents accessed Classmates.com; and (3) what information those agents took during each of those occasions, whether it be screenshots or otherwise, that was used in a public filing." [Dkt. 95 at 6.] According to Defendant, it needs this information from Plaintiff's agents in order to explore "the scope of authority granted to them and [ ] whether [Plaintiff] ratified their actions." [*Id.* at 11.]

### A. Defendant has no other means to obtain the information it seeks.

The Court begins with the first *Shelton* factor—whether any other means exist to obtain the names and email addresses of Plaintiff's attorneys who accessed the website, the times when they accessed the site, and the information and

9

screenshots they obtained each time they accessed it that were later used in public filings. 805 F.2d at 1327. Defendant maintains that only Plaintiff's attorneys have this information because Plaintiff disclaimed knowledge of it in her answers to interrogatories and deposition and Defendant "cannot determine which of Plaintiff's counsel used Classmates.com or when without knowing the email addresses used to access the site." [Dkt. 95 at 19.] Once Defendant knows the email address of an individual, it "can determine in most instances what a user did." [*Id.* at 14.]

Plaintiff asserts that Defendant already has or is able to obtain this information, pointing to the declaration filed in connection with Defendant's motion to dismiss in which it asserted that it identified Reilly and Diamond and the email addresses they used on Classmates.com. [Dkt. 98 at 9 (citing dkt. 45-1, McGuane Decl. at 7); *see also* dkt. 83 at 14 n.9.] But the declaration does not explain **how** Defendant learned of the two accounts Plaintiff's attorneys created; Defendant suggests that it was alerted by the screenshots included in the complaint with the attorney's names on them. [Dkt. 95 at 14.] Whatever Defendant's ability to monitor accounts on Classmates.com, Defendant has explained that it cannot obtain information as to accounts for which it does not know the email address, and it is particularly interested in whether there are additional accounts that Plaintiff's agents used to access Classmates.com. [*Id.*] And although Plaintiff says that Defendant already has the public screenshots so any information as to those is already in its possession, [dkt. 98 at 9], Defendant is asking to know **when** those screenshots were taken, not just what screenshots were taken, and it is not clear

10

that Defendant is capable of tracking when screenshots are taken by users' own computers (as opposed to Defendant being able to track activity on its own website), or that Defendant has a complete list of all email addresses that Plaintiff's law firm used to access its site. [*See* dkt. 45-1 at 6-7; *see also* dkt. 94 at 3-4.[5]]

With Plaintiff having disclaimed knowledge of her agents' activity on Classmates.com, it seems logical that the people who would know whether Plaintiff's agents set up and used additional accounts (and their account information) would be the agents themselves. Accordingly, the Court concludes that Defendant has no other means of obtaining the information it seeks.

### B. The information sought is relevant and not privileged.

Next, the Court considers whether the information Defendant seeks is ***both*** relevant and not privileged. *Shelton*, 805 F.2d at 1327. First, beginning with relevancy, the parties unsurprisingly advance very different theories of the agency issue, which then informs their views of what is relevant.[6] Whether information is relevant during discovery is "gauged in relation to the claims or defenses in the action," and relevance is to be construed broadly. *Coleman v. Illinois*, No. 19 C 3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020).

---

[5] At the May 12, 2022, hearing, for example, defense counsel said the following about why Defendant needed a full list of email addresses: "[W]e need the e-mail addresses because the way that the website works, you can try to track activity based on e-mail addresses. While we were able to determine some e-mail and some individuals, some of the screenshots are cropped, so we don't know who did them." [Dkt. 94 at 4.]

[6] The parties and the District Court all apply Illinois state law to the agency question. [*See* dkt. 83 at 15-16; dkt. 98 at 11-12; dkt. 95 at 14-17; dkt. 74 at 2.]

11

Plaintiff takes a literal position that only facts directly bearing on Plaintiff's "knowledge, direction, and/or authorization" of her counsel's investigation are relevant. [Dkt. 98 at 10-12; *see also* dkt. 83 at 15-16.] According to Plaintiff, given that Defendant obtained her denials–that she did not authorize her attorneys to go on the website, that she did not know about her attorneys creating accounts or taking screenshots, and that she would not have given them permission to access the website to gather screenshots had they asked—nothing from counsel could possibly be relevant. [Dkt. 98 at 10-11.] Plaintiff explains that under Illinois agency law, only the words or conduct of the principal can establish the authority of an agent and an agent cannot confer power on himself. [*Id.* at 11.] As Defendant did not identify any words or conduct from Plaintiff that created authority or ratification, Plaintiff maintains, her agents' conduct is not relevant. [*Id.* at 11-12.]

Defendant, in contrast, says that the requested discovery is relevant to its two theories of agency: (1) that Plaintiff gave implied authority to her attorneys to agree to the TOS, or (2) that Plaintiff ratified her attorneys' agreement by accepting the benefits of access to Defendant's website. [Dkt. 95 at 14.] In particular, Defendant says, the information sought will clarify the timeline of the case, including when the agents gathered information from the Classmates.com website in relation to what was going on in the case. [*Id.* at 15.] This is particularly relevant, according to Defendant, because one of Plaintiff's chief contentions is that her attorneys gathered the screenshots and other information as part of their

12

Federal Rule of Procedure 11 obligation to investigate the claims before filing suit, rather than as a benefit to her. [*Id.* at 14-17.]

The Court need not wade into the parties' theories about whether Plaintiff implicitly authorized her agents to accept the TOS or ratified their acceptance; those issues will be for District Judge Kendall to consider should Defendant renew its motion to compel arbitration. But, because Judge Kendall has already authorized discovery "relating to [Plaintiff's] knowledge, direction, and/or authorization of counsels' investigation on the Classmates.com website, including agreement to the Classmates.com TOS, **as well as discovery topics closely related thereto**," Plaintiff's contention that only facts directly related to her knowledge, direction, and/or authorization are relevant is untenable. [Dkt. 74 at 5 (emphasis added); *see* dkt. 98 at 10.] By its express terms, the Order allowed for discovery not just confined to Plaintiff's knowledge, words, and actions.

Moreover, Plaintiff takes too narrow of a view of what information may be relevant to authorization in light of the agency theories raised. Plaintiff is correct that in Illinois, "an agent is competent to testify as to his agency or authority, [but] the fact of agency or authority, when disputed or denied, must ordinarily be established by evidence of the acts or conduct of the principal or [her] statements to the agent or third persons." *Mudd by Mudd v. Goldblatt Bros., Inc.*, 454 N.E. 2d 754, 761 (Ill. App. Ct. 1983) (internal citation omitted). [*See* dkt. 98 at 11.] Here, Plaintiff does not dispute that she indeed had an agency relationship with the attorneys at Bursor & Fisher, P.A. The discovery sought does not go to the mere

13

existence of that relationship; rather, it goes to *when* that relationship was formed and what authority (implied or express), if any, was given. And one of Defendant's agency theories, implied authority, can arise when the principal's conduct causes the agent to believe that the principal wants him to act on her behalf, and the other, ratification, can occur when a principal retains the benefit of an agent's actions with knowledge of the material facts about the agent's acts *or awareness that such knowledge was lacking [i.e., willful ignorance]. See, e.g., Charvat v. Valente*, No. 12 CV 5746, 2015 WL 3575636, at *2 (N.D. Ill. June 8, 2015) (discussing federal and Illinois agency law principles). Both these doctrines are broader in scope than whether Plaintiff simply knew of her agents' actions, directed them, or explicitly authorized her agents to pursue a particular course of action.

It is enough here that the information sought is relevant to Defendant's claims (that Plaintiff agreed to the TOS through her attorneys implicitly or through ratification) because it will establish the timing of her agents' actions. For example, the information could demonstrate that Plaintiff's agents created their accounts and took the screenshots well before the law firm agreed to represent her in this matter and any agency relationship was formed. Or, by contrast, it could show that the agents continually used the website to obtain more information to include in Plaintiff's complaint even after Defendant moved to compel arbitration. No matter what the actual timing of Plaintiff's attorneys' actions turns out to be, it gives the parties some information with which to view and analyze the agency issues.

14

Turning next to privilege, in replying to Defendant's narrowed questions, Plaintiff asserts that her agents' answer(s) to Defendant's third question—"what information those agents took during each of those occasions, whether it be screenshots or otherwise, that was used in a public filing," [dkt. 95 at 6]—are protected by the work-product privilege.[7] [Dkt. 98 at 12-13.] The work-product privilege protects "documents and tangible things that are prepared in anticipation of litigation," with a heightened protection "against the disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3). Notably, however, "[f]actual information may not be withheld under the work product doctrine, but must be produced through interrogatories, depositions, or other discovery." *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002).

Given these standards, the work-product doctrine does not apply to any of Defendant's requested deposition questions. At the threshold, Plaintiff's argument fails because Defendant is asking for only factual information about (1) the names and email addresses of Plaintiff's attorneys who used Classmates.com, (2) the dates and times each attorney accessed the website, and (3) the screenshots and other information included in Plaintiff's public filings. *See, e.g., Eagle*, 206 F.R.D. at 478

---

[7] Plaintiff initially argued in her opening motion that the information sought would also be protected by attorney-client privilege, but is no longer pressing that argument in response to Defendant's narrowing of the requested discovery. [Dkt. 83 at 19-20; *see* dkt. 98 at 12-13.]

15

(factual information not protected). As to Defendant's third question, Plaintiff presumes that Defendant "seeks screenshots and information beyond what is included in public filings," but Defendant has explicitly limited that question to only information and screenshots in public filings, and the Court will hold Defendant to that representation. [Dkt. 98 at 12; *see* dkt. 95 at 6, 14, 17.] Thus, none of this factual information can be characterized as work product.

In any event, even assuming it was, Defendant has demonstrated "substantial need" for the information and that it "cannot, without undue hardship, obtain [its] substantial equivalent by other means," which overcomes any protection of this factual information. Fed. R. Civ. P. 26(b)(3)(A)(ii); *see also Eagle*, 206 F.R.D. at 478. The information—dates, times, names, email addresses, and information and/or screenshots used in public filings—is not entitled to the special protection against disclosure under Federal Rule of Civil Procedure 26(b)(3)(B) afforded to "the mental impressions, conclusions, opinions, or legal theories" of Plaintiff's attorneys because it does not divulge their legal strategy or mental thought processes; it alone does not reveal why the attorneys took a particular screenshot or gathered the information or about what their thinking was while doing so. Further, as already discussed in the first *Shelton* factor, Defendant has shown that the information cannot be obtained by any other means; only Plaintiff's attorneys can identify which of them accessed the website, what email addresses they used, and what information and/or screenshots they obtained that was later used in public filings. And Defendant has shown a "substantial need" for this material.

16

Fed. R. Civ. P. 26(b)(3)(A)(ii). This case is unusual because, here, Plaintiff's attorneys' actions are directly relevant to the underlying legal issue—whether Plaintiff's attorneys, acting as her agents, bound Plaintiff to the TOS. Defendant thus needs to know those actions, and, it says, especially the timing of them in order to pursue its agency theories. [*See* dkt. 95 at 14-17.] Accordingly, the information is discoverable and not privileged.

Because Defendant has established that the information sought is relevant as to the timing of Plaintiff's agents' actions—which is, in turn, relevant to its theories that Plaintiff impliedly authorized or ratified the agents' agreement to the TOS—and the purely factual information is not privileged, the second *Shelton* factor has been satisfied. 805 F.3d at 1327.

### C. The information sought is crucial to the case's current main issue.

Finally, the information that Defendant seeks is crucial to preparation of the case. *Shelton*, 805 F.2d at 1327. As it stands now, the central issue is whether Plaintiff must arbitrate her claims—all other discovery is on hold until discovery is completed on this topic and then Defendant may renew its motion to compel arbitration. [*See* dkt. 74 at 4.] Contrary to Plaintiff's contention that information concerning the arbitration issue is not crucial because it is a "sideshow" and unrelated to the underlying litigation, [dkt. 83 at 20-21], right now arbitrability is ***the*** question in the case, and it will be resolved first. *See* 9 U.S.C. § 4 ("If the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *Moses H. Cone Mem. Hosp. v. Mercury Constr.*

17

*Corp.*, 460 U.S. 1, 22-23 (1983) (clear intent of Federal Arbitration Act was "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible"). Should arbitration be compelled, there will be no further proceedings in this matter until the arbitration is resolved. *See* 9 U.S.C. §3 (providing that the court may stay the proceedings pending the outcome of arbitration); *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) (stay is proper course of action when party seeks to invoke arbitration clause); *Volkswagen of America, Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory.").

As discussed above, Defendant seeks relevant information that will inform its arguments as to whether Plaintiff's agents' agreements to the TOS are sufficient to bind her to the TOS as well. Thus, this information is crucial to the threshold question of arbitrability and by extension to the case as a whole. *See Shelton*, 805 F.2d at 1327.

****

In sum, whether this issue is analyzed under the *Shelton* factors or the Federal Rules of Civil Procedure more generally, Defendant has established that the limited discovery it now seeks—a written deposition of Plaintiff's law firm as to three narrow questions—is warranted. Under both *Shelton*, 805 F.2d at 1327, and Federal Rule of Civil Procedure 26(b), the information sought is non-privileged and relevant to the agency issues and thus to Defendant's argument that arbitration should be compelled. Further, under *Shelton*, the information is available only from

Plaintiff's law firm and is crucial to resolution of the arbitration issue (and thus to the case more broadly). 805 F.2d at 1327. Finally, under Federal Rules of Civil Procedure 26(b) and 45(c), the Court concludes that the short, written deposition will not be an undue burden on Plaintiff's attorneys.

### III. Plaintiff's Request for Fees Under Federal Rule of Civil Procedure 37

As a final matter, Plaintiff requests fees incurred in bringing the motion to quash. [Dkt. 83 at 22-23; dkt. 98 at 13-14.] Pursuant to Federal Rule of Civil Procedure 37, if a motion is granted in part and denied in part, as Plaintiff's motion was, the Court *may* "apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). "When 'the dispute over discovery between the parties is genuine, . . . the losing party is substantially justified in carrying the matter to the court' and the award of expenses is not indicated." *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 223 (N.D. Ill. 2013) (quoting Fed. R. Civ. P. 37(a) (1970 Committee Notes), and declining to award fees).

The Court notes that Plaintiff was only partially successful here and indeed lost on the issues that Defendant did not concede. Although Plaintiff contends that she should receive fees because Defendant narrowed its request only after Plaintiff incurred fees to file the motion, [dkt. 98 at 14], the tight timeframe of discovery here makes Defendant's actions reasonable in issuing discovery requests and then trying to work with Plaintiff as to the timing and scope of the requested discovery as more information was gathered. [*See* dkt. 87 at 5-8; dkt. 95 at 9-10.]

Overall, the discovery dispute here was genuine. Each side presented colorable and nuanced arguments regarding whether Defendant's discovery requests to Plaintiff's attorneys should be permitted. Thus, the Court concludes that the parties were substantially justified in bringing the dispute to the Court, and therefore any award of fees to either party under Federal Rule of Civil Procedure 37 is not appropriate.

## **CONCLUSION**

For the reasons explained above, Plaintiff's motion to quash the subpoenas is granted in part and denied in part. The subpoenas to Christopher Reilly and Julian Diamond are quashed. Defendant may depose Plaintiff's law firm, Bursor & Fisher, P.A., pursuant to Federal Rules of Civil Procedure 30(b)(6) and 31 in writing with respect to the following three issues: "(1) the names and email addresses of the agents who accessed Classmates.com; (2) when those agents accessed Classmates.com; and (3) what information those agents took during each of those occasions, whether it be screenshots or otherwise, that was used in a public filing." [Dkt. 95 at 6.]

E N T E R:

Dated: 7/21/22

*[signature: Beth W Jantz]*

BETH W. JANTZ
United States Magistrate Judge