— **EXHIBIT A** —

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ~~SERGIO BONILLA, on behalf of himself and all others similarly situated,~~ | Case Nos:    1:21-cv-00051 |
| ~~Plaintiff,~~ | ~~1:21-cv-00610~~ |
| ~~v.~~ | |
| ~~PEOPLECONNECT, INC., a Delaware Corporation,~~ | **JURY TRIAL DEMANDED** |
| ~~Defendant.~~ | |
| <u>DEVIN EDMISON, MICHAEL BURTLE, and THERESA LOENDORF, individually and on behalf of all others similarly situated,</u> | |
| <u>Plaintiffs,</u> | |
| <u>v.</u> | |
| <u>PEOPLECONNECT, INC., a Delaware Corporation;</u> | |
| <u>DEFENDANT.</u> | |
| ~~THERESA LOENDORF, individually and on behalf of all others similarly situated,~~ | |
| ~~Plaintiff,~~ | |
| ~~v.~~ | |
| ~~PEOPLECONNECT, INC., a Delaware Corporation;~~ | |
| ~~Defendant.~~ | |

## CLASS ACTION COMPLAINT
### FOR VIOLATION OF 765 ILCS 1075/1 *et seq.* AND ~~815 ILCS 505/1 *et seq.*;~~ ~~INTRUSION UPON SECLUSION;~~ UNJUST ENRICHMENT

Plaintiffs ~~SERGIO BONILLA~~<u>DEVIN EDMISON, MICHAEL BURTLE,</u> and THERESA

LOENDORF ("Plaintiffs"), by and through their attorneys, make~~s~~ the following allegations on

information and belief, except as to factual allegations pertaining to Plaintiffs, which are based on personal knowledge.

## INTRODUCTION

1.      Plaintiffs bring this class action complaint against PEOPLECONNECT, INC., which owns and operates the website Classmates.com,[‡] for willfully misappropriating the photographs, likenesses, images, and names of Plaintiffs and the class; willfully using those photographs, likenesses, images, and names to advertise monthly subscription plans ~~and yearbook reprints~~; and willfully selling access to those photographs, likenesses, images, and names as part of its products; without obtaining prior consent from Plaintiffs and the class.

2.      ~~Classmates'~~ PeopleConnect's business model relies on extracting personal information from school yearbooks, including names, photographs, schools attended, and other biographical information. ~~Classmates~~ PeopleConnect paid third parties to digitally scan~~ned~~ and extract~~ed~~ the names and photographs of millions of students, then created a database on which users may search by name and location for the photograph of any student. ~~Classmates~~ PeopleConnect uses student names and photographs to advertise and promote ~~website~~ subscriptions to www.classmates.com costing $3 per month~~, and reprinted yearbook copies costing $99.95~~. ~~Classmates~~ PeopleConnect advertises by providing limited access to low-resolution versions of student photographs for free on its website. Users who click to see a higher-resolution photograph, or who attempt to view more than two student photographs, are presented with messages soliciting ~~the purchase of yearbook reprints and~~ monthly subscription plans.

3.      Although ~~Classmates~~ PeopleConnect uses individual student names and photographs to advertise its subscription products, the product~~s~~ itself is ~~themselves are~~ far broader than access to the individual student's photograph. When users purchase a monthly

[‡] ~~Plaintiffs refer to Defendant PeopleConnect, Inc. and Classmates.com collectively as "Classmates."~~

subscription to Classmates.com, they receive: ~~full-resolution~~ access to millions of <u>full-resolution</u> student photographs from hundreds of thousands of yearbooks; the ability to search for school friends by their current location; visibility into who has visited the subscriber's profile; and the ability to read and reply all messages sent by other Classmates subscribers. ~~Similarly, when users purchase a reprinted yearbook, the receive many pages of content about an entire school, not just the student whose photograph Classmates showed in connection with on-site advertising messages.~~

~~4.     Classmates also profits directly from its display of student names and photographs — even when the viewer does not purchase a monthly subscription or reprinted yearbook — by selling ad space on its website.~~

<u>5.</u>~~4.~~     According to the Classmates.com website, <u>the</u> Classmates~~'~~ Yearbook Collection contains ~~records~~ <u>photographs</u> ~~copied~~ from over 400 thousand yearbooks. While ~~Classmates~~ <u>PeopleConnect</u> does not publish figures about the total number of ~~records~~ <u>photographs</u> in the Collection and does not breakdown the number of yearbooks in its collection by state, it is likely the Collection contains records corresponding to millions of Illinoisans.

<u>6.</u>~~5.~~     ~~Classmates~~ <u>PeopleConnect</u> has not received consent from, given notice to, or provided compensation to the millions of Illinoisans whose names, photographs, biographical information, and images appear in its Classmates Yearbook Collection.

<u>7.</u>~~6.~~     The names, photographs, cities of residence, schools attended, likenesses, and images contained in the Classmates Yearbook Collection uniquely identify specific individuals.

<u>7.</u>     ~~Classmates~~ <u>PeopleConnect</u> uses the names, photographs, cities of residence, schools attended, likenesses, and images in its Classmates Yearbook Collection for the commercial purpose of advertising and promoting the sale of ~~reprinted yearbooks, which retail for up to $99.95, and~~ its "CM+" subscription plan, which retails for up to $3 per month.

<u>8.     PeopleConnect is the sole author, designer, and implementor of the advertising techniques and messages giving rise to this lawsuit. PeopleConnect does not host user-generated content on any part of the Classmates website relevant to this lawsuit. PeopleConnect is the sole</u>

curator, designer, and creator of the content described in this Complaint.

9. PeopleConnect pays licensing fees to third parties in exchange for the right to make commercial use of Plaintiffs' and Class Members' photographs as children. That PeopleConnect pays such fees confirms that PeopleConnect ascribes economic value to their names and likenesses.

10. PeopleConnect misappropriated Plaintiffs' and Class Members' photographs without permission from Plaintiffs or the Class, the photographers who took the pictures, the authors who created the school yearbooks, or the publishers of the school yearbooks.

11. PeopleConnect received no indication from yearbook authors or publishers that the authors or publishers intended their work to be published on the Internet or used to promote Classmates.com subscriptions.

12. PeopleConnect does not hold copyright in Plaintiffs' or Class members' yearbooks, nor does it have permission from the copyright holder to republish or distribute Plaintiffs' or Class members' yearbooks.

8.13. Consent is not all or nothing. Plaintiff and the Class had their photographs taken for school yearbooks intended solely for print distribution among a narrow circle of friends, family, and schoolmates. Plaintiffs and the Class did not consent to the commercial use of their photographs to promote a website they have never used and do not approve of.

9. Classmates uses the names, photographs, cities of residence, schools attended, likenesses, and images in its Classmates Yearbook Collection for the commercial purpose of advertising and promoting the free version of its website, which is available to both unregistered users and registered non-paying users. Classmates derives profit from the free version of its website by (1) selling ads on its website; (2) driving users of the free version to purchase its paid products and services; and (3) on information and belief, selling the personal information it collects from registered and unregistered users to third parties.

10.14. ClassmatesPeopleConnect uses the names, photographs, cities of residence, schools attended, and identities in its Classmates Yearbook Collection on its products, and in connection with the offering for sale of its products, by (1) selling reprinted yearbooks that

4

~~contain the records; (2)~~ selling access to the records to paying subscribers via its "CM+" online membership plan~~; and (3) including these records on the free version of its website that is available to unregistered users and registered non-paying users~~.

15.    By using Plaintiffs' and Class Members' photographs, names, and personas in advertisements for website subscriptions without consent, PeopleConnect violated their intellectual property and privacy rights. Plaintiffs and the Class have the right not to have their personas exploited to promote a product with which they have no relationship and no interest in supporting. Plaintiffs and the Class have an economic interest in their personas, which PeopleConnect has stolen, and a privacy interest in their personas, which PeopleConnect has violated.

~~11.    By misappropriating and misusing millions of Illinoisan's names, photographs, images, and likenesses without consent, Classmates has harmed Plaintiff and the class by: (1) taking their intellectual property without compensation and denying them the economic value of their likenesses; (2) violating their statutorily protected right "to control and to choose whether and how" their identities are used, 765 ILCS 1075/10; (3) invading their privacy and violating their common law right to seclusion; and (4) causing them to lose time investigating the mis-use of their likenesses. By profiting from their likenesses through selling printed yearbooks, subscription membership plans, and ad space on its website, Classmates has earned ill-gotten profits and been unjustly enriched.~~

~~12.~~16.  These practices, as further detailed in this complaint, violate the Illinois right to publicity as codified in 765 ILCS 1075/1 *et seq.*~~; the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.~~; ~~Illinois common law protecting against Intrusion Upon Seclusion;~~ and Illinois common law protecting against Unjust Enrichment. Plaintiffs and the Class have suffered injury through the unlawful taking of their valuable intellectual property; through the invasion of their privacy rights protected by statute and common law; through PeopleConnect's unlawful profiting from its exploitation of their names, personas, and personal information; and through harm to peace of mind. Plaintiffs and the Class are entitled to relief including statutory damages, disgorgement of profits, royalties for the use of their personas,

restitution of the value of their personas, an injunction prohibiting PeopleConnect's unlawful conduct, the award of attorneys' fees, expenses, and costs, and declaratory relief.

## JURISDICTION AND VENUE

~~13.~~17.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act ("CAFA")), because: (A) members of the putative class are citizens of a state different from at least one defendant. According to available public records, defendant PeopleConnect Inc. is incorporated in Delaware and has its principal place of business in Seattle, Washington. The class members are residents of Illinois. (B) The proposed class consists of at least 100 members. ~~Classmates~~ PeopleConnect advertises that its Classmates Yearbook Collection comprises records collected from "over 400,000 yearbooks."  While PeopleConnect ~~Classmates~~ does not publish statistics concerning the total number of records in each yearbook, or a breakdown by state, a conservative estimate would place the number of individual records corresponding to Illinoisans in the millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. 765 ILCS 1075/1 *et seq.* provides for damages equal to the greater of $1,000 per violation or the actual damages suffered by the Plaintiffs, plus exemplary and/or punitive damages in the case of knowing use without consent. Given millions of likely records in Illinois, the amount in controversy is well over the jurisdictional amount.

~~14.~~18.  This Court has personal jurisdiction over the claims of Plaintiffs and the non-named class members. PeopleConnect ~~Classmates~~ has purposefully conducted business activities in Illinois, and this lawsuit arises directly from its activities in Illinois.

~~15.~~19.  PeopleConnect ~~Classmates~~ knowingly ~~searches for and obtains~~ advertises using ~~yearbooks and other records containing~~ the photographs as children and ~~the~~ personal information of Illinois residents. PeopleConnect ~~Classmates has collected~~ licenses tens of thousands of yearbooks from Illinois schools, whose alumni it knows are highly likely to live in Illinois. This lawsuit arises from ~~Classmates'~~ PeopleConnect's practice of acquiring names and photographs of Illinois residents and use of ~~with the specific intent of selling access to that information and using~~ th ose names and photographs ~~at information~~ to advertise ~~monthly~~ subscriptions ~~and~~

~~yearbook reprints~~.

~~16.~~20.  ~~Classmates~~ PeopleConnect knowingly markets and advertises its products and



services to Illinois residents. The yearbook search function allows users to limit their searches to encompass only Illinois schools. Upon accessing the website for the first time, the very first screen users see asks them to specify which state they attended high school. Illinois is listed as an option:

~~17.~~21.  ~~Classmates'~~ PeopleConnect's marketing and advertising to Illinois residents is directly related to the claims in this lawsuit. ~~Classmates~~ PeopleConnect encourages users of the free version of its website to search for people from their own high school. In other words, it uses free limited access to names and photographs from Illinois high schools primarily to advertise to people who attended those same Illinois high schools, and are themselves highly likely to be Illinois residents.

~~18.~~22.  Although Plaintiffs cannot know precise figures without discovery, upon information and belief, ~~Classmates~~ PeopleConnect has many thousands of monthly subscribers who are Illinois residents, many of whom subscribed after seeing free previews featuring Illinois residents. ~~Classmates has also shipped many reprinted yearbooks to customers in Illinois, many~~

7

~~of whom made purchases after seeing free previews featuring Illinois residents. And it has displayed on-site ads to millions of website users in Illinois, many of whom were viewing free previews featuring Illinois residents.~~

~~19.~~23.  The harms alleged in this lawsuit were all felt in Illinois. This includes the denial of Illinoisan's statutory rights to control their likenesses, the taking of Illinoisan's likenesses without economic compensation, and the denial of Illinoisan's common law right to freedom from intrusion upon seclusion.

~~20.~~24.  PeopleConnect knows its business activities in Illinois subject it to the jurisdiction of Illinois courts. PeopleConnect owns several websites with similar business practices, including Classmates.com, Intelius.com, and InstantCheckmate.com, all of which have been the subject of lawsuits in Illinois. This includes a recent lawsuit against InstantCheckmate alleging violations of the IRPA in which a court in this District rejected PeopleConnect's argument against personal jurisdiction, *Lukis v. Whitepages Inc.*, 454 F. Supp. 3d 746 (N.D. Ill. 2020); and a lawsuit brought by the Attorney General of Illinois against Classmates alleging deceptive marketing practices.[2]

~~21.~~25.  Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this district. A substantial portion of the class members reside in this state and district. Named Plaintiff~~s~~ ~~Sergio Bonilla and~~ Theresa Loendorf ~~both~~ reside~~s~~ in this district.

### INTRADISTRICT VENUE

~~22.~~26.  Venue in this Division of the District is proper because a substantial part of the events or omissions which give rise to the claim occurred in this division. ~~Plaintiff Sergio Bonilla resides in Lake County.~~ Plaintiff Theresa Loendorf resides in Buffalo Grove, a village on the border between Lake and Cook Counties.

### PARTIES

---

[2] *See https://illinoisattorneygeneral.gov/pressroom/2015_05/20150526.html*

8

**Defendant Classmates**

27.     Defendant PEOPLECONNECT, INC. is a Delaware corporation with its headquarters in Seattle, Washington. It conducts business under the brand names "Classmates.com," "Classmates," and other brand names associated with the various website and services it owns and operates, including "Intelius" and "InstantCheckmate." It conducts business throughout this district, Illinois, and the United States. PeopleConnect, Inc. owns and operates the website Classmates.com.

**Plaintiff Devin Edmison**

28.     Plaintiff Devin Edmison is a resident of Sangamon County, Illinois.

29.     Mr. Edmison has never visited, used, or subscribed to the website Classmates.com.

30.     Mr. Edmison attended Glenwood High School in Chatham, Illinois, from which he graduated in 2019.

31.     On February 8, 2023, counsel for PeopleConnect informed Plaintiffs' counsel that Mr. Edmison's yearbook photographs were "added to Classmates.com on May 20, 2021." *See* **Ex. 1**.

32.     Mr. Edmison's claims are functionally identical to the claims Plaintiff Sergio Bonilla filed before this Court on January 5, 2021, and to the claims Ms. Loendorf filed before this Court on February 2, 201. *See* No. 21-cv-00051, Dkt. No. 1 ("Bonilla Complaint"); No. 21-cv-00610, Dkt. No. 1 ("Loendorf Complaint"). Mr. Edmison is a member of the Classes Mr. Bonilla and Ms. Loendorf alleged in their complaints. *See Bonilla* Complaint, at ¶48; *Loendorf* Complaint, at ¶30. Accordingly, the statute of limitations was tolled for Mr. Edmison at least from the time Mr. Bonilla filed his Complaint. *See Carpenters Pension Tr. Fund v. Allstate Corp. (In re Allstate Corp. Sec. Litig.)*, 966 F.3d 595, 614-16 (7th Cir. 2020). Mr. Edmison's claims are therefore timely.

33.     Even if tolling did not apply, Mr. Edmison's claims would still be timely because the five-year catchall limitations period codified in 735 ILCS 5/13-205 applies to his IRPA claim. In *Tims v. Black Horse Carriers, Inc*., 2023 IL 127801 (Ill. Feb. 2, 2023), the Illinois Supreme

Court ruled in the context of a claim under the Illinois Biometric Information Privacy Act (BIPA) that "the five-year limitations period in section 13-205 of the code applies to [BIPA] because the act does not contain a limitations period." *Id*., at ¶33. Like BIPA, the IRPA does not contain an express limitations period. In ruling that the "five-year catchall limitations period codified in section 13-205" applies to BIPA, the Illinois Supreme Court observed that a shorter time period would "prejudice those whom the Act is intended to protect" and that a longer limitations period is more consistent with public policy. *Id*., at ¶¶32, 37. Under *Tims*, Mr. Edmison's IRPA claim is subject to a five-year statute of limitations.

34.     Mr. Edmison has never provided consent to PeopleConnect, written or otherwise, for its use of his name, photograph, and identity.

35.     PeopleConnect has never notified, requested consent from, or provided compensation to Mr. Edmison for its appropriation of his name, photograph, and identity.

36.     There is no agreement to arbitrate between Mr. Edmison and PeopleConnect. Mr. Edmison has never visited the Classmates.com website and has never seen or agreed to any PeopleConnect or Classmates Terms of Service. At no time has Mr. Edmison believed any agreement between himself and PeopleConnect exists or existed.

37.     Counsel on behalf of Mr. Edmison sent a letter to PeopleConnect's counsel on January 25, 2023. **Ex. 2**. Counsel wrote that "Mr. Edmison and Mr. Burtle do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Mr. Edmison and Mr. Burtle expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Mr. Edmison's, Mr. Burtle's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Mr. Edmison and Mr. Burtle both signed" Acknowledgements attached to the letter. *Id.* (Emphasis in original.)

38.     In his signed Acknowledgment attached to the January 25 letter, Mr. Edmison acknowledged and confirmed that: (1) he "expressly disclaims and repudiates any purported agreement to arbitrate"; (2) he "has never seen or agreed to any terms of service or any other

agreement" with PeopleConnect; (3) he "has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) he "does not believe any agreement to arbitrate exists" between himself and PeopleConnect; (5) he "does not believe [he] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including his attorneys. **Ex. 3**.

39.    Mr. Edmison also acknowledged and confirmed that he "instructed his [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [his] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [his] behalf that [he] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [his] behalf that [he] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

40.    Mr. Edmison hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

41.    None of the allegations in this Complaint relating to PeopleConnect's use of Mr. Emison's name and photograph are based on any information gathered from www.classmates.com. Rather, Mr. Edmison's allegations are based on: (1) PeopleConnect's representation to his counsel that Mr. Edmison's yearbook photographs became part of the Classmates Yearbook Database on May 20, 2021; and (2) the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Mr. Edmison, including the Bonilla Complaint and Loendorf Complaint previously filed in this case.

42.    Mr. Edmison highly values his personal privacy and intellectual property. He highly values the ability to control and prevent the commercial use of his identity without consent.

43.    PeopleConnect uses Mr. Edmison's yearbook photograph as a minor child in

11

advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Mr. Edmison it uses for this purpose, which it appropriated without his permission from his yearbook from Glenwood High School. *See* Ex. 1 (communication from PeopleConnect's counsel admitting photographs from Mr. Edmison's yearbook are searchable on Classmates.com).

44. PeopleConnect incorporates Mr. Edmison's photograph in advertisements for website subscriptions in the same way it incorporates Ms. Loendorf's photographs, *see below*, and Mr. Bonilla's photographs. *See Bonilla* Complaint. This allegation, and the succeeding allegations related to PeopleConnect's use of Mr. Edmison's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

45. PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Mr. Edmison and other Class members.

46. Users who searched for Mr. Edmison received in response a list of results, which include low-resolution photographs depicting Mr. Edmison as a child.

47. Users who clicked on Mr. Edmison's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Mr. Edmison's photographs.

48. After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

49. PeopleConnect's sole purpose in using Mr. Edmison's photograph, name, and identity on the free version of its website is to solicit the purchase of paid subscriptions to www.classmates.com.

50. Mr. Edmison does not know how PeopleConnect obtained his photographs as a child. On information and belief, it is likely PeopleConnect obtained his photographs by paying

12

a licensing fee to a third party in exchange for digitized copies of Mr. Edmison's photographs and the right to make commercial use of those copies.

51. PeopleConnect misappropriated Mr. Edmison's photographs without permission from Mr. Edmison, the photographer who took his pictures, the authors who created his yearbooks, or the publishers of his yearbooks.

52. PeopleConnect does not hold a copyright in yearbooks from Mr. Edmison's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

53. Mr. Edmison has intellectual property and privacy interests in his photographs, name, likeness, and persona recognized by Illinois statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

54. PeopleConnect has injured Mr. Edmison by taking his intellectual property without compensation; by invading his privacy rights protected by statute; by unlawfully profiting from its exploitation of his personal information; and by disturbing his peace of mind.

55. Mr. Edmison is upset and disturbed by PeopleConnect's commercial use of his name, photograph, and persona without his consent. Mr. Edmison believes his persona is rightly his to control. Mr. Edmison does not support or endorse the website www.classmates.com. He finds it offensive to his dignity that PeopleConnect is using his name and photograph without his permission to advertise a product of which he does not approve.

56. PeopleConnect's illegal use of his name and photograph has left Mr. Edmison worried and uncertain about his inability to control how his name and personality are used.

57. Mr. Edmison is deeply uncomfortable in the knowledge that PeopleConnect is using his name and photographs as a minor to promote a service he does not support.

58. PeopleConnect deliberately concealed its commercial use of Mr. Edmison's photograph from Mr. Edmison. He could not have discovered PeopleConnect's illegal use of his name and photograph without the assistance of his counsel.

59. As alleged above and shown in the screenshots below, PeopleConnect's

advertisements incorporating Mr. Edmison's name and likeness do not solicit paid subscriptions until after the user has created an account agreed to the Terms. Accordingly, Mr. Edmison could not have discovered PeopleConnect's commercial use of his name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

60.      Even had Mr. Edmison visited the public portion of the Classmates.com website and discovered the low-resolution versions of his photographs, he would not have created an account or agreed to the Terms.

61.      Account registration requires that the user share their name and email address with PeopleConnect. Mr. Edmison did not and does not wish to share this information with PeopleConnect. Mr. Edmison does not want PeopleConnect to profit from or use his personal information in any way. Nor does he trust that PeopleConnect would properly safeguard his name and email address.

62.      Mr. Edmison's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/

63.      Account registration also requires that the user agree to the Terms. Although Mr. Edmison has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Mr. Edmison that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Mr. Edmison visited www.classmates.com for the purpose of investigating a potential legal claim, he would not have agreed to any restrictions on his ability to bring suit. Accordingly, he would not have agreed to the Terms.

64.      Because Mr. Edmison would not have been willing to create an account on www.classmates.com, he could not have learned that PeopleConnect uses his low-resolution photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Mr. Edmison's cause of action from Mr. Edmison.

65.     PeopleConnect also concealed Mr. Edmison's cause of action from his counsel by deliberating impeding their investigation of his claim.

66.     PeopleConnect's affirmative actions aimed at concealing Mr. Edmison's cause of action from his counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

**Plaintiff Michael Burtle**

67.     Plaintiff Michael Burtle is a resident of Sangamon County, Illinois.

68.     Mr. Burtle has never visited, used, or subscribed to the website Classmates.com.

69.     Mr. Burtle attended Glenwood High School in Chatham, Illinois, from which he graduated in 2019.

70.     On February 8, 2023, counsel for PeopleConnect informed Plaintiffs' counsel that Mr. Burtle's yearbook photographs were "added to Classmates.com on May 20, 2021."

71.     For the same reasons articulated above with respect to Mr. Edmison, Mr. Burtle's claims are timely.

72.     Mr. Burtle has never provided consent to PeopleConnect, written or otherwise, for its use of his name, photograph, and identity.

73.     PeopleConnect has never notified, requested consent from, or provided compensation to Mr. Burtle for its appropriation of his name, photograph, and identity.

74.     There is no agreement to arbitrate between Mr. Burtle and PeopleConnect. Mr. Burtle has never visited the Classmates.com website and has never seen or agreed to any PeopleConnect or Classmates Terms of Service. At no time has Mr. Burtle believed any agreement between himself and PeopleConnect exists or existed.

15

75.     Counsel on behalf of Mr. Burtle sent a letter to PeopleConnect's counsel on January 25, 2023. **Ex. 2**. Counsel wrote that "Mr. Edmison and Mr. Burtle do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Mr. Edmison and Mr. Burtle expressly disclaim and repudiate any purported agreement to arbitrate." *Id*. The letter also stated that "to ensure that PeopleConnect does not misrepresent or misunderstand Mr. Edmison's, Mr. Burtle's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Mr. Edmison and Mr. Burtle both signed" Acknowledgements attached to the letter. *Id.* (Emphasis in original.)

76.     In his signed Acknowledgment attached to the January 25 letter, Mr. Burtle acknowledged and confirmed that: (1) he "expressly disclaims and repudiates any purported agreement to arbitrate"; (2) he "has never seen or agreed to any terms of service or any other agreement" with PeopleConnect; (3) he "has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrated [PeopleConnect] might have with anyone"; (4) he "does not believe any agreement to arbitrate exists" between himself and PeopleConnect; (5) he "does not believe [he] is bound by any agreement to arbitrate that may exist between [PeopleConnect] and any other person," including his attorneys. **Ex. 4**.

77.     Mr. Burtle also acknowledged and confirmed that he "instructed his [counsel]": (1) "[n]ot to enter any agreement to arbitrate with PeopleConnect on [his] behalf"; (2) [t]o pursue this action in federal or state court and not in an arbitral forum"; (3) "[t]o inform [PeopleConnect] on [his] behalf that [he] does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed"; and (4) "[t]o inform [PeopleConnect] on [his] behalf that [he] expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that [PeopleConnect] might claim exists or existed." *Id.*

78.     Mr. Burtle hereby again disaffirms, disavows, and repudiates any agreement to arbitrate.

79.     None of the allegations in this Complaint relating to PeopleConnect's use of Mr.

16

Burtle's name and photograph are based on any information gathered from www.classmates.com. Rather, Mr. Burtle's allegations are based on: (1) PeopleConnect's representation to his counsel that Mr. Burtle's yearbook photographs became part of the Classmates Yearbook Database on May 20, 2021; and (2) the fact that PeopleConnect incorporates each of the yearbook photographs in its database into advertisements for website subscriptions in the same way. Descriptions of PeopleConnect's advertising techniques and the relevant functioning of its website appear in public filings available to Mr. Burtle, including the *Bonilla* Complaint and *Loendorf* Complaint previously filed in this case.

80. Mr. Burtle highly values his personal privacy and intellectual property. He highly values the ability to control and prevent the commercial use of his identity without consent.

81. PeopleConnect uses Mr. Burtle's yearbook photograph as a minor child in advertisements promoting website subscriptions. PeopleConnect possesses at least one photograph of Mr. Burtle it uses for this purpose, which it appropriated without his permission from his yearbook from Glenwood High School. *See* **Ex. 1** (communication from PeopleConnect's counsel admitting photographs from Mr. Burtle's yearbook are searchable on Classmates.com).

82. PeopleConnect incorporates Mr. Burtle's photograph in advertisements for website subscriptions in the same way it incorporates Ms. Loendorf's photographs, *see below*, and Mr. Bonilla's photographs. *See Bonilla* Complaint. This allegation, and the succeeding allegations related to PeopleConnect's use of Mr. Burtle's photographs, are not based on direct observation of the Classmates.com website. Rather, these allegations are based on Plaintiffs' knowledge that PeopleConnect incorporates all yearbook photographs in its database into advertisements in the same way.

83. PeopleConnect provides a publicly accessible webpage on which users may search, and have searched, by name and/or location for Mr. Burtle and other Class members.

84. Users who searched for Mr. Burtle received in response a list of results, which include low-resolution photographs depicting Mr. Burtle as a child.

85.     Users who clicked on Mr. Burtle's photographs seeking higher-resolution versions, or who attempted to view more than a proscribed number of photographs, received a pop-up message asking the user to register with the site and agree to the Terms of Service. The user was required to interact with the pop-up to continue viewing Mr. Burtle's photographs.

86.     After a user agreed to the Terms and registered with the site, PeopleConnect displayed a screen soliciting the purchase of a paid subscription to Classmates.com.

87.     PeopleConnect's sole purpose in using Mr. Burtle's photograph, name, and identity on the free version of its website is to solicit the purchase of paid subscriptions to www.classmates.com.

88.     Mr. Burtle does not know how PeopleConnect obtained his photographs as a child. On information and belief, it is likely PeopleConnect obtained his photographs by paying a licensing fee to a third party in exchange for digitized copies of Mr. Burtle's photographs and the right to make commercial use of those copies.

89.     PeopleConnect misappropriated Mr. Burtle's photographs without permission from Mr. Burtle, the photographer who took his pictures, the authors who created his yearbooks, or the publishers of his yearbooks.

90.     PeopleConnect does not hold a copyright in yearbooks from Mr. Burtle's school, nor does it have permission from the copyright holder the republish or distribute the yearbooks or the photographs contained therein.

91.     Mr. Burtle has intellectual property and privacy interests in his photographs, name, likeness, and persona recognized by Illinois statutory and common law. He has the right to exclude anyone from making commercial use of his persona without his permission.

92.     PeopleConnect has injured Mr. Burtle by taking his intellectual property without compensation; by invading his privacy rights protected by statute; by unlawfully profiting from its exploitation of his personal information; and by disturbing his peace of mind.

93.     Mr. Burtle is upset and disturbed by PeopleConnect's commercial use of his name, photograph, and persona without his consent. Mr. Burtle believes his persona is rightly his to

18

control. Mr. Burtle does not support or endorse the website www.classmates.com. He finds it offensive to his dignity that PeopleConnect is using his name and photograph without his permission to advertise a product of which he does not approve.

94. PeopleConnect's illegal use of his name and photograph has left Mr. Burtle worried and uncertain about his inability to control how his name and personality are used.

95. Mr. Burtle is deeply uncomfortable in the knowledge that PeopleConnect is using his name and photographs as a minor to promote a service he does not support.

96. PeopleConnect deliberately concealed its commercial use of Mr. Burtle's photograph from Mr. Burtle. He could not have discovered PeopleConnect's illegal use of his name and photograph without the assistance of his counsel.

97. As alleged above and shown in the screenshots below, PeopleConnect's advertisements incorporating Mr. Burtle's name and likeness do not solicit paid subscriptions until after the user has created an account agreed to the Terms. Accordingly, Mr. Burtle could not have discovered PeopleConnect's commercial use of his name and photograph to advertise without creating an account on PeopleConnect and agreeing to the Terms.

98. Even had Mr. Burtle visited the public portion of the Classmates.com website and discovered the low-resolution versions of his photographs, he would not have created an account or agreed to the Terms.

99. Account registration requires that the user share their name and email address with PeopleConnect. Mr. Burtle did not and does not wish to share this information with PeopleConnect. Mr. Burtle does not want PeopleConnect to profit from or use his personal information in any way. Nor does he trust that PeopleConnect would properly safeguard his name and email address.

100. Mr. Burtle's fears on this front are well-founded. This month PeopleConnect admitted to a data breach in which the names and email addresses of tens of millions of its users were exposed. *See* https://www.idstrong.com/sentinel/peopleconnect-data-breach/.

101. Account registration also requires that the user agree to the Terms. Although Mr.

Burtle has never seen any PeopleConnect Terms and does not know what they contain, Plaintiffs' counsel have explained to Mr. Burtle that the Terms include a number of provisions designed to impede a potential plaintiff from bringing suit in court. Had Mr. Burtle visited www.classmates.com for the purpose of investigating a potential legal claim, he would not have agreed to any restrictions on his ability to bring suit. Accordingly, he would not have agreed to the Terms.

102. Because Mr. Burtle would not have been willing to create an account on www.classmates.com, he could not have learned that PeopleConnect uses his low-resolution photographs to promote subscriptions. By placing the solicitation webpage behind the page requiring account creation and agreement to the Terms, PeopleConnect concealed Mr. Burtle's cause of action from Mr. Burtle.

103. PeopleConnect also concealed Mr. Burtle's cause of action from his counsel by deliberating impeding their investigation of his claim.

104. PeopleConnect's affirmative actions aimed at concealing Mr. Burtle's cause of action from his counsel include, but are not limited to: (1) deleting accounts it knew counsel were using to investigate their clients' claims; (2) refusing counsel's repeated requests that PeopleConnect provide counsel access to www.classmates.com for the purpose of investigating their clients' claims; (3) blocking counsel's email addresses from creating accounts; (4) threatening counsel with legal action should they continue to visit www.classmates.com to investigate their clients' claims; and (5) refusing to recognize counsels' valid opt-outs of the arbitration clause in PeopleConnect's Terms.

23. **Plaintiff Theresa Loendorf**

**Plaintiff Sergio Bonilla**

24. Plaintiff Sergio Bonilla is a resident of Great Lakes, Illinois. Mr. Bonilla is not a subscriber of any Classmates products or services, is not currently subject to any Terms of Service or any other agreement with Classmates, and has no current relationship with Classmates.

25. Mr. Bonilla has not provided consent to Classmates, written or otherwise, for the

use of his name, photograph, or likeness.

26. Mr. Bonilla created a registered, non-paying user account with Classmates.com at some point in the past. To the best of his recollection, he created the account somewhere between fifteen and twenty years ago.

27. Mr. Bonilla's name and photograph has economic value, as demonstrated by Classmates' commercial exploitation of his identity and likeness. His identity is also valuable to other online advertisers.

28. To the best of his recollection, at the time he used Classmates.com, there were no records corresponding to Mr. Bonilla in the Classmates Yearbook Collection or anywhere else on the Classmates.com website. Mr. Bonilla first became aware that his personal information and photograph are being used by Classmates through the investigation of this lawsuit.

29. Mr. Bonilla does not recall being shown or agreeing to any Terms of Service or other agreement related to his past use of Classmates.com. To the extent this court determines he implicitly agreed to a Terms of Service or other agreement with Classmates.com at the time he used the website, that agreement has expired after an extended period in which Mr. Bonilla did not use Classmates.com.

30. Plaintiffs' counsel researched publicly available archival records to determine that at least as late as August 2013, the Terms of Service agreement accessible on the Classmates.com website did not contain an arbitration clause or a class action waiver. Accordingly, at the time Mr. Bonilla created his account, the Terms of Service did not include an arbitration clause or class action waiver. Upon information and belief, when Classmates amended its Terms of Service to include an arbitration clause, it did not present or display the amended terms to Mr. Bonilla, nor did it require Mr. Bonilla to review and approve the amended terms to continue using Classmates.com.

31. ~~Classmates' Yearbook Collection contains two records corresponding to Mr. Bonilla, both from a 1995 yearbook from Central High School in Omaha, Nebraska, where Mr. Bonilla attended school. The records uniquely identify Mr. Bonilla. Both records include his full name and clearly identify his place of residence and school he attended. One of the records includes a photograph in which Mr. Bonilla's face is plainly visible and identifiable. This record also identifies Mr. Bonilla's participation on the school swim team. The photograph from this record is reproduced as a screen capture below. To protect their privacy, throughout this complaint Plaintiffs' counsel have employed photo-editing software to obscure Mr. Bonilla's face and the names and images of other students at Central High School. In the original record Classmates created and is currently using, Mr. Bonilla's face is plainly visible and identifiable.~~



32. ~~Classmates has and continues to use the record containing Mr. Bonilla's name, photograph, image, and likeness for the commercial purpose of advertising and promoting the purchase of paid subscriptions to its "CM+" membership plan. Users may search for and view records containing Mr. Bonilla's name, photograph, and likeness. For unregistered users and~~

~~registered non-paying users, Classmates displays both the requested records and at least two forms of advertisement designed to solicit the purchase of a paid subscription to Classmates for a price ranging from $1.50 to $3 per month. First, adjacent to the list with the record containing Mr. Bonilla's name, photograph, image, and likeness, Classmates displays an advertisement prompting the user that "Get everything Classmates has to offer for as low as $1.23 a month" and promising several benefits to paying subscribers, including discounted prices on yearbook reprints. Users who click the link are brought to a page soliciting the purchase of a paid subscription membership.~~



~~33.~~ ~~Second, unregistered users are initially shown a low-resolution version of Mr.~~ ~~Bonilla's photograph. Unregistered users who click on Mr. Bonilla's photograph looking for a~~ ~~higher-resolution version are shown a pop-up asking them to register in order to view "full-size~~ ~~yearbooks."~~



~~34.~~ ~~Once users have entered the requested information, Classmates displays a second~~
~~screen soliciting the purchase of a paid subscription plan, for prices ranging from $1.50 to $3.~~
~~Although users do not have to pay for a subscription to view full-resolution records, Classmates~~
~~does everything in its power to obscure this and make the user believe they must pay to continue.~~
~~The screen is visually dominated by prompts asking users to select a paid plan and enter credit~~
~~card or other payment information. A link titled "No thanks" written in miniscule font at the far~~
~~top right corner of the page is the only indication users may proceed without paying money.~~



~~35.~~ ~~Classmates has and continues to use the records containing Mr. Bonilla's name, photograph, image, and likeness for the commercial purpose of advertising and promoting the purchase of reprinted yearbooks. Users of the Classmates.com website are encouraged to enter the names of "friends, family, coworkers or your favorite celebrities" into a search bar. The search bar is accompanied by a banner advertisement for a monthly subscription to Classmates.com at a reduced price of $1.23 per month.~~



~~36.     Users who enter Mr. Bonilla's name receive in response a list showing the records in the Classmates' Yearbook Collection corresponding to Mr. Bonilla. All Classmates users may search for Mr. Bonilla's name and view this list, including unregistered users, registered non-paying users, and paying subscribers.~~



~~37.    When users click to view any of the records corresponding to Mr. Bonilla, Classmates displays at least two forms of advertisement encouraging them to buy a copy of a reprinted yearbook containing Mr. Bonilla's name, image, photograph, and likeness. First, Classmates displays a page showing the photograph of Mr. Bonilla and his name, accompanied by a link marked "Own this yearbook today," which leads to a page soliciting the purchase of the yearbook for $99.95. In the original record Classmates created and is currently using, Mr. Bonilla's face is plainly visible and identifiable.~~



38.     Second, for users who do not click the link but instead continue to browse through Mr. Bonilla's photographs, upon their third attempt to load a photograph, Classmates displays a pop-up window prompting the user to "Buy now" a "Hardcover Reprint" of the yearbook containing Mr. Bonilla's name, photograph, and likeness for $99.95.



39.     Classmates has and continues to use the record containing Mr. Bonilla's name, photograph, image, and likeness for the commercial purpose of advertising registered memberships on its website. Registered memberships are free of charge, but registered users must provide personal information including their high school, year of graduation, name, and email address. Classmates earns money from registered members by displaying targeted ads on its website. Upon information and belief, Classmates also earns money from registered members by selling their personal information to third parties.

40.     Users may search for and view records containing Mr. Bonilla's name,

photograph, image, and likeness. Unregistered users are initially shown low-resolution versions of Mr. Bonilla's photographs. Unregistered users who click on a photograph of Mr. Bonilla looking for a "zoomed-in" higher-resolution version are shown a pop-up soliciting them to register and promising that registration will bring benefits including "access to all yearbooks" and the ability to view "full-sized yearbooks."

41.     Classmates' sole purpose in offering free limited access to a low-resolution version of Mr. Bonilla's photograph is to advertise and promote the purchase of its products and services, including its yearbook reprints, paid subscription "CM+" membership plan, and non-paying registered membership plan.

42.     The products Classmates advertises using Mr. Bonilla's name and photograph, including paid subscription plans and yearbook reprints, offer far more than access to Mr. Bonilla's photograph. Indeed, access to Mr. Bonilla's photograph cannot be what purchasers of a monthly subscription plan are paying for, since the full-resolution version of his photograph is available for free to registered non-paying users. Instead, the value of a paying monthly subscription as advertised by Classmates includes: the ability to see who visited your profile; the ability to search for students by current location; a 20% discount on yearbook reprints; and the ability to read and reply to messages from other Classmates members.

43.     Classmates has and continues to knowingly use Mr. Bonilla's name, photograph, image, and likeness on its products, and in connection with the offering for sale of its products, by (1) selling reprinted yearbooks that contain Mr. Bonilla's name, photograph, image, and likeness; (2) selling access to online records containing Mr. Bonilla's name, photograph, image, and likeness to paying subscribers of its CM+ membership plan; and (3) including online records containing Mr. Bonilla's name, photograph, and likeness on the free version of its website available to unregistered users and registered non-paying users.

44.     Through its actions, Classmates has caused harm to Mr. Bonilla by depriving him the fair economic value of his likeness; violating his exclusive right to control his likeness; and violating his right to freedom from intrusion upon seclusion. Classmates has earned ill-gotten

30

~~profits and been unjustly enriched through its use of Mr. Bonilla's name, photograph, image, and likeness.~~

**PLAINTIFF THERESA LOENDORF**

~~45.~~105.　　Plaintiff Theresa Loendorf is a citizen of Illinois who resides in Buffalo Grove, Illinois.

~~46.~~106.　　Ms. Loendorf discovered that Classmates uses her name and photo in advertisements on the Classmates website to advertise and promote Defendant's products and services. The advertisements Ms. Loendorf discovered were the same or substantially similar to those shown below.

~~47.~~107.　　The personal information about Ms. Loendorf's displayed on Classmates uniquely identifies her. It includes her name, photograph, and accurate biographical details including the school she attended.

~~48.~~108.　　Ms. Loendorf never provided Classmates with consent to use any attribute of her identity in any advertisement or for any commercial purposes.

~~49.~~109.　　Ms. Loendorf is not and has never been a Classmates customer. She has no relationship with Classmates whatsoever.

~~50.~~110.　　Ms. Loendorf's injury has primarily been felt in Illinois.

~~51.~~111.　　As the subject of a commercial transaction, Ms. Loendorf's personal identifiable information disclosed by Classmates has economic value. These aspects of Plaintiff's identity are valuable to online advertisers among others.

~~52.~~112.　　Ms. Loendorf has not been compensated by Classmates in any way for its use of her identity.

~~53.~~113.　　Upon accessing Classmates' website, the public-at-large is free to search Classmates' yearbook database for any student or any school.

~~54.~~114.　　After entering this information, any public user of Classmates' website is provided with a listing of search results. The search results provide a limited, low-resolution free preview of student photographs.

55. 115.      As shown in the images below, the free previews delivered in response to a search for Ms. Loendorf include her name and photograph:



56. 116.      As shown in the above, Classmates' free preview and search function provides enough information to identify an individual.

~~57.~~117.        The purpose behind Classmates' free preview and search function is clear: to entice users to purchase Defendant's services. These enticements are clear in the screenshots below:



  

58.118.    When a user selects "Upgrade Your Membership" in the images above (while Ms. Loendorf's name and photograph is prominently displayed), users are given an offer to sign up for Classmates' monthly subscription service whereby a user is able to "keep in touch" with other classmates.

59.119.    Classmates' most popular monthly subscription costs $3 per month.

60.120.    Classmates thus uses Ms. Loendorf's name to advertise monthly subscriptions to its website. A monthly subscription to Classmates includes much more than access to Ms. Loendorf's name and likeness. Indeed, access to Ms. Loendorf's photographs cannot be what purchasers of a monthly subscription plan are paying for, since full-resolution versions of her photographs are available for free to registered non-paying users. Instead, the value of a paying monthly subscription as advertised by Classmates includes: the ability to see who visited your profile; the ability to search for students by current location; a 20% discount on yearbook reprints; and the ability to read and reply to messages from other Classmates members.

61.121.　　　The Illinois Right of Publicity Act ("IRPA") states that: "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons."  765 ILCS 1075/30.

62.122.　　　Ms. Loendorf never provided Classmates with written consent to use her identity in Classmates' advertisements. As detailed above, Classmates uses class members' identities to advertise its for-profit services. Thus, Classmates violates IRPA, 765 ILCS 1075/1, *et seq*.

**STATEMENT OF COMMON FACTS**

63.123.　　　Classmates' PeopleConnect's business model relies on collecting personal information from hundreds of thousands of school yearbooks. Classmates PeopleConnect scans yearbooks into a digital format, then extracts personal information including names, photographs, schools attended, years of attendance, cities of residence, and biographical details pays third parties to create digital copies of yearbook photographs, and for a license to make commercial use of the photographs. Classmates PeopleConnect aggregates the extracted information into digital records associated with specific individuals. Classmates PeoopleConnect then uses the records to advertise and sell its products and services website subscriptions. Those products and services include reprinted yearbooks, which Classmates sells for up to $99.95, and subscription memberships to the website Classmates.com, which Classmates sells for up to $3 per month.

64.124.　　　According to the Classmates.com website, Classmates' Yearbook Collection contains records copied from over 400 thousand yearbooks. While Classmates PeopleConnect does not publish figures about the total number of records in the Collection or a breakdown by state, it is likely the class includes millions of Illinoisans whose names, photographs, and likenesses appear in the Classmates Yearbook Collection.

65.125.　　　Classmates PeopleConnect did not ask consent from, given notice to, or provide compensation to Plaintiffs or the class before using their names, photographs, and biographical information personas to advertise subscriptions.

35

66.     Classmates does not own or obtain licenses to any of the yearbooks in its database.

67.126.     The authors of the yearbooks in Classmates' PeopleConnect's database gave no indication they intended their content to be published online, by Classmates PeopleConnect or anyone else. In many cases the yearbooks in Classmates' PeopleConnect's database have publication dates pre-dating the wide-spread use of the Internet.

68.127.     Classmates PeopleConnect makes no attempt to contact yearbook authors to verify whether they wish the content they created to be published online, nor whether they object to Classmates' PeopleConnect's use of copyrighted material.

69.128.     The names, photographs, cities of residence, likenesses, and identities that Classmates PeopleConnect aggregates into individual records uniquely identify specific individuals.

70.129.     Classmates PeopleConectPeopleConnect uses the names, photographs, images, and likenesses of Plaintiff and the class for the commercial purpose of advertising and promoting the purchase of its products and services, including (1) reprinted yearbooks; (2) its "CM+" subscription membership; and (3) the free version of its website, from which Classmates profits by selling targeted advertisements and driving users to its paid products and subscriptions.

71.130.     Classmates employs a variety of advertising techniques through which it exploits the names, photographs, images, and likenesses of Plaintiff and the class, many of which are detailed in the Plaintiff-specific portion of this complaintPeopleConnect advertises by providing free searchable access to low-resolution versions of Class members' photographs as children. . Across all the advertising techniques it uses, Classmates seeks to translate its users' interest in seeing pictures of and learning personal details about Plaintiff and the class, into the purchase of a Classmates product or service, or the use of a website from which Classmates derives revenueUsers who click to view higher resolution photographs, or who attempt to view more than a proscribed number of photographs, are shown a pop-up requesting account registration and agreement to the Terms, followed by a page soliciting a paid subscription to www.classmates.com.

72.131.     Classmates PeopleConnect makes no attempt to contact or gain the

36

consent of the people whose names, photographs, likenesses, biographical information, and identifies appear in ~~a donated yearb~~its advertisements~~ook~~.

~~73.~~132.　　　The vast majority of people whose personal information ~~Classmates~~ PeopleConnect has ~~digitally extracted and aggregated in its~~ misappropriated in its Classmates Yearbook Collection have no ~~business~~ relationship with ~~Classmates~~PeopleConnect, are not Classmates.com subscribers, and are not subject to a Terms of Service or any other agreement with ~~Classmates~~PeopleConnect.

~~74.~~133.　　　Through its actions, ~~Classmates~~ PeopleConnect has caused harm to Plaintiffs and the class by depriving them the fair economic value of their likenesses; violating their exclusive rights to control their likenesses; ~~and violating their rights to freedom from intrusion upon seclusion~~and disturbing their peace of mind. ~~Classmates~~ PeopleConnect has earned ill-gotten profits and been unjustly enriched through its use of the names, photographs, images, and likenesses of Plaintiffs and the C~~e~~lass.

~~75.~~134.　　　~~Classmates'~~ PeopleConnect's willful misappropriation of identities, including names, photographs, images, likenesses, and other personal information, and commercial use of those identities in selling and advertising its products and services, violate Illinois' statute protecting the right to publicity, 765 ILCS 1075/1 *et seq.*; ~~Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq.; Illinois common law protection against intrusion upon seclusion;~~ and Illinois common law protecting against unjust enrichment.

## CLASS ALLEGATIONS

~~76.~~135.　　　Plaintiffs bring this complaint on behalf of themselves and a class of all Illinois residents who (a) are not ~~currently subscribers of any Classmates services~~Classmates subscribers, (b) have never donated a yearbook to Classmates, and (c) whose ~~names, photographs, images, and/or likenesses were extracted from yearbooks by Classmates and placed on the Classmates website as part of its Yearbook Collection, without Classmates obtaining their consent~~yearbook photographs were searchable by non-subscribers on www.classmates.com at

any time between January 5, 2016, and the present. Excluded from the class are (a) Plaintiff's counsel; (b) ~~Classmates~~PeopleConnect, its officers and directors, counsel, successors and assigns; (c) any entity in which ~~Classmates~~ PeopleConnect has a controlling interest; and (d) the judge to whom this case is assigned and the judge's immediate family.

~~77.~~136.        The members of the proposed class are so numerous that joinder of individual claims is impracticable. ~~Classmates~~ PeopleConnect represents that its Yearbook Collection contains records from over 400,000 yearbooks in the United States. Each yearbook contains the names and likeness of hundreds, sometimes thousands, of individuals. Even accounting for the fact that only a portion of the yearbooks are from Illinois, that some individuals in ~~Classmates'~~ the database are deceased or no longer reside in Illinois, and that the class excludes current ~~Classmates~~ Classmates.com subscribers (Classmates.com has about 4 million subscribers worldwide), the class likely numbers in the millions.

~~78.~~137.        There are significant questions of fact and law common to the members of the class. These issues include:

 a. Whether ~~Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interest and hobbies, in its Classmates Yearbook Collection, and selling of that information via reprinted yearbooks and paid subscription plans~~PeopleConnect's use of Plaintiffs' and Class members' photographs as children without consent to advertise subscriptions~~, constitute~~ constitutes the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;

 ~~b. Whether Classmates' extraction and aggregation of personal information about Plaintiffs and the class members, including names, yearbook photographs, yearbook years, cities of residence, schools attended, and interests and hobbies, and use of that information in the advertising techniques described in this~~

~~complaint, constitutes the use of individuals' identities for commercial purposes without previous written consent within the meaning of 765 ILCS 1075/1 *et seq.*;~~

~~c.~~b. Whether Plaintiffs and the ~~C~~class ~~members~~ consented to the use of their names, photographs, images, and likenesses in ~~Classmates~~ PeopleConnect's products and advertisements;

~~d.~~c. Whether ~~Classmates'~~ PeopleConnect's use of identities, names, photographs, images, and likenesses constitutes a use for non-commercial purposes such as news or public affairs within the meaning of 765 ILCS 1075/35;

~~e.~~d. Whether ~~Classmates'~~ PeopleConnect's commercial use of the names, photographs, images, and likenesses of Plaintiffs and the class was willful such that Plaintiffs and the class are entitled to punitive damages;

~~f. Whether Classmates' conduct as described in this complaint violated Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*;~~

~~g.~~e. Whether ~~Classmates~~ PeopleConnect was unjustly enriched as a result of the conduct described in this complaint; and

~~h.~~f. Whether Plaintiffs and the ~~C~~class members are entitled to injunctive, declaratory and monetary relief as a result of ~~Classmates'~~ PeopleConnect's conduct as described in this complaint.

~~79.~~138. Plaintiffs' claims are typical of those of the proposed class. Plaintiffs and all members of the proposed class have been harmed by ~~Classmates'~~ PeopleConnect's misappropriation and misuse of their identifies, names, photographs, images, likenesses, and other personal information.

~~80.~~139. The proposed class representatives will fairly and adequately represent the proposed class. The class representatives' claims are co-extensive with those of the rest of the class, and they are represented by qualified counsel experienced in class action litigation of this nature.

~~81.~~140. A class action is superior to other available methods for the fair and

efficient adjudication of these claims because individual joinder of the claims of all members of the proposed class is impracticable. Many members of the class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning ~~Classmates'~~ PeopleConnect's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

~~82.~~141.        The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. ~~Classmates~~ PeopleConnect has acted on grounds generally applicable to the proposed class, such that final injunctive and declaratory relief is appropriate with respect to the class as a whole.

~~83.~~142.        The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiency adjudicating the controversy.

### FIRST CAUSE OF ACTION
### (765 ILCS 1075/1 *et seq.*)

~~84.~~143.        Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

~~85.~~144.        Illinois' statute protecting the right to publicity 765 ILCS 1075/1 *et seq.*, prohibits and provides damages for using an individual's identity for commercial purposes without having obtained previous written consent.

~~86.~~145.        By engaging in the forgoing acts and omissions, Classmates used Plaintiffs' and class members' identities for commercial purposes without having obtained previous written consent.

87.146.      Each use of a class member's identity is a separate and distinct violation of 765 ILCS 1075/1 *et seq.* giving rise to damages.

88.147.      As a result of Classmates' violation of 765 ILCS 1075/1 *et seq.*, Plaintiffs and the class have suffered actual damages. Plaintiffs and the class have been denied the economic value of their likenesses, which ~~Classmates~~ PeopleConnect has appropriated and used for its own economic benefit. Plaintiffs and members of the class also lost the right to refuse consent and protect their privacy. Actual damages may be measured as the fair market value of a person's likeness used for advertising and as part of a product, the amounts PeopleConnect paid to third parties to license Plaintiffs' and Class members' photographs, or as the revenue ~~Classmates~~ PeopleConnect derived from its unauthorized use.

89.      Plaintiffs seek nominal damages, declaratory, injunctive relief, and monetary damages for themselves and on behalf of each member of the proposed class as provided for in 765 ILCS 1075/1 *et seq.*, including statutory damages equal to the greater of $1000 per violation, actual damages, or profits ~~Classmates~~ PeopleConnect derived from its unauthorized use; punitive damages in light of ~~Defendants'~~ PeopleConnect's willful violation; nominal damages equal to $1 per class member; and the award of attorneys' fees and costs in the event Plaintiff~~s~~ prevail~~s~~ in this action.

148.

**~~SECOND CAUSE OF ACTION~~**

~~(815 ILCS 505/1 *et seq.*)~~

~~90.      Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.~~

~~91.      Classmates has and is engaged in deceptive or unfair practices as those terms are defined in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*~~

92.    As described in this complaint, Classmates' misappropriation and use of Plaintiffs' and class members' identities without consent offends public policy established in Illinois statutory and common law, is unethical and unscrupulous, and creates substantial injury to Plaintiffs and the class by denying them the legally protected to control their identities.

93.    By engaging in the conduct described in this complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Classmates engaged in and continues to engage in deceptive and unfair practices prohibited by Illinois law.

94.    As a result of Classmates' actions, Plaintiffs and the class have been injured. Plaintiffs and members of the class each lost the value of their names and images. Plaintiffs and members of the class also lost the right to refuse consent and protect their own privacy, as guaranteed by Illinois law.

THIRD CAUSE OF ACTION

(Intrusion Upon Seclusion)

95.    Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

96.    Plaintiffs and class members have a reasonable expectation of privacy in their personal information, including their photographs and biographical details.

97.    Classmates intentionally intruded on the seclusion of Plaintiffs and the class by appropriating their identities, including their names, photographs, images, likenesses, and biographical information, and using the appropriated information to advertise and sell online services.

98. ~~Classmates' misuse of personal information reveals private facts in which a reasonable person would expect privacy. It maintains, sells, and advertises using records that reveal intimate details about subjects' private lives, including ages, locations, biographical details, and photographs.~~

99. ~~Plaintiffs and the class were harmed by Classmates' intrusion into their private affairs as detailed in the compliant.~~

100. ~~Among other remedies, Plaintiffs and members of the class seek damages, including punitive damages in light of Classmates' conscious disregard of Plaintiffs' and class members' privacy rights and exploitation of their personal information for profit.~~

### ~~FOURTH~~ SECOND CAUSE OF ACTION
**(Unjust Enrichment)**

~~101.~~149. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

~~102.~~150. Plaintiffs and the ~~C~~class have conferred an unwarranted benefit on Classmates. ~~Classmates'~~ PeopleConnect's business model centers around using personal information that rightfully belongs to Plaintiffs and the class to sell its products and services. ~~Classmates~~ PeopleConnect uses the ~~personal information~~names, photographs, and personas it misappropriated without consent~~. Each sale of a reprinted yearbook that contains records that rightfully belong to class members, each~~ to advertise "CM+" subscription~~s, from which PeopleConnect derives substantial revenue and profit~~sold to users who then gain access to records that rightfully belong to class members, and all advertising revenue collected from the delivery of ads on pages displaying records that rightfully belong to class members, represents an unwarranted benefit conferred upon Classmates by the class.~~

~~103.~~151. Under principles of equity and good conscience, Classmates should not be permitted to retain the benefits it gained through its actions.

104.152.    Plaintiffs and members of the class have suffered loss as a direct result of Classmates' PeopleConnect's conduct.

105.153.    Among other remedies, Plaintiffs, on their own behalf and on behalf of absent class members, seek the imposition of a constructive trust and restitution of proceeds Classmates PeopleConnect received as a result of the conduct described in this complaint, as well as an award of attorneys' fees, costs, and interest.

## PRAYER FOR RELIEF

106.154.    WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situation, hereby demands judgment against Defendant Classmates PeopleConnect as follows:

(a) For an order certifying the proposed class and appointing Plaintiffs and their counsel to represent the class;

(b) For a declaration that Classmates' PeopleConnect's acts and omissions constitute a willful misappropriation of names, likeness, photographs, images, and other personal information, and infringe on protected privacy rights, in violation of Illinois law;

(c) For nominal damages awarded in recognition of Classmates' PeopleConnect's violation of the statutorily protected property and privacy rights of Plaintiffs and the class;

(d) For preliminary and permanent injunctive relief enjoining and preventing Classmates PeopleConnect from continuing to operate its Classmates.com website and expand its databases without appropriate safeguards to ensure people's personal information is not used illegally without their consent;

(e) For an order enjoining Classmates PeopleConnect from continuing the unlawful and unfair conduct described in this complaint;

(f) For restitution for Plaintiffs and members the class for the value that Defendants PeopleConnect derived from misappropriating their likenesses;

(g) For an award of damages, including without limitation damages for actual harm,

profits earned by ~~Classmates~~ PeopleConnect ~~in the operation of its website~~from the sale of subscriptions~~s selling access to misappropriated personal information~~, and statutory damages;

(h) For an award of reasonable attorneys' fees and costs incurred by Plaintiffs and the class members; and

(i) For an award of other relief in law and equity to which Plaintiffs and the class members may be entitled.

## JURY TRIAL DEMAND

Plaintiff~~s~~ hereby demand~~s~~ a jury trial for all individual and Class claims so triable.

Respectfully submitted,

Dated: February 15, 2023                    Respectfully Submitted,

By: /s/ *Raina C. Borrelli*
       Raina C. Borrelli
       Samuel J. Strauss
       TURKE & STRAUSS LLP
       613 Williamson St., Suite 201
       Madison, WI 53703
       Telephone: (608) 237-1775
       Facsimile: (608) 509-4423
       raina@turkestrauss.com
       sam@turkestrauss.com

       Michael F. Ram (*pro hac vice*)
       Marie N. Appel (*pro hac vice*)
       MORGAN & MORGAN
       COMPLEX LITIGATION GROUP
       711 Van Ness Avenue, Suite 500
       San Francisco, CA 94102
       Telephone: (415) 358-6913
       Facsimile: (415) 358-6923
       mram@forthepeople.com
       mappel@forthepeople.com

       Benjamin R. Osborn (*pro hac vice*)
       102 Bergen Street
       Brooklyn, NY 11201
       Telephone: (347) 645-0464

45

ben@benosbornlaw.com

Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Telephone: (312) 899-9090
Facsimile: (312) 251-1160
SMM@cliffordlaw.com

*Attorneys for Plaintiffs ~~Bonilla~~*
*and the Proposed Class*

**NICK LARRY LAW LLC**


By: _____/s/ J. Dominick Larry_____
       J. Dominick Larry
J. Dominick Larry
55 E Monroe Street, Suite 3800
Chicago, IL 60603
Tel: (773) 694-4669
Fax: (773) 694-4691
E-Mail: nick@nicklarry.law
Firm ID: 64846

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice* Forthcoming)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
E-Mail: pfraietta@bursor.com

*Attorneys for Plaintiff Loendorf*

# — EXHIBIT 1 —

**353 NORTH CLARK STREET CHICAGO ILLINOIS 60654-3456**

**JENNER & BLOCK** LLP

Debbie L. Berman
Tel: 312 923-2764
dberman@jenner.com

February 8, 2023

**<u>VIA EMAIL</u>**

Raina C. Borrelli
Turke & Strauss LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Raina@turkestrauss.com

Re:     ***Claims by Devin Edmison and Michael Burtle***

Dear Raina:

I write on behalf of PeopleConnect, Inc. ("PeopleConnect") in response to your January 25, 2023 letter regarding Messrs. Edmison and Burtle.

***First,*** Messrs. Edmison and Burtle cannot sustain right of publicity claims against PeopleConnect because they both consented, through you, to Classmates.com's use of their identifying information. (*See* Classmates.com Terms of Service, Acceptance of Terms, § 1.B). Your letter acknowledges that you used a Classmates.com account that you created solely to look for information regarding them and other potential plaintiffs to bring a lawsuit. Because you admitted that your use of Classmates.com was on Messrs. Edmison's and Burtle's behalf and/or for their benefit, Messrs. Edmison and Burtle are deemed to have expressly consented to the use of their information on Classmates.com. Therefore, neither Mr. Edmison nor Mr. Burtle can sustain a claim against PeopleConnect as they have consented to the use of their information.

***Second***, by agreeing to the Terms of Service on their behalf, they also are bound to arbitrate any claims that they might have against PeopleConnect. While your letter purports to disclaim and repudiate any agreement to arbitrate, you have confirmed that you were using your account on their behalf and for their benefit. The law is clear that your clients cannot purport to repudiate your agreement to Classmates.com's Terms of Service requiring them to arbitrate while at the same time continue to utilize the benefits of that agreement. Therefore, they are bound to arbitrate any claims.

The fact that you opted out of the arbitration agreement does not change this conclusion nor was it an effective opt-out for Messrs. Edmison and Burtle. The Classmates.com Terms of Service that were operative when you created your account include the following arbitration opt-out:

**CHICAGO   LONDON   LOS ANGELES   NEW YORK   SAN FRANCISCO   WASHINGTON, DC   <u>WWW.JENNER.COM</u>**

February 8, 2023
Page 2

You have the right to opt-out, for yourself and on behalf of anyone for whom you are acting as an agent, and not be bound by this arbitration provision by sending written notice of your decision to opt-out to: PeopleConnect, Inc. dba Classmates.com Arbitration Opt-Out, 1687 114th Ave SE, Suite 200, Bellevue, WA 98004. If opting out for yourself, this notice must be sent within thirty (30) days of your first use of the Services or, if you are already a user of the Services upon initial posting of this arbitration provision, within thirty (30) days of our email notice to you of this arbitration provision. If opting out as an agent for another user, this notice must be sent within (30) days of that other user's first use of the Services or, if already a user of the Services upon initial posting of this arbitration provision, within thirty (30) days of our email notice to them of this arbitration provision. Any opt out exercised, by you for yourself or as the agent for another, within thirty (30) days of our email notice of this arbitration provision, shall only apply to claims that have arisen since the posting of this arbitration provision.

The opt-out notice must state that you do not agree to this agreement to arbitrate and must include your name, address, phone number and email address(es) used to register with or use the Services, as well as the name, address, phone number and email address(es) of any person for whom you are opting out as their agent. You and any persons for whom you are opting out as an agent on their behalf must sign the opt-out notice for it be effective. Any opt-out not received within the applicable thirty (30) day period set forth above will not be valid.

(Classmates.com Terms of Service, Arbitration Opt-Out, § 12.D).

Pursuant to these requirements, your January 25, 2023 letter was ineffective to opt-out on Messrs. Edmison's and Burtle's behalf. Specifically, despite the fact that you must have known that you were representing Messrs. Edmison and Burtle at the time you sent your personal opt-out letter, your personal opt-out letter did not specifically identify them, nor did it supply their phone numbers, addresses, or email addresses, as is expressly required in the Classmates.com Terms of Service. Nor does your personal opt-out letter include their signatures, as is required by the Classmates.com Terms of Service. Thus, your personal opt-out letter was not effective on anyone else's behalf, including but not limited to, Messrs. Edmison and Burtle. And the thirty-day deadline for opting out has expired.

Additionally, we would like to remind you that pursuant to the Classmates.com Terms of Service, your membership is solely for personal use. Your membership may not be used for any other use, including for the purpose of identifying future or potential clients. Your letter acknowledges that you were using your account to investigate potential clients, including Messrs. Edmison and Burtle. If you continue to do so, PeopleConnect expressly reserves the right to terminate your membership immediately.

February 8, 2023
Page 3

**Third,** both Messrs. Edmison's and Burtle's claims are barred by the Illinois Right of Publicity Act's statute of limitations as their yearbooks were added to Classmates.com on May 20, 2021, well over a year ago.

**Fourth,** your letter requested that we not modify Messrs. Edmison's and Burtle's photographs as they appear on the Classmates.com website. However, that is clearly what they want if they are considering bringing these types of claims. We intend to suppress their information on Classmates.com as we have done in every case. Contrary to your claim, such suppression is not an improper modification of the information and certainly would not constitute spoliation of any sort.

**Finally,** please note, should you decide to file these frivolous claims against PeopleConnect, PeopleConnect will seek appropriate relief from the court.

Very truly yours,

Debbie L. Berman

# — EXHIBIT 2 —

# Turke & Strauss LLP

Raina C. Borrelli
Raina@turkestrauss.com

January 25, 2023

*Via Email Only*

Debbie L. Berman
Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456

Re:    Claims by Devin Edmison and Michael Burtle against PeopleConnect, Inc.

Dear Debbie,

Our firm, along with our co-counsel at Morgan & Morgan P.A. and The Law Office of Benjamin R. Osborn, was recently retained by Devin Edmison and Michael Burtle in connection with potential legal claims against PeopleConnect, Inc. regarding the website classmates.com, which is owned and operated by PeopleConnect. Mr. Edmison's and Mr. Burtle's potential claims arise under, at least, the Illinois Right of Publicity Act due to the unauthorized use of Mr. Edmison's and Mr. Burtle's name and likeness on classmates.com.

Please share the attached Acknowledgements, signed by Mr. Edmison and Mr. Burtle, with your client PeopleConnect. As stated in the Acknowledgements, Mr. Edmison and Mr. Burtle do not agree, and have never agreed, to arbitrate their claims against PeopleConnect. Mr. Edmison and Mr. Burtle expressly disclaim and repudiate any purported agreement to arbitrate. As a courtesy, we are also attaching our retainer agreements with Mr. Edmison and Mr. Burtle. We are also attaching the opt-out letter I previously sent to PeopleConnect opting out of the arbitration clause in the Terms of Service. The investigation of Mr. Edmison's and Mr. Burtle's claims was performed using the account for which I opted out.

As you know, we disagree with PeopleConnect's position in *Callahan et al v. PeopleConnect, Inc.*, *Boshears v. PeopleConnect, Inc.*, *Izzo v. PeopleConnect, Inc.*, and *Mackey v. PeopleConnect, Inc.* that any of those plaintiffs are bound to arbitrate their claims against PeopleConnect for any reason. Mr. Edmison and Mr. Burtle have never visited the website classmates.com and are thus not subject to the classmates.com Terms of Service. Because Mr. Edmison and Mr. Burtle have never agreed to the Terms of Service, they do not need to affirmatively opt out of any arbitration clause contained in the Terms of Service in order to preserve their right to pursue claims in court. Nevertheless, to ensure that PeopleConnect does not misrepresent or misunderstand Mr.

Edmison's, Mr. Burtle's, and their counsel's unequivocal intentions **not** to enter any agreement to arbitrate, Mr. Edmison and Mr. Burtle both signed the attached Acknowledgements.

As a good faith gesture, we write to provide information regarding Mr. Edmison and Mr. Burtle so that you may conduct your own investigation prior to the filing of the complaint. To the extent you believe that Mr. Edmison and Mr. Burtle currently has, or has ever had, an account with classmates.com, please let us know by February 1, 2023. We are sharing the below information with the expectation you will keep it confidential.

Name: Devin Edmison
High School: Glenwood High School
Graduation Year: 2019
Email addresses: Devin.Edmison@outlook.com
       Megadev44s.mail@gmail.com
       Rideahorse31@hotmail.com
       Rideahorse31@yahoo.com

Name: Michael Burtle
High School: Glenwood High School
Graduation Year: 2019
Email addresses: burtle924@icloud.com

For both Mr. Edmison and Mr. Burtle, please also provide the date on which PeopleConnect first uploaded each photograph of Mr. Edmison and Mr. Burtle to classmates.com.

Finally, please direct your client not to modify Mr. Edmison's and Mr. Burtle's photographs or information as they appear on classmates.com or within the classmates.com database. Any such modification will constitute spoliation of evidence.

Should you have any questions, please do not hesitate to contact me.

Very Truly Yours,
TURKE & STRAUSS LLP

Raina C. Borrelli

# — EXHIBIT 3 —

**Acknowledgement of Likely PeopleConnect**
**Attempt to Falsely Assert Arbitration Agreement**

1. Devin Edmison ("CLIENT") has retained Turke & Strauss LLP, Morgan & Morgan P.A., and the Law Office of Benjamin R. Osborn ("ATTORNEYS") to pursue claims in court against PeopleConnect, Inc. ("DEFENDANT") arising out of DEFENDANT'S misappropriation and commercial use of student's names, photographs, and likenesses without their consent.

2. CLIENT acknowledges and confirms that ATTORNEYS have informed CLIENT that, based on ATTORNEYS' experience litigating similar actions against DEFENDANT, DEFENDANT may assert that an arbitration agreement exists between CLIENT and DEFENDANT. CLIENT acknowledges and confirms that ATTORNEYS have informed CLIENT that, while DEFENDANT'S attempts to assert the existence of arbitration contracts have failed before multiple courts, and have never succeeded before any court, DEFENDANT is nevertheless likely to take the same position with respect to CLIENT.

3. Accordingly, CLIENT and ATTORNEYS hereby agree to this Acknowledgement to confirm certain understandings and instructions with respect to any purported agreement to arbitrate that DEFENDANT may attempt to assert.

4. CLIENT hereby instructs his ATTORNEYS to share this Acknowledgement with DEFENDANT as a means of informing DEFENDANT that CLIENT does not agree to arbitrate his claims against DEFENDANT and expressly disclaims and repudiates any purported agreement to arbitrate. CLIENT'S instruction to share this Acknowledgement is limited to the information in this Acknowledgement does not constitute a waiver of privilege on any subject.

5. CLIENT acknowledges and confirms that:

   a. CLIENT has never visited or used the website www.classmates.com, which is owned and operated by DEFENDANT.

   b. CLIENT has never seen or agreed to any terms of service or other agreement with DEFENDANT.

   c. CLIENT has never seen or agreed to any agreement to arbitrate with DEFENDANT.

   d. CLIENT has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrate DEFENDANT may have with anyone.

   e. CLIENT does not believe any agreement to arbitrate exists between CLIENT and DEFENDANT.

   f. CLIENT does not believe CLIENT is bound by any agreement to arbitrate that may exist between DEFENDANT and any other person.

g. CLIENT does not believe CLIENT is bound by any agreement to arbitrate that may exist between DEFENDANT and any of his ATTORNEYS.

h. CLIENT hereby disaffirms, disavows, and repudiates any agreement to arbitrate that DEFENDANT may assert binds CLIENT.

6. CLIENT acknowledges and confirms that CLIENT instructed ATTORNEYS:

a. Not to enter any agreement to arbitrate with PeopleConnect on CLIENT'S behalf.

b. To pursue this action in federal or state court and not in an arbitral forum.

c. To inform DEFENDANT on CLIENT'S behalf that CLIENT does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that DEFENDANT might claim exists or existed.

d. To inform DEFENDANT on CLIENT'S behalf that CLIENT expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that DEFENDANT might claim exists or existed.

7. ATTORNEYS hereby represent and inform CLIENT that:

a. The investigation of CLIENT'S potential claim was performed using an account created by Raina C. Borrelli in December 2022 using the email address raina.borrelli@gmail.com. Ms. Borrelli never used www.classmates.com prior to creating the account associated with raina.borrelli@gmail.com.

b. As part of the account creation process, Ms. Borrelli opted out of the arbitration clause in the terms of service on December 28, 2023. A copy of the letter by which she opted out is attached hereto as Exhibit 1.

c. The investigation of CLIENT'S claim was performed during the following time period, December 29, 2022 – January 18, 2023, after Ms. Borrelli had opted out of the arbitration clause.

d. Ms. Borrelli did not agree, and has never agreed, to arbitrate disputes with DEFENDANT. Ms. Borrelli has never entered an agreement to arbitrate with DEFENDANT.

e. Neither Ms. Borrelli nor any other ATTORNEY ever represented to DEFENDANT that, by investigating CLIENT'S claim, she intended to bind CLIENT to an arbitration agreement. On the contrary, ATTORNEYS have repeatedly made clear to DEFENDANT that visiting www.classmates.com to investigate a potential claim does not constitute agreement to arbitrate on behalf of a client or potential client.

f. Visting www.classmates.com to investigate CLIENT'S claim did not and does not constitute an agreement to arbitrate on behalf of CLIENT or anyone else.

Doc ID: f73ecf676fc8bd0a81f8403bb11db9fdfc9b236b

01 / 19 / 2023

Date:

Signed:

01 / 25 / 2023

Date:

Samuel J. Strauss

Doc ID: a9e0bfeacd516017

**— EXHIBIT  4 —**

**Acknowledgement of Likely PeopleConnect**
**Attempt to Falsely Assert Arbitration Agreement**

1. Michael Burtle ("CLIENT") has retained Turke & Strauss LLP, Morgan & Morgan P.A., and the Law Office of Benjamin R. Osborn ("ATTORNEYS") to pursue claims in court against PeopleConnect, Inc. ("DEFENDANT") arising out of DEFENDANT'S misappropriation and commercial use of student's names, photographs, and likenesses without their consent.

2. CLIENT acknowledges and confirms that ATTORNEYS have informed CLIENT that, based on ATTORNEYS' experience litigating similar actions against DEFENDANT, DEFENDANT may assert that an arbitration agreement exists between CLIENT and DEFENDANT. CLIENT acknowledges and confirms that ATTORNEYS have informed CLIENT that, while DEFENDANT'S attempts to assert the existence of arbitration contracts have failed before multiple courts, and have never succeeded before any court, DEFENDANT is nevertheless likely to take the same position with respect to CLIENT.

3. Accordingly, CLIENT and ATTORNEYS hereby agree to this Acknowledgement to confirm certain understandings and instructions with respect to any purported agreement to arbitrate that DEFENDANT may attempt to assert.

4. CLIENT hereby instructs his ATTORNEYS to share this Acknowledgement with DEFENDANT as a means of informing DEFENDANT that CLIENT does not agree to arbitrate his claims against DEFENDANT and expressly disclaims and repudiates any purported agreement to arbitrate. CLIENT'S instruction to share this Acknowledgement is limited to the information in this Acknowledgement does not constitute a waiver of privilege on any subject.

5. CLIENT acknowledges and confirms that:

   a. CLIENT has never visited or used the website www.classmates.com, which is owned and operated by DEFENDANT.

   b. CLIENT has never seen or agreed to any terms of service or other agreement with DEFENDANT.

   c. CLIENT has never seen or agreed to any agreement to arbitrate with DEFENDANT.

   d. CLIENT has no knowledge of any terms, material or otherwise, that might exist in any agreement to arbitrate DEFENDANT may have with anyone.

   e. CLIENT does not believe any agreement to arbitrate exists between CLIENT and DEFENDANT.

   f. CLIENT does not believe CLIENT is bound by any agreement to arbitrate that may exist between DEFENDANT and any other person.

g. CLIENT does not believe CLIENT is bound by any agreement to arbitrate that may exist between DEFENDANT and any of his ATTORNEYS.

h. CLIENT hereby disaffirms, disavows, and repudiates any agreement to arbitrate that DEFENDANT may assert binds CLIENT.

6. CLIENT acknowledges and confirms that CLIENT instructed ATTORNEYS:

a. Not to enter any agreement to arbitrate with PeopleConnect on CLIENT'S behalf.

b. To pursue this action in federal or state court and not in an arbitral forum.

c. To inform DEFENDANT on CLIENT'S behalf that CLIENT does not affirm or ratify any agreement to arbitrate that might exist now, that might exist in the future, or that DEFENDANT might claim exists or existed.

d. To inform DEFENDANT on CLIENT'S behalf that CLIENT expressly disaffirms, disavows, and repudiates any agreement to arbitrate that might exist now, that might exist in the future, or that DEFENDANT might claim exists or existed.

7. ATTORNEYS hereby represent and inform CLIENT that:

a. The investigation of CLIENT'S potential claim was performed using an account created by Raina C. Borrelli in December 2022 using the email address raina.borrelli@gmail.com. Ms. Borrelli never used www.classmates.com prior to creating the account associated with raina.borrelli@gmail.com.

b. As part of the account creation process, Ms. Borrelli opted out of the arbitration clause in the terms of service on December 28, 2023. A copy of the letter by which she opted out is attached hereto as Exhibit 1.

c. The investigation of CLIENT'S claim was performed during the following time period, December 29, 2022 – January 18, 2023, after Ms. Borrelli had opted out of the arbitration clause.

d. Ms. Borrelli did not agree, and has never agreed, to arbitrate disputes with DEFENDANT. Ms. Borrelli has never entered an agreement to arbitrate with DEFENDANT.

e. Neither Ms. Borrelli nor any other ATTORNEY ever represented to DEFENDANT that, by investigating CLIENT'S claim, she intended to bind CLIENT to an arbitration agreement. On the contrary, ATTORNEYS have repeatedly made clear to DEFENDANT that visiting www.classmates.com to investigate a potential claim does not constitute agreement to arbitrate on behalf of a client or potential client.

f. Visting www.classmates.com to investigate CLIENT'S claim did not and does not constitute an agreement to arbitrate on behalf of CLIENT or anyone else.

01 / 20 / 2023
_____

Date:

_____

Signed:

01 / 25 / 2023
_____

Date:

_____

Samuel J. Strauss